1

2  Moshe Perry
   27943 Seco Cyn. Rd. # 458
   Santa Clarita, CA, 91350
3  (747) 224-9515

FILED
CLERK U.S DISTRICT COURT

JUN - 1 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

4

5  In Re:                                    District Court No.  **CV-16-03822 R (JCG)**

6  Moshe Perry,                              **GROUP A AND B: CIVIL ACTION FOR**
                                             **VIOLATIONS OF CIVIL RIGHTS BY**
7          Plaintiff                         **BLOCKING ACCESS TO THE STATE COURTS,**
                                             **DISCRIMINATION UNDER 42 U.S.C. SECTION**
8          Vs.                               **1983 AND § 1985(3);  FEDERAL QUESTION**
                                             **UNDER 28 U.S.C. § 1331; DIVERSITY OF**
9  **Group A:** Bally Total Fitness, LA Fitness,   **CITIZENSHIP; TITLE 28, SECTION 1367;**

10 Chin Yi, Seidler Equity Partners,  Marina
   Del Ray, CA; CIVC Partners,  Chicago; and  **GROUP A: FOR MONETARY AND PUNITIVE**
11 Madison Dearborn Partners, Chicago, Does 1 **DAMAGES, AND ANY OTHER AVAILABLE**
                                             **RELIEF A PRIVATE ACTION  FOR DAMAGES;**
12 through 10.

13                                           **GROUP A AND B:  FOR DECLARATORY,**
                                             **INJUNCTIVE RELIEF; CHALLENGING THE**
14 **Group B:** The Los Angeles Superior Courts **CONSTITUTIONALITY OF CALIFORNIA**
   of California, Justice Roger Boren,        **VEXATIOUS LITIGANT STATUTES (VLS),**
15 California Court of Appeal, Second District, **CODE OF CIVIL PROCEDURE §§ 391 ET SEQ.,**
                                             **USE HAS DEVIATED FROM ITS ORIGINAL**
16 California Supreme Court, California        **PURPOSE BECAUSE THE COURTS ARE**
   Judicial Council, ,                        **ENABLING DEFENDANTS TO ESCAPE**
17                                            **LIABILITY USING THE VLS CODE AS A**
          Defendants, Respondents and         **TACTICS WEAPON BY SEEKING MOTIONS**
18 Parties In Interest,                       **TO DESIGNATED A CLASS OF PLAINTIFFS, IN**
                                             **PRO SE, AS VEXATIOUS LITIGANTS  IN**
19                                            **ORDER TO PROMPT THE DISMISSAL OF**
                                             **ACTIONS AND NEW LITIGATION THAT**
20                                            **HAVE MERIT WITHOUT DUE PROCESS; THE**
                                             **VLS THEREFORE IS PROMOTING DIRECTLY**
21                                            **AND INDIRECTLY TO THE DEPRIVATION OF**
                                             **RIGHTS AND PROPERTY AND**
22                                            **PERPETRATION OF DECEPTION AND FRAUD**
23                                            **WHILE BLOCKING ACCESS TO THE STATE**
                                             **COURTS;  PLAINTIFF DECLINES A REVIEW**
24                                            **OF THE COMPLAINT BY A MAGISTRATE**
25                                            **JUDGE;  DEMAND FOR JURY TRIAL**
26

27

28

1

## **TABLE ON CONTENTS**                                        **Page(s)**

I.   PARTIES..................................................................................................5

II.  NATURE OF THE CASE............................................................................6

III. VENUE AND JURISDICTION......................................................................7

IV. FEDERAL QUESTION JURISDICTION........................................................11

V.  ARGUMENTS:........................................................................................12

    1.   PERRY Has Standing To Challenge The California Vexatious Litigant Statute (VLS) CCP. §§ 391 et. seq.......................................................................12

    2.   The Nexus Created By Designation Of Vexatious Under CCP. §§ 391 et seq., is Used As A Weapon To Defeat New Litigation, Valid Lawsuits, Permanently Depriving Plaintiff Access To The Courts, Leads To Deprivations of Property....................................13

    3.   The Abusive Interpretations of CCP. §§ 391 et seq., Challenges Any Constitutional Law As An Absolute Law..................................................................14

    4.   The Abusive Use of CCP. §§ 391 et seq., is Enabling Fraud And Deception in In the State Courts by Dismissing New Litigation Causes Property Loss At The Expiration of The Statute of Limitations For the Benefits of the private entities Defendants Who May be Treated as State Actors...................................................................17

    5.   Sufficiently Close Nexus between the abusive use of §§ 391 et seq., leads to deprivation of property...................................................................19

    6.   Reasons Why California Code of Civil Procedure §§ 391 et. Seq. should be Stricken Down By The United States District Court.......................................21

    7.   Previous History of PERRY's Constitutional Depravation By the California Courts at Its Current State, Were Not Incidental, but Customary Under Code of Civil Procedure §§ 391 et. seq. The Statute Has Been Used As A Weapon To Undermine Valid Lawsuits And Deprived Property...................................................................26

    8.   First Depravation of PERRY's Rights Before The Superior Court And Court of Appeal Designated PERRY As A Vexatious Litigant Under §§ 391 et. Seq..................................................................26

    9.   Second Depravation of PERRY's Rights And Property Under §§ 391 Et. Seq. Leading To The Superior Court And Court Of Appeal Designating PERRY As A Vexatious Litigant...................................................................28

    10. Third Depravation of PERRY's Rights And Property and Designation of PERRY As A Vexatious Litigant by the Court of Appeal.........................................29

    11. Fourth Depravation of PERRY's Rights And Property Before His Designation As A Vexatious Litigant Under §§ 391 Et. Seq............................................31

    12. Fifth Depravation of PERRY's Rights And Property Before His Designation As A Vexatious Litigant Under §§ 391 Et. Seq............................................31

    13. Sixth Depravation of PERRY's Rights And Property Under §§ 391 et. seq..............32

    14. PERRY's Property Interests are Protected By the Constitution and Should Have Been Addressed and Reviewed By the California Courts.......................................34

    15. The State Courts Aids Lawyers and Their Client to Beat Valid Lawsuit by Designating Pro Se by Them as Vexatious Litigants.................................................35

    16. Plaintiff Was Entitled and Denied a Evidentiary Findings Without Holding A Hearing On His Request To File New Litigation.........................................37

    17. The Present Case Against Bally's Total Fitness And LA Fitness.........................39

    18. The Case Against BALLY Total Fitness And LA Fitness...............................39

VI.  **LEGAL STANDARD**

    19. GENERAL ALLEGATION (By the Plaintiff against all Respondents)...................42

20. INJUNCTIVE RELIEF ALLEGATIONS IN REGARDS TO CCP. §§391 et seq., USED TO BLOCK ACCESS TO THE STATE COURTS. (By the Plaintiff against all Defendants and Respondents)…………..………………………………...…..43
21. DECLARATORY RELIEF ALLEGATIONS IN REGARDS TO CCP. §§391 et seq.,. USED TO BLOCK ACCESS TO THE STATE COURTS. (By the Plaintiff against all Defendants and Respondents)………………………………… …...………….44
22. FACTUAL ALLEGATIONS. (Against Bally's Total Fitness and LA Fitness DOES 1-10)………………………………………………………………..........45
23. First Cause of Action Fraud And Intentional Deceit Forgery By LA Fitness's Contract - Constructive Fraud. [Against Bally's Total Fitness and LA Fitness DOES 1-10]………………………………………………………………...………...45
24. Second Cause Of Action For Breach Of Contract For Failure To Perform And Failure Of Consideration. [Against Bally Total Fitness and LA Fitness and DOES 1-10]……………………………………………………………….47
25. Third Cause Of Action For Intentional Interference With Prospective Economic Advantage - Tortious Interference With Contract [Against LA Fitness DOES 1-10]……………………………………………….48
26. Forth Cause Of Action  For  Unjust Enrichment – Money Had And Received [Against Bally Total Fitness and LA Fitness and DOES 1-10]…………………………………51
27. Fifth Cause of Action For CLRA (Civ. Code, § 1770, Subd. (A); For Unfair And  Illegal Business Practices (Business And Profession §17200 Et Seq. Commencing With Section §17500). [Against Bally Total Fitness and LAFitness LLC  DOES 1-10]……………………………………………………………………..52
28. Sixth Cause Of Action For False Representation Of Forfeiture Of Spa Membership [Against Bally Total Fitness and LAFitness LLC  DOES 1-10]…………………54
29. Seventh Cause of Action For Breach Of Fiduciary Duty. [Against Bally Total Fitness and LAFitness LLC  DOES 1-10]……………………………………………...…56
30. Eighth Cause of Action Intentional Interference With Contractual Relations  [Against Bally Total Fitness and LAFitness LLC  DOES 1-10]…………………………..57
31. Ninth Cause of Action For Breach Of Implied Covenant Of Good Faith And Fair Dealing [Against All Defendants]……………………………………………...…57
32. Tenth Cause of Action For Intentional Infliction Of   Emotional Distress
33. [Against All Defendants]…………………………………………….………..58
34. Plaintiff's Civil Conspiracy Allegations Are In Support of All The Causes Of Actions First – Tenth In Order To Impose Liability On The Defendants' Outrageous Misconduct And For The Other Torts Alleged In This Complaint……………………………….59
35. The Los Angeles Courts History of Depriving PERR's Constitutional Rights………………………………………………………………...……59
VII.   **CONCLUSION**…………………………………………………………...…..63
VIII.  **PRAYER FOR RELIEF** ……………………………………………………….63
IX.   **VERIFICATION**……………………………………………………..………..64
X.    **CERTIFICATE OF SERVICE**……………………………………………...…..65

1.      Plaintiff Moshe PERRY ("PERRY"), for his Complaint against defendants Bally Total Fitness, LA Fitness ("Fitness International, LLC."), Chin Yi, Seidler Equity Partners, Marina Del Ray, CA; CIVC Partners, Chicago; and Madison Dearborn Partners; Chicago, Does 1 through 10, the Los Angeles Superior Courts of California; California Court of Appeal - Second District, Justice Roger Boren; the California Supreme Court; the California Judicial Council, was acting as state actors and alleges as follows:

2.      Plaintiff PERRY sought and was denied an evidentiary hearing because he was previously designated as a vexatious litigant. He has not failed to develop the factual basis of his claim against Bally's Total Fitness and LAFitness before the state court deny his request for an evidentiary hearing and then dismissing his lawsuit. This was done to block PERRY access to the courts and to cause him to lose his property rights. The provisions of the California Code of Civil Procedure §391 et seq., (VLS) were design to defeat lawsuit with merits filed by a class of people who are in propria persona (pro se)/[1]/ plaintiff, who had little money to protect themselves or had the formal legal knowledge, who were deprived property rights and other rights. The California Courts use the VLS Code as a buffer to stop, disengage pro se litigants' lawsuits and then cause them to be dismissed. Hence, the facts on the ground is that the intention of VLS had little to do to with curbing frivolous lawsuits and the "unreasonable burden placed upon the courts by groundless litigation," but was to be used as a tool by the wealthy defendants against the poor plaintiffs. An example of how poorly-written laws can be constitutionally self-defeating by allowing the degree of reprehensibility of defendant's misconduct to be condoned.

3.      California Code of Civil Procedure §391 et seq., (VLS) is intentionally ambiguous because it is fairly susceptible to many interpretations, it contravene the rights and adequate protections arises from pro se' property interest protections and deprives/[2]/ a pro se his property rights without just compensation and due process entitlement to an evidentiary hearing when filling new litigation,[3] actions are not stayed, allowing the statutes of limitation to expire,/[4]/ is in violation of the Fifth Amendment of

[1]      Propria persona is mentioned in California Code of Civil Procedure §§ 391(b)(1), 391.(b)(3), 391(d), 391.3(b), 391.7(a).
[2]      *Zambrano v. City of Tustin*, 885 F. 2d 1473 - Court of Appeals, 9th Circuit 1989: "We have previously held that fundamental fairness requires a *pre*-deprivation hearing before the court may order sanctions. *See Miranda*, 710 F.2d at 523. "Absent extraordinary circumstances, procedural due process requires notice and a hearing before any governmental deprivation of a significant property interest." (emphasis added). *See also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980)." [Citation]
[3]      See California Code of Civil Procedure §§ 391.7(a), 391.8(a).
[4]      A state-created cause of action can be deemed to arise under federal law (1) where federal law completely preempts state law, see *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Toumajian v. Frailey*, 135 F.3d 648, 654-55 (9th Cir. 1998).

the U.S. Constitution which provides, **"No person shall be....nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."** See in *Burton v. Wilmington Parking Authority*, 365 US 715 - Supreme Court 1961, **"All persons have equal rights, while in another portion, also serving the public."** A person involuntary been designated as vexatious litigant, downgraded as second-class citizen is amounting to grave injustice and is offensive; such person deserve no less justice than anyone else. [For reference go to page 17, see Reasons to Strike §§ 391 et.seq.] *Burton v. Wilmington Parking Authority*, 365 US 715.

## I. PARTIES

4.     Plaintiff Moshe PERRY (hereinafter "Plaintiff"), is a citizen of the United States and the State of California, resident in 23705 Vanowen St. No. 262, West Hills, CA, 91307.

5.     Plaintiff is informed and believes, and based thereon alleges, that Bally Total Fitness (hereinafter "Bally") is a California corporation with its principal Bally Total Fitness of business located in Chicago, IL.

6.     Plaintiff is informed and believes, and based thereon alleges, that LA Fitness INC. (hereinafter "LA Fitness") purchased all of Bally Total Fitness locations in 2012 and is a California corporation with its principal office business located in Irvine, California.

7.     Plaintiff is informed and believes, and based thereon alleges, that since it was founded in 1984, LAFitness LLC has remained an intensely private company, one that is reluctant to share information publicly. LAFitness LLC takes on the persona of its founder, Chin Yi, a Korean-born immigrant who came to the United States when he was a boy.

8.     Plaintiff is informed and believes, and based thereon alleges, that LA Fitness is owned by three main investment companies: Seidler Equity Partners, Marina Del Ray, CA; CIVC Partners, Chicago; and Madison Dearborn Partners, Chicago.

9.     Plaintiff is ignorant of the true names and capacities of some defendants sued herein ignorant of the true names and capacities of some defendants sued herein DOES 1 through 10, and therefore sue theses defendants the others by such fictitious names.

10.     The Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

11.     Plaintiff will amend this complaint to allege their true names and capacities when ascertained and other pertinent information needed to perfect this complaint. The Plaintiff if may be ignorant of the true names and capacities of the defendants sued herein as Does 1 through 100, inclusive,

11.   Plaintiff will amend this complaint to allege their true names and capacities when ascertained and other pertinent information needed to perfect this complaint. The Plaintiff if may be ignorant of the true names and capacities of the defendants sued herein as Does 1 through 100, inclusive, and therefore sues these defendants by their known names and any of their fictitious names (hereinafter will referred to them as "the unknown defendants") are unknown to Plaintiff..

12.   The Plaintiff will amend this complaint to allege their true names and capacities once they have been ascertained.

## II.   NATURE OF THE CASE

13.   PERRY has nowhere to go to address his grievances from loss of Bally's membership and he is seeking relief from the United States District Court as there are no obstacles in any state court jurisdiction since the state court dismiss PERRY's lawsuit.[5]   PERRY was forced to reach of the federal courts for relief because the State Court are blocking him access to the court. Simply said, by blocking access to the Courts the State of California are **"dumping"** their cases into the federal courts.[6]

14.   Plaintiff PERRY filed a lawsuit in the State Court against Bally's Total Fitness and LAFitness for losing his 28 years Bally's membership resulted from fraud, forgery of Plaintiff signature on LAFitness contract, and breach of contract. While the suit was pending, LAFitness had made an offer to PERRY to settle the case. However, when the State Court issued orders denying PERRY's filling of new litigation and an evidentiary hearing motion on the issues of merits and the evidence. The State Court then dismissed the lawsuit because PERRY was a vexatious litigant.

15.   In or about November 30, 2011, defendant LAFitness acquired nearly all of the Bally Total Fitness clubs in Southern California and its assets, including the property, liabilities and all of the benefits and contractual rights owed to Plaintiff PERRY under the agreement of July 28, 1987.

16.   On or about December 2011, Plaintiff arrived at the Bally Total Fitness location in Chatsworth, California. At that time Bally was in the process of turning into LA Fitness Plaintiff was handed by one of Bally Staff an **LA Fitness membership card number: F12667542.** Plaintiff was not

---

[5]   See, eg., ***Pennzoil Co. v. Texaco, Inc.***, 481 U.S. 1, 12-13 (1987) (state has important interest in enforcing private judgment). As Justice Stevens explained in his concurrence, By abandoning the... requir[ement] that the State have a substantive interest in the ongoing proceeding, an interest that goes beyond its interest as adjudicator of wholly private disputes.., the Court cuts the Younger doctrine adrift from its original doctrinal moorings which dealt with the States' interest in enforcing their....laws... Id. at 30 n.2 (Stevens, J., concurring).

[6]   The State Court meant more than that under the VLS statutes as was intended. In fact, the VLS was practices in contrast of it, and was manifested into a full-blown form, often misinterpreted by judges and justices according to their whims, to serve only those whom it pleases. Such would raise the question of a "state action."

asked by anyone to sign any paper and no LA Fitness contract was signed before accepting LA Fitness membership card, replacing **Bally's Total Fitness 28years "National" membership # 0005851190008**.

17.     When on March 2, 2012, Plaintiff had arrived to the newly open LA Fitness location in Chatsworth, new staff was in the entry place and as he attempted to enter the club as he did for the past 28 years, he was refused.   The staff informed Plaintiff he must first pay $119.95 in dues and when Plaintiff protested he paid 3 years in advance $165.99, he was informed he only paid 65.99. Plaintiff asked for the manager and was told he was not in and so he left his phone number to call him back.

18.     Upon information and belief, Plaintiff states that LA Fitness claimed that Plaintiff PERRY had a "Local" membership entitled him for only 3 visits a week, and not a Bally Total Fitness "National" membership he had since July 28, 1987.

### III.     VENUE AND JURISDICTION

19.     Plaintiff asserts Federal courts have **"federal question"** subject matter jurisdiction over cases arising under the Constitution, acts of Congress, or treaties.   See 28 U.S.C. § 1331- Federal question, which creates a cause of action conferring jurisdiction to state courts does not oust federal courts of jurisdiction, when such right is not able to be brought in the State Court by the Plaintiff[7]/ in the state court.[8]/   Federal question must appear on the face of plaintiff's complaint for federal question jurisdiction to be sustainable.[9]/ See id. ***Louisville & Nashville R. Co. v. Mottley***, 211 U.S. 149 (1908) at 153.

20.     Plaintiff also asserts the amount of controversy exceeds seventy five thousand dollars ($75,000)[10] and Plaintiff is a citizen of states which are different from the states where Defendants are

---

[7]     "It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." ***Grupo Dataflux v. Atlas Global Group***, LP, 541 U.S. 567, 570 (citation and internal quotation omitted).

[8]     See ***Chair King, Inc. v. Houston Cellular Corp.***, 131 F.3d 507, 512 (5th Cir.1997).   A federal statute creates a private cause of action. "[t]o establish a cause of action in district court under section 1331 [the plaintiffs] must show first that their action . 'arises under' . [federal law] and second that section 1331 jurisdiction is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere." ***Connors v. Amax Coal Co., Inc.***, 858 F.2d 1226, 1229-30 (7th Cir.1988).

[9]     **The Ninth Circuit follows the Primary Purpose Test:**   The Primary Purposes Test requires a court to determine the primary purpose of a lawsuit and then to "align for jurisdictional purposes those parties whose interests coincide respecting the 'primary matter in dispute.'" ***Prudential Real Estate Affiliates, v. PPR Realty***, 204 F.3d 867, 873 (9th Cir. 2000) (jurisdiction upheld) (quoting ***Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.***, 819 F.2d 1519, 1522–23 (9th Cir. 1987)).

[10]     See ***Exxon Mobil Corp. v. Allapattah Servs., Inc.***, 2005 WL 1469477 (U.S. Jun. 23, 2005) Federal diversity jurisdiction existed as to at least one claim, the court could exercise supplemental jurisdiction over all other claims between the parties in the litigation. ***Mineworkers v. Gibbs***, 383 U.S. 715 (1966).   Under 28 U.S.C. § 1367 of the United States Code. This section reversed the rule in Finley by permitting federal courts to exercise supplemental jurisdiction "in any civil action" over related claims by or against different parties so long as one party satisfied the jurisdictional requirement.

7

incorporated and have their principal places of business. ***Strawbridge v. Curtis***, 3 Cranch 267 (1806). This case involves the loss of use where a breach deprives a plaintiff of the use of property rights resulted from defendants' fraud,[11] forgery and malfeasance and a breach of contract requiring specific performance of the agreement and awarding and other torts for reasonable punitive damages are available.[12] Plaintiff's demanded punitive damages are to be included in the calculation of amount in controversy. See ***Klepper***, 916 F.2d at 341,[13] and estimate the damages using "good faith," genuine and legitimate reasons for asserting that the $75,000 jurisdictional amount was satisfied.[14]

21.    In ***International Gateway***, the object of the suit was to escape from liability under a contract.   The court held that the "**value of the relief, therefore, is measured by the liability that will follow if the contract is valid and enforceable.**" *Id.* at 125.   "[W]here a plaintiff seeks injunctive or declaratory relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." ***International Gateway Communications, Inc. v. Communication Telesystems Int'l, Inc.***, 922 F.Supp. 122, 124-25 (N.D.Ill.1996); *see also* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3708 ("**it is well-settled that the amount in controversy is said to be measured for subject matter jurisdiction purposes by the value of the right that the plaintiff seeks to enforce or to protect against the defendant or the value of the object that is the subject matter of the action**").

22.    The instant situation is analogous to ***International Gateway***.   In section 20 of the Complaint, PERRY requested declaratory judgment.   As with the plaintiff in ***International Gateway*** here too, therefore, the value of the relief should be measured by the liability that will follow if the contract is

---

[11]    Diversity jurisdiction cannot be defeated if defendants fraudulently joined. These terms includes "in-state" and "resident" defendants. See, e.g., ***McKee v. Kan. City S. Ry. Co.***, 358 F.3d 329, 335 (5th Cir. 2004) (utilizing the term "resident defendant" to indicate the type of defendant who defeats diversity jurisdiction, **ONLY** in assuming no fraudulent joinder (quoting ***Chesapeake & Ohio Ry. Co. v. Cockrell***, 232 U.S. 146, 152 (1914)); ***Green v. Amerada Hess Corp.***, 707 F.2d 201, 205 (5th Cir. 1983) (stating that, to prove fraudulent joinder, defendant "[m]ust prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court,...") (emphasis added) 13E Wright & Miller § 3606, p. 243; *see also* 13F Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure*§ 3641.1 (comprehensive discussion of fraudulent joinder) [hereinafter, 13F Wright & Miller].

[12]    See ***Integrated Architecture, LLC v. New Hts. Gymnastics, LLC***, N.D. Ohio No. 3:09 CV 1696, 2011 WL 1769006 (May 9, 2011)

[13]    See ***Klepper v. First American Bank***, 916 F.2d 337, 340 (6th Cir.1990) (citing ***St. Paul Mercury Indem. Co. v. Red Cab Co.***, 303 U.S. 283, 288-89 (1938)). When determining whether the amount in controversy required for diversity jurisdiction has been satisfied, the complaint is examined at the time it was filed. ***Klepper***, 916 F.2d at 340.

[14]    A court can consider evidence outside of the allegations in the complaint to determine whether the corporation should be aligned as a plaintiff.   *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1235–36 (9th Cir. 2008) (jurisdiction upheld).

valid and enforceable. Bally's Total Fitness - LAFitness "National" annual membership estimated cost of $700 s year. On November 30, 2011 to the present, Bally's Total Fitness deprived PERRY through LAFitness nearly five (5) years in the estimated amount of $ 3,500 and damages $259,000.00. A California appellate court reaffirmed that a ratio of 70 is permissible. See *Weeks v. Baker & McKenzie* (1998) 63 CA4th 1128, 1166, 74 CR2d 510.

23. Plaintiff challenges the state deprivations procedures were discriminatory and states the necessary elements of a § 1983 claim for a procedural Due Process; and for § 1985(3) violation.

24. The District Court has original jurisdiction over this action under 42 U.S.C. § 1983 claim for a procedural due process violation, which Plaintiff is presently challenging the state deprivations procedures were inadequate in failing to provide an evidentiary hearing; and § 1985(3) (in damages conjunction with 28 U.S.C. § 1343(a)(3)); which protects against conspiracies motivated by class-based discriminatory animus.

25. The District Court has also original jurisdiction pursuant to 28 U.S. Code § 2403-constitutional question, drawing into question the constitutionality of the California Code of Civil Procedure §§ 391 et. Seq. pursuant to Federal Rules of Civil Procedure Rule 5.1 - Constitutional Challenge to a State Statute. Because §§ 391 et. Seq. is not used as a "deterrent" to curb the filling of frivolous lawsuits but rather as a weapon to prevent pro se, designated involuntarily as vexatious litigants from filling any lawsuits and to defeat valid lawsuits that has merit.

26. Plaintiff also claims § 1985(3) [15] which protects against conspiracies motivated by racial or class-based discriminatory animus, and the plaintiffs will sufficiently allege membership in a class that is protected by § 1985(3). Additionally, the plaintiff claims in Count VI that the defendants conspired to

---

[15] "Letting the cat out of the bag," in today's reality, asks any lawyer whether the words **"vexatious litigant"** does not stir any such animus or raises sentiments of hostility towards such person/s, results in retaliation in the state court system against such person/s?

The U.S. Supreme Court strictly construed the requirement of class-based invidious animus in *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825 (1983), finding that commercial and economic animus could not form the basis for a section 1985(3) claim. Read together, these two cases establish that in order to state a claim under 42 U.S.C. S 1985(3), a plaintiff must allege: (1) **a conspiracy**; (2) **motivated by** a racial or **class based discriminatory animus designed to deprive, directly or indirectly, any person** or class of persons **to the equal protection of the laws**; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Id. at 828-29; *Griffin v. Breckenridge*, 403 U.S. at 102-03. The vitality of this analysis was reaffirmed in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993). In both *Griffin v. Breckenridge*, 403 U.S. 88 (1971) and *Scott* the Supreme Court left open the possibility that section 1985(3) might apply to class-based animus not based upon race. In Bray, the sole Supreme Court case to address what might constitute an "otherwise class-based invidiously discriminatory animus," the Court clarified only that a class for purposes of section 1985(3) must be "something more than a group of individuals who share a desire to engage in conduct that the §1985(3) defendant disfavors." 506 U.S. at 269.

1   deprive him of his right of access to the courts. This right is only protected against interference by the
2   state, though, and the plaintiff will alleged that the defendants planned on being, or actually were, state
3   actors when they deprived the plaintiffs of access to the courts.

4          27.     Plaintiff also claims defendants' conspiracy to commit abuse of process and, thereby, to
5   obstruct justice in a state courts' conduct did constitute abuse of process, any claim that the defendants
6   obstructed justice by abusing process can be demonstrated by the trial court intentional misinterpretation
    of California laws.

7          28.     The District Court has also original jurisdiction pursuant to 28 U.S. Code § 2403, Plaintiff
8   reserved that the State shall not have all the rights of him as a party but that it may be subject to all
9   liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law
10  relating to the question of constitutionality.   But that the District Court must, under 28 U.S.C. §2403,
11  certify to the appropriate attorney general that a statute has been questioned as a constitutional challenge
12  a California state statute, not only those **affecting the public interest**." (See Rule 5.1 - Committee
    Notes on Rules—2006.)

13         29.     The District Court has also original jurisdiction pursuant to Title 28, Section 1331 of the
14  United States Code confers upon federal district courts jurisdiction over "all civil actions arising under
15  the Constitution, laws, or treaties of the United States." Section 1331, which grants what is commonly
16  referred to as federal question jurisdiction, is an all-purpose jurisdictional statute,/[16]/ available regardless
17  of the defendant's identity and, since 1980, is not limited by any requirement that a minimum dollar
18  amount be in controversy.    Section 1331 (and 28 U.S.C. § 1343) also confers jurisdiction in actions
    authorized by 42 U.S.C. § 1983 against defendants acting under color of state law.

19         30.     The District Court has also original jurisdiction pursuant to 28 U.S. Code § 1332 -
20  Diversity of citizenship from Bally Total Fitness citizenship Crystal Lake, IL 60039-0739 and Chicago,

21

22

23  [16]      In addition to the general federal question jurisdiction conferred by Section 1331, there are three
    colorably meritorious allegations of jurisdiction remain: diversity of citizenship, regulation of commerce
24  and monopolies, and federal question. Congress has enacted a number of more specific statutes
    conferring jurisdiction on the district courts in cases arising under particular federal laws. One of these,
25  once of considerable importance, grants jurisdiction of cases arising under any congressional act
    regulating commerce against restraints and monopolies. (I.e. LAFitness use of a monopoly terminates
26  years of spa memberships to Bally's Total Fitness in order to increase profits.) (See 28 U.S.C. §
    1337(a)).
27      The significance of section 1337 "lies in the fact that it does not require an amount in
    controversy." 13 Wright, Miller & Cooper, supra § 3574, at 503.

28

IL 60631, with LAFitness LLC becoming a monopoly/[17]/ acting as a proxy to Bally Total Fitness in California.

## B. VENUE

31.     Venue therefore is proper in this district, because the incident and repossession occurred in California, in the County of Los Angeles, which falls within the jurisdiction of this Court.

32.     Plaintiff is a citizen of the United States and of California should have the rights for procedural due process to the Los Angeles Court. Presently, Plaintiff should be allowed to pursue justice and equity in the United States District Court or not.

## IV.     FEDERAL QUESTION JURISDICTION

33.     Title 28, Section 1331 of the United States Code confers upon federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Section 1331, which grants what is commonly referred to as federal question jurisdiction, is an all-purpose jurisdictional statute,/[18]/ available regardless of the defendant's identity and, since 1980, is not limited by any requirement that a minimum dollar amount be in controversy./[19]/ Section 1331 (and 28 U.S.C. § 1343) also confers jurisdiction in actions authorized by 42 U.S.C. § 1983 against defendants acting under color of state law./[20]/

34.     A federal ingredient is very likely present in any case in which the plaintiff or defendant rests or may rest on a proposition of federal law as part of its claim or defense. In ***Osborn v. Bank of the United State*** 22 U.S. 738 (1824), federal law established the Bank of the United States. That ingredient alone made constitutional a statute enabling the bank to sue and be sued on its contracts (generally state law claims) in federal courts./[21]/ Likewise, when a state court applies a the vexatious litigant statute that

---

[17]     15 U.S. Code § 2 - Monopolizing trade a felony; penalty: Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

[18]     Title 28, Section 1331 is an organic statutes may waive sovereign immunity, create causes of action, or specify relief.

[19]     Jurisdictional provision are now also superfluous, it is often still invoked along with § 1331 in civil rights cases. See ***ErieNet, Incorporated v. Velocity Net, Incorporated***, 156 F.3d 513, 519-20 (3d Cir. 1998). See also, e.g., ***Clinton v. Jones***, 520 U.S. 681, 685 n.1 (1997); ***Dixon v. Burke Co., Ga.***, 303 F.3d 1271, 1274 (11th Cir. 2002).

[20]     See 28 U.S.C. § 1343.

[21]     Article III would, standing alone, ostensibly permit the exercise of subject matter jurisdiction in disputes that arise because it has been interpreted to require only that a federal issue comprise an "original ingredient" in order for a federal court to constitutionally exercise federal question jurisdiction. See Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 823 (1824) (the Constitution affords

it incorporated within federal and constitutional boundaries, any case may be used to challenge or raise federal question./[22]/

35.    Both Article III, Section II of the Constitution and 28 U.S.C. § 1331 use the same phrase, "**arising under**," to define federal question jurisdiction, but the Supreme Court has not interpreted the constitutional and statutory language identically.    In addressing the constitutional language, the Court has been expansive, broadly interpreting "arising under" to include any case in which a federal question is an "**ingredient of the original cause**."/[23]/

## V.    LEGAL ARGUMENTS

### 1.    PERRY Has Standing To Challenge The California Vexatious Litigant Statute (VLS) CCP. §§ 391 et. seq.

36.    Here PERRY has a standing to challenge the California Vexatious Litigant Statute. See In *Wolfe v. Strankman*, 392 F.3d 358, 364 (9th Cir. 2004). The law of standing has its roots in Article III's case and controversy requirement./[24]/ The U.S. Supreme Court has established a three-part test for standing. The "**irreducible constitutional minimum of standing**" requires the plaintiff to establish: **First** ... an "**injury in fact**"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "**actual or imminent**," not "conjectural" or "hypothetical." **Second**, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... **trace[able]** to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." **Third,** it must be "**likely**," as opposed to merely "speculative," that the injury will be "**redressed by a favorable decision**."/[25]/ See also *Wolfe v. Strankman*, 392 F.3d 358, 364 (9th Cir. 2004) the Ninth Circuit stated the following:

---

the judicial power to cases that "form [] an ingredient of the original cause.").    American National Red Cross v. S.G., 505 U.S. 247, 264 (1992) (Article III authorizes Congress to confer federal jurisdiction over claims involving federally chartered corporations).

[22]    **Federal Question under the U.S. CONST. art. III, § 2. Article III, § 2** defines other categories of controversies which may be adjudicated by federal courts, including disputes between states, citizens and states, and citizens of the same state claiming land in other states.    This however, is applicable as long as the suit is commenced or prosecuted against the state by its own citizen. See U.S. CONST. amend. XI ("The judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the United States by Citizens of another State . . . .").

[23]    See *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 823 (1824); see also *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S.480, 492 (1983) (Foreign Sovereign Immunities Act is constitutional as actions against foreign sovereigns or foreign plaintiffs in U.S. courts require the application of federal law).

[24]    *Summers v. Earth Island Institute*, 555 U.S. 488, 492-93 (2009); *DaimlerChrysler Corporation v. Cuno*, 547 U.S. 332, 340-41 (2006).

[25]    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); see also Summers, 555 U.S. at 493.

"For Wolfe to have standing to challenge the Vexatious Litigant Statute, **he must show that he is sufficiently likely to be injured by the operation of the statute that his dispute is ripe.** One way — often the best way — **for a plaintiff to establish standing in such a case is to demonstrate that he has previously engaged in the sort of activity in which he now claims he will engage again if not prohibited by the statute he seeks to challenge.** See *United Public Workers v. Mitchell*, 330 U.S. 75, 89-92, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (holding that plaintiffs lacked standing to challenge the Hatch Act because the nature of the political activities they intended to engage in was a matter of speculation). One can also establish standing to sue by demonstrating a history of enforcement against oneself and others. See *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139-40 (9th Cir.2000) (en banc) (holding that the history of enforcement of a statute is relevant to standing and ripeness inquiry); *American-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 508 (9th Cir.1992) (holding that the threat of injury was not speculative because the plaintiffs had been previously charged under the challenged statute)." [Citation]

"The California legislature adopted the Vexatious Litigant Statute in 1963 to ease the "unreasonable burden placed upon the courts by groundless litigation." *Wolfgram v. Wells Fargo Bank*, 53 Cal.App.4th 43, 61 Cal.Rptr.2d 694, 698 (1997). The statute provides that **a defendant in any state court** may move the court to require a **pro se plaintiff** who qualifies as a "vexatious litigant"3 to post a security bond before proceeding. Cal.Civ.Proc.Code § 391.1. The statute also allows a judge to enter a prefiling order prohibiting a vexatious litigant from filing any new pro se litigation without the permission of the presiding judge of the court where the litigant seeks to file. *Id.* § 391.7(a). Parties subject to prefiling orders are placed on a statewide list — "the Vexatious Litigant List" — maintained by the Judicial Council of California and disseminated to clerks of the state courts. *Id.* § 391.7(e). The Vexatious Litigant Statute has survived several constitutional challenges in California courts. *See, e.g., Wolfgram,* 61 Cal.Rptr.2d at 699-706; *Childs v. PaineWebber Inc.,* 29 Cal.App.4th 982, 35 Cal.Rptr.2d 93, 99 (1994); *In re Whitaker,* 6 Cal.App.4th 54, 8 Cal.Rptr.2d 249, 250-51 (1992)."

## 2. The Nexus Created By Designation Of Vexatious Under CCP. §§ 391 et seq., is Used As A Weapon To Defeat New Litigation, Valid Lawsuits, Permanently Depriving Plaintiff Access To The Courts, Leads To Deprivations of Property.

37.    When LAFitness LLC heard the news from the Superior Court, they had a change their minds and immediately withdrew their settlement offer, resulted in PERRY loss of his property rights. The nexus was created with State of California statutes (CCP. §§ 391 et seq.,) being used as a tool to permanently deprive access to the courts, leads to deprivations of property rights without due process.

When "there is a sufficiently close nexus between the State/[23]/ and the challenged action of the regulated entity…the action of the latter may be fairly treated as that of the State itself." ***Jackson v. Metropolitan Edison Co***, 419 U.S. 345, 351 (1974), citing ***Moose Lodge No. 107 v. Irvis,*** 407 U.S. 163 (1972). When the government is significantly involved in a mutually beneficial relationship with a private entity, that entity's conduct is limited by constitutional boundaries./[24]/ See In ***Evans v. Newton***,/[25]/ decided in 1966, the Court held that a private park, due to its municipal nature and public function, was a state entity whose actions were limited by the Constitution.

38. The State of California had endowed (granted) attorneys and others private individuals or groups the power to request by motions to have others be designated as vexatious litigants, because those parties accuse pro se as a tactical advantage they filed a frivolous litigation. Such was the case of PERRY being forced to become a vexatious litigant.

**3. The Abusive Interpretations of CCP. §§ 391 et seq., Challenges Any Constitutional Law As An Absolute Law[26].**

39. The abusive use of CCP. §§ 391 et seq., is an enabling lawyers for defendants and Judges to use the code as a weapon to defeat valid lawsuits in defective fact findings for mere negligent violations of a pro se plaintiff after the statutes of limitation expires. Proof can be found in the numbers of lawsuits appeals and writ petitions and review by pro se that are denied by the state courts is insurmountable. Why the Code CCP. §§ 391 et seq., is silence as to assume that a pro se plaintiff is "guilty" and a "**defendant**" is not a perpetrator of the wrongs over which he/she was being sued for a good reason. Therefore, why is it assumed always assumed that pro se plaintiff is a "**vexatious**

[23] The State Court refusal to hear PERRY's valid lawsuit and leading to its dismissal, led to permanent deprivation of PERRY's property and constitutional rights.

[24] "It is irony amounting to grave injustice that in one part of a single building, erected and maintained with public funds by an agency of the State to serve a public purpose, all persons have equal rights, while in another portion, also serving the public, a Negro is a second-class citizen, offensive because of his race, without rights and unentitled to service, but at the same time fully enjoys equal access to nearby restaurants in wholly privately owned buildings." See ***Burton v. Wilmington Parking Authority***, 365 US 715 - Supreme Court 1961, Id. at 724.

[25] See ***Evans v. Newton***, 382 U.S. 296, 301 (1966); see also ***Marsh v. Alabama***, 326 U.S. 501, 509 (1946).

[26] An Absolute Law is a law of nature which is thought to be unchanging in principle, even though circumstances may vary the way in which it is applied. It's similar to natural law which is the rule of conduct supposedly inherent in the relations between human beings. Absolute law is thought to be discoverable by way of reason. Absolute law is based upon an innate moral sense. It is the law of nature or the laws of nature, collectively.

litigant"?[27] Was the California Code was intentionally set authoritative to dismiss valid lawsuit by a pro se litigant[28] and then to designate them as vexatious litigants?  Is this a tool of the rich against the poor?  Is this consistent with the California Courts' intent restrain access to the Courts?

40.    A defendant can defeat a lawsuit before it took place based on accusations that plaintiff is a vexatious litigant and therefore the lawsuit must be dismissed.  The Code (**CCP. § 391.1**) also assumes by preference the guilt of the pro se plaintiff "[t]he plaintiff is a vexatious litigant." Then "[r]easonable probability that he or she will prevail in the litigation against the moving defendant" "[p]laintiff to furnish security shall be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he or she will prevail in the litigation against the moving defendant."

41.    See California Code of Civil Procedure § 391.2 is contradictory in terms where "[E]xcept for an order dismissing the litigation pursuant to subdivision (b) of Section 391.3, no determination made by the court in determining or ruling upon the motion shall be or be deemed to be a determination of any issue in the litigation or of the merits thereof."   The question arises as to why it is not a determination on merits?  When merits show validly of a lawsuit, the State Court discusses the procedural matters and technicalities of the vexatious litigant statutes with respect to a lawsuit, but yet is discount merits.[29]

42.    If an evidence shows that there is material fact in dispute presented in a case by the pro se plaintiff, that alone should defeat a motion that sole purpose is to designates him a pro se as a vexatious

---

[27]    See California Code Of Civil Procedure § 391.1: "In any litigation pending in any court of this state, at any time until final judgment is entered, **a defendant** may move the court, upon notice and hearing,...that the **plaintiff** is a vexatious litigant and that there is not a reasonable probability that he or she will prevail in the litigation against the moving **defendant**."

[28]    The U.S. Supreme Court discuss pre-warning of a statute in ***Screws v. United States***, 325 U.S. 91 (1945): "[I]t is said, however, that this construction of the Act will not save it from the infirmity of vagueness…" "[o]r the specific intent required by the Act is an intent to deprive a person of a right which has been made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them."

[29]    Merits (Old French "merite", reward, moral worth) is a legal concept referring to the inherent rights and wrongs of a legal case, absent of any emotional or technical biases. The evidence is solely applied to cases decided on the merits, and any procedural matters are discounted.   The word merits refers to the substance of a legal dispute and not the technicalities that can affect a lawsuit. A judgment on the merits is the final resolution of a particular dispute. Reference: Wikipedia, the free encyclopedia.

A defense upon the merits, is one that rests upon the justice of the cause, and not upon technical grounds only; there is, therefore, a difference between a good defense, which may be technical or not, and a defense on the merits. 5 B. & Ald. 703 1 Ashm. R. 4; 5 John. R. 536; Id. 360; 3 John. R. 245 Id. 449; 6 John. R. 131; 4 John. R. 486; 2 Cowen, R. 281; 7 Cowen, R. 514; 6 Wend. R. 511; 6 Cowen, R. 895.

1 litigant and dismiss a valid lawsuit  It then cannot be assume that after "[t]he hearing upon the motion

2 the court shall consider any evidence, written or oral, by witnesses or affidavit, as may be material to the

3 ground of the motion," will not constitute determination as to **the merits thereof.**

4      43.    If the determination under § 391.2 are based on any evidence, will defeat a motion to

5 designate a plaintiff as a vexatious litigant and then dismiss the lawsuit, it cannot be said the litigation has

6 no merits, and pro se plaintiff cannot be designated as a vexatious litigant.  The Code cannot be made

7 perfunctory and pro forma applicable only for the benefit of the rich defendant/s to **"kill"** valid pro se

lawsuit, or force them to pay exuberant security bonds[30] for the benefits of the perpetrators they sued.[31]

8      44.    However, if a lawsuit is dismissed after it inception using a singular cause or issue or the

9 same defendant/s it cannot be applied to any other state court lawsuit.  See the California Code of Civil

10 Procedure § 391.1 (2)(b): "After a litigation has been finally determined against the person, repeatedly

11 relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against

12 the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of

13 action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final

14 determination against the same defendant or defendants as to whom the litigation was finally

15 determined."    However, under CCP. § 391.7 (c) further state that any pro se future lawsuits can be

16 dismissed based on the lawsuit discussed in § 391.1 (2)(b).  How can this be when "[t]he validity of the

17 determination against the same defendant or defendants as to whom the litigation was finally

determined."

18      45.    For example, in ***Zambrano v. City of Tustin,*** 885 F. 2d at 1477  - Court of Appeals, (9th

19 Cir. 1989), and in ***Miranda v. S. Pac. Transp. Co.,*** 710 F.2d 516, 519 (9th Cir. 1983), the Ninth Circuit

20 has required sanctions must be consistent with the Federal rules, other statutes, and principles of **"right**

**and justice,"** Id. (quoting ***In re Ruffalo***, 390 U.S. 544, 554, 88 S.Ct. 1222, 1228, 20 L.Ed.2d 117 (1968)

21 (White, J., concurring).  It was stated that a sanctions order must be necessary for the court to 'carry out

22 the conduct of its business.'  There must be a close connection between the sanctionable conduct and the

---

[30]   ***Zambrano v. City of Tustin***, 885 F. 2d at 1477 - Court of Appeals, (9th Cir. 1989) **"The court system is not a private party that needs to be reimbursed for its inconvenience. Consequently, absent grossly negligent, reckless, or willful conduct, monetary penalties such as jury costs or judicial sanctions cannot be fairly levied against counsel for a violation of the local rules."**

[31]   California Code of Civil Procedure § 391.7(b):  Furnishing of security for the benefit of the defendants as provided in Section 391.3.

need to preserve the integrity of the court docket or the sanctity of the federal rules. "Finally, any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power. [35] This last principle includes a responsibility to consider the usefulness of more moderate penalties before imposing a monetary sanction."[36]

### 4.  The Abusive Use of CCP. §§ 391 et seq., is Enabling Fraud And Deception in In the State Courts by Dismissing New Litigation Causes Property Loss At The Expiration of The Statute of Limitations For the Benefits of the private entities Defendants Who May be Treated as State Actors.

46.  In reversing, the Supreme Court of the United States that it was clear to the Court that **"[w]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations."**  The proposition that private entities may be treated as state actors was not unique to _**Evans**_. In _**Marsh v. Alabama**_, decided in 1946, the Supreme Court held that exclusive property rights must sometimes yield to first amendment rights where a public function is being performed. (Id. at 509.)

47.  In _**Shelley v. Kraemer**_ 334 U.S. 1 (1948) the Supreme Court of the United States held that enforcing a racially restrictive covenant through the courts constitutes state action. See 334 U.S. 1, 18-19 (1948).  The idea was that judicial enforcement can constitute state action has been further refined in the Third Circuit so that **"[b]efore private persons can be considered state actors for the purposes of section 1983, the state must significantly contribute to the constitutional deprivation,** e.g., authorizing its own officers to invoke the force of law in aid of the private persons' request." _**Jordan**_, 20 F.3d at 1266.  Court orders mandating Plaintiff is a vexatious litigant because he filed the wrong state motion and obtained by State Court actors for discriminatory purposes, and these orders were enforceable by the Los Angeles Courts and Court of Appeal and the California Supreme Court and Judicial Council.

48.  Plaintiff State Court complaint against Bally's Total Fitness - LAFitness LLC., was dismissed because Plaintiff was deprived access to the Los Angeles Courts by the Supervising Judge of

---

[35]  _**Wolfe v. Strankman**_, 392 F.3d 358, 364 (9th Cir. 2004). "We recognize that 'there is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.' " _**De Long v. Hennessey**_, 912 F.2d 1144, 1147 (9th Cir. 1990) (_**quoting Tripati v. Beaman**_, 878 F.2d 351, 352 (10th Cir. 1989))."
[36]  _**Zambrano v. City of Tustin**_, 885 F. 2d at 1477 - Court of Appeals, (9th Cir. 1989) "While we think that a serious question is raised under this prong of the rule with respect both to the dismissal, _see supra_ n. 4, and the amount of the sanctions, in view of our disposition, _infra_ p. 1484, we do not rest our decision on that ground."

1 | the Los Angeles Superior Courts, Judge Kevin C. Brazile refusal to grant PERRY an evidently hearing

2 | and to file the new litigation.  LAFitness LLC, is a national fitness spa who in 2012 Purchase Bally Total

3 | Fitness and has grown now into a near monopoly, acquired 24hours Fitness clubs on November 2015.

4 |      49.    The Fifth Amendment of the U.S. Constitution provides, **"No person shall be....nor be**

5 | **deprived of life, liberty, or property, without due process of law; nor shall private property be**

6 | **taken for public use, without just compensation."**  The Supreme Court frequently interprets such

7 | provisions as the first, fourth and fourteenth amendments in resolving complex questions concerning the

protection of substantive constitutional rights.

8 |      50.    The Fourteenth Amendment reads, in part, that no state shall "deprive any person of life,

9 | liberty, or property, without due process of law." This applies to the states and to local governments.

10 | The Due Process Clause of the Fifth Amendment applies to the federal government. Most Due Process

11 | issues involve state laws.  Where there is government action, the abusive use of California Code of Civil

12 | Procedure §§ 391 at seq., leads to property deprivation[34]/ by Bally's Total Fitness - LA Fitness, then

there is a Due Process issue; substantive and procedural.

13 |      51.    The fourteenth amendment forbids **"any state"** to "deprive any person of life, liberty, or

14 | property, without due process of law."  Congress enacted the Civil Rights Act of 1871, part of which is

15 | now 42 U.S.C. § 1983, giving a civil action for redress to any person deprived under color of state law of

16 | a right secured by the Constitution or by federal law. This cause of action is enforceable either in state or

17 | federal court./[35]/

18 |      52.    This brings to point that at the present state, "[T]he California legislature adopted the

19 | Vexatious Litigant Statute in 1963 to ease the "unreasonable burden placed upon the courts by groundless

20 | litigation."  Presently, CCP. §§ 391 et seq., is being abused by the courts, who clearly do not use it as a

21 | deterrent, but as a weapon to defeat valid lawsuits to those involuntarily designated vexatious litigants

22 | and property taken from them.  Whether there is "**legitimate and substantial interests**" of CCP. §§ 391

23 | et seq., to curb frivolous lawsuits and the means chosen for achieving the interests "**unnecessarily**

24 | **impinge**" on constitutional rights, CCP. §§ 391 et seq., statute is therefore must be invalidated.

(*Zablocki* at 389.) So while the State interests under CCP. §§ 391 et seq., are "**legitimate and**

---

25 | [34]    See in *Zablocki v. Redhail*, 434 U.S. 374, 389 (1978) the Court emphasized that "**When a**

26 | **statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to**

27 | **effectuate only those interests. (Emphasis added.)**"

28 | [35]    28 U.S.C. § 1343 (1982).

1  **substantial,**" blocking PERRY access to the courts is no less compelling. Depriving PERRY of the

2  opportunity to vindicate fundamental rights while protecting State's interest in protecting people is not

3  stalking. ***Wolfe v. Strankman***, 392 F.3d 358, 364 (9th Cir. 2004).

4       53.    Discrimination which infringes on fundamental rights as blocking access to the courts

5  cannot rest alone on "**rational justification**."[36] This rises to the constitutional level that PERRY is able

6  to seek redress has constitutional significance interest as in ***Boddie v. Connecticut***, as the inability of a

7  person to dissolve a marriage. Ortwein v. Schwab, 410 U.S. 656 (1973) 409 U.S. at 445. See ***Boddie v. Connecticut***, supra, at 401 U.S. 382; ***Shapiro v. Thompson***, 394 U.S. 618, 394 U.S. 633.

8  
9          **5.  Sufficiently Close Nexus Between The Abusive Use Of §§ 391 Et Seq.,**
           **Leads To Deprivation of Property.**

10       54.    The behavior of non-government actors may also be imputed on the government for

11  Fourteenth Amendment purposes when there is a "**sufficiently close nexus**" between the abusive use of

12  §§ 391 et seq., leads to deprivation of property. Whether the nexus is sufficiently close is necessarily a

13  factual question which must be answered based on the totality of the circumstances.[37]

14       55.    As the Court noted in ***Blum v. Yaretsky***, 457 U.S. 991, 1004 (1982), "although the factual

15  setting of each case will be significant, our precedents indicate that a State normally can be held

16  responsible for a private decision only when it has exercised coercive power/[38]/ or has provided such

17  significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the

18  State." Citing ***Flagg Bros., Inc. v. Brooks*** 436 U.S. 149, 166 (1978). Whether the State of California

19  interference with PERRY's rights was done in order to achieve some compelling governmental objective,

19  the action will be prohibited when there is substantive due process violation./[39]/

20  

21  [36]    "The applicable standard, in measuring the propriety of Congress' classification, is that of rational

22  justification." See ***United States v. Kras***, 409 US 434 - Supreme Court 1973. See also ***Flemming v. Nestor***, 363 U.S. 603, 611-612 (1960); Dandridge v. Williams, 397 U.S., at 485-486; Richardson v. Belcher, 404 U.S., at 81.

23  [37]    ***Brodrick v. Oklahoma***, 413 U.S. 601, 615 (1973) ("[W]e believe that the overbreadth of a statute

24  must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.").

25  [38]    The abusive use of California Code of Civil Procedure §§ 391 at seq.,

26  [39]    When an individual brings a Due Process claim against a state claiming interference with a

27  fundamental right, it is the state's responsibility to demonstrate under the strict scrutiny standard, the compelling nature of its interest and the necessity of the chosen means. In other words, the state, and not

28  the plaintiff, carries the burden of proof when the strict scrutiny standard is applied. As the Court stated in ***Bowers v. Hardwick***, 478 U.S. 186, 189 (1986), "to prevail, the State would have to prove that the

56. The state law in question, California Code of Civil Procedure §391 et seq., contravene the right to adequate protection arises from the Fifth Amendment's to Plaintiff's property interest protections which are constantly compromise by the use of CCP. §391 et. seq. The Fifth Amendment of the U.S. Constitution provides, **"No person shall be....nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."**

57. The Supreme Court frequently interprets such provisions as the first, fourth and fourteenth amendments in resolving complex questions concerning the protection of substantive constitutional rights. Plaintiff claims that California intentionally use an over-broad interpretation of the California vexatious litigant's statutes §§ 391 et. Seq., by misconstruing it according to their whims, and lacking any basic due process procedures. In interpreting the Fourteenth Amendment under the 10th Amendment, nevertheless did not leave the federal government powerless and this cannot be distorted by the concept of Federalism, which while it grants the states a large measure of power and autonomy, it does not ignore the federal government, when the States' abuse of its citizens reaches an unreasonable level of deprivation.

58. In ***Zambra***no, 885 F.2d at 1477 and in ***Miranda v. S. Pac. Transp. Co.,*** 710 F.2d 516, 519 (9th Cir. 1983), the Ninth Circuit has required sanctions under local rules to meet strict criteria. In addition to being consistent with the Federal rules, other statutes, and principles of "right and justice," the sanctions order must be necessary for the court to 'carry out the conduct of its business.' There must be a close connection between the sanctionable conduct and the need to preserve the integrity of the court docket or the sanctity of the federal rules.

59. Yet, California vexatious litigant's statutes §§ 391 California statutes used as an umbrella to deny virtually all filling filed by a person that was involuntarily designated vexatious litigant, thus, blocking access to the courts. Thus, the state courts had passed on its role as a '**protectionist**' to become an "**obstructionist**"./[40]/ See ***Philadelphia v. New Jersey***, 437 U. S. 617, 624 (1978) "The crucial inquiry here must be directed to determining whether ch. 363 is basically an economic protectionist measure, and

statute is supported by a compelling interest and is the most narrowly drawn means of achieving that end."

---

[40]    PERRY was not allowed by the State Court of Appeal for the Second District the Order of April 27, 2010 designating him as a vexatious litigant and the Order dismissing his action The Court of Appeal designated PERRY as a vexatious litigant on May 22, 2010. All of PERRY's appeals concerning the designations as a vexatious litigant been were dismissed. He was not even allowed to have evidentiary hearings on any valid matters for relief he brought in the state courts for deprivation of property rights.

thus virtually per se invalid,…". ***Pike v. Bruce Church, Inc.,*** 397 U. S. 137, 397 U. S. 142. Pp. 437 U. S. 623-624."). Ibid; cf. ***Department of Revenue of Ky. v. Davis***, 553 U. S. 328, 341 (2008).

60.     There is a fine line when the State Courts seek to curb frivolous lawsuits and mounting difficulties and access to the courts.  In PERRY's case, he could not even afford an opportunity to state his case or able to afford an evidentiary hearing o the issues that blocks him access to the courts./[41]/ The California vexatious litigant's statutes §§ 391 et. Seq., does not only deals with what was filed in the states' courts but those matters filed in the federal courts.  Thus, if the State Court ignores property rights (and other rights) it refers to the Fourteenth Amendment to give it effect.  Thus, the California vexatious litigant statute (VLS) overreach specific provisions of the Constitution as deprivations of constitutional rights, privileges, or immunities, and which are knowingly done.

### 6.  Reasons Why California Code of Civil Procedure §§ 391 et. Seq. should be Stricken Down By The United States District Court.

61.     The United States District Court should ask the California Courts and California Judicial Council several questions. (**PERRY did not know he was doing anything wrong or willful at the time in the past/[42]/ conduct of filling court papers, nor did he know the existence of CCP. §§ 391 et. Seq.,**). Why do the California Judicial Council forms[43] do not have any fair notice or warning of the VLS statutes/[44]/ of the possibility of pro se being designated as a vexatious litigant, when people file legal

---

[41]     The Court has held that procedural due process requires that a welfare recipient be given a pre-termination evidentiary hearing. ***Ortwein v. Schwab***, 410 U.S. 656 (1973) citing ***Goldberg v. Kelly***, 397 U. S. 254, 397 U. S. 264, 397 U. S. 266-271 (1970).

[42]     CCP. §391(b(1)" **In the immediately preceding seven-year period has commenced,** prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing."

[43]     ***United States v. Cassel***, 408 F.3d 622, 635 (9th Cir. 2005) (quoting ***United States v. Gilbert***, 813 F.2d 1523, 1530 (9th Cir. 1987)).

[44]     **A note of caution, constitutional pre-warning of CCP. §§391 et. seq., should be noted on all** the California Judicial Council forms will save millions to the California courts' budget.   The U.S. Supreme Court discuss pre-warning of a statute in ***Screws v. United States***, 325 U.S. 91 (1945) citing ***Omaechevarria v. Idaho***, 246 U. S. 343: 'In every crime or public offense there must exist a union, or joint operation, of act and intent,….'" "It gives a person acting with reference to the statute fair warning that his conduct is within its prohibition. This requirement is met when a statute prohibits only "willful" acts in the sense we have explained. One who does act with such specific intent is aware that what he does is precisely that which the statute forbids.   He is under no necessity of guessing whether the statute applies to him (see ***Connally v. General Construction Co.***, 269 U. S. 385), for he either knows or acts in reckless disregard of its prohibition of the deprivation of a defined constitutional or other federal right. ***Gorin v. United States***, 312 U. S. 19, 312 U. S. 27-28."

papers in the past? /⁴⁵/ **The** California vexatious litigant statute is unconstitutionally vague, because it gives no fair notice to those who might violate the statute.

62.     The United States District Court should also ask the California Courts and California Judicial Council why do they grant fees waiver to pro se (based on merit of a lawsuit), then when they designate a person vexatious litigant, they claim the lawsuit lack merit?

63.     Why do the VLS does not distinguish between a vexatious litigant defendant, as a respondent in the Court of Appeal, and as a vexatious litigant plaintiff?  Whether the use of CCP. §§ 391 et. seq., foreclose on a defendant's defense is unconstitutional?

64.     Ethically a pro se litigant cannot be penalized for past conduct unless he/she had prior knowledge that their conduct was egregious, done willfully/⁴⁶/ in bad faith, vexatiously, wantonly, and for oppressive reasons to harass./⁴⁷/  The threshold question should be whether a person's past "vexatious litigious" conduct showed any intent to harass came within an authority of CCP. §§ 391 et. Seq., at the time of the past conduct.  Was it first relied upon to imposed such sanctions when the pro se first learned of it "[i]n the immediately preceding seven-year period" was a violation of any contempt of court?⁴⁸ (See CCP. §391(b)(1))

---

⁴⁵     See ***Screws v. United States***, 325 U.S. 91 (1945): [b]y its reference to the Fourteenth **Amendment guarantee that no state shall deprive any person of life without due process of law, gives fair warning to state officials that they are criminally liable for violating this right to life.**"

"To subject a state official to punishment under § 20 for such acts is not to penalize him without fair and definite warning.  **Rather, It Is To Uphold Elementary Standards Of Decency, And To Make American Principles Of Law And Our Constitutional Guarantees Mean Something More Than Pious Rhetoric.**"

⁴⁶     "[w]lillful" is a word "of many meanings, its construction often being influenced by its context." ***Spies v. United States***, 317 U. S. 492, 317 U. S. 497.  At times, as the Court held in *United States v. Murdock*, 290 U. S. 389, 290 U. S. 394, the word denotes an act which is intentional, rather than accidental.... And see *Felton v. United States*, 96 U. S. 699; *Potter v. United States*, 155 U. S. 438; *Spurr v. United States*, 174 U. S. 728; *Hargrove v. United States*, 67 F.2d 820.  **In that event, something more is required than the doing of the act proscribed by the statute.** Cf. *United States v. Balint*, 258 U. S. 250.  An evil motive to accomplish that which the statute condemns becomes a constituent element of the crime.  *Spurr v. United States*, supra, p. 174 U. S. 734.

⁴⁷     ***Zambrano v. City of Tustin***, 885 F. 2d 1473 - Court of Appeals, 9th Circuit 1989.  *See, e.g.*, Renfrew, *Discovery Sanctions: A Judicial Perspective*, 67 Cal.L.Rev. 264, 270 (1979); Comment, *Financial Penalties Imposed Directly Against Attorneys in Litigation Without Resort to the Contempt Power*, 26 U.C.L.A. 855, 876-78 (1979); Comment, *Sanctions Imposed by Courts on Attorneys Who Abuse the Judicial Process*, 44 U.Chi.L.Rev. 619 (1977); Note, *Dismissal for Failure to Attend a Pretrial Conference and the Use of Sanctions at Preparatory Stages of Litigation*, 72 Yale L.J. 819, 830 (1963).

⁴⁸     Before imposing civil contempt sanctions based upon the violation of a court order, a court only must conclude:

22

65.     PERRY can only find parallel in a few **Wisconsin Case Law** which can reasonably explain his arguments in regard to the power of the California Courts to punish a person for past conduct when he/she was unaware they are violating any law, which was inapplicable to them at the time of past filling when no Order existed at the time. (e.g. CCP. §391(b)(1)).  See in *Schroeder v. Schroeder*, 100 Wis. 2d 625, 638, 302 N.W.2d 475, 482 (1981) discussed that for a finding of civil contempt, it is essential that the thing ordered to be done be within the power of the person before he/she is to be punished for past conduct.  **"A person cannot be punished for contempt for failing to comply with an impossible order."**  See also *State v. Balistrieri*, 55 Wis. 2d 513, 523, 201 N.W.2d 18, 24 (1972). Whether the thing ordered is within the capability and knowledge of the person to do is a question of fact for the trial court to be decided upon the evidence presented.  See *In re Adam's Rib, Inc.,* 39 Wis. 2d 741, 746, 159 N.W.2d 643, 646 (1968).   **"A punitive sanction may be imposed for past conduct which was a contempt of court even though similar present conduct is a continuing contempt of court."**   **"Purge conditions must be within the power of the contemnor and must be reasonably related to the cause or nature of the contempt."** Larsen v. Larsen, 159 Wis. 2d 672, 465 N.W.2d 225 (Ct. App. 1990).

66.     The judicial council has also implemented vexatious litigant recommendations and forms which have references to the VLS.    In the case of the VLS statute the underlying merit standard is the action upon which the litigation is based.

67.     Pursuant to CCP § 391.7, the application to file litigation is not referenced in any fashion. It merely specifies that a litigant has to obtain "leave" from the presiding judge but does not specify whether the form of leave is oral or written.

68.     The word application is missing from the statute and is not incorporated by reference in any capacity as an application that an allegedly "vexatious" litigant has to submit to the court.

69.     The only filing that is referenced in the vexatious statute is whether the action to be filed has merit and the resulting order from the presiding justice pursuant to CCP § 391.7.

---

(1) the underlying order violated was valid and lawful;
(2) the underlying order was clear, definite, and unambiguous; and
(3) the contemnor had the ability to comply with the underlying order.  *United States v. Koblitz*, 803 F.2d 1523, 1527 (11th Cir. 1986).
Another court has provided similar guidance by requiring that the moving party establish that:
(1) the order the contemnor failed to comply with is clear and unambiguous,
(2) the proof of the noncompliance is clear and convincing, and
(3) the contemnor has not diligently attempted to comply in a reasonable manner.  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).

70.     There is also no terminology in the VLS that specifies that a court can implement a malicious stay until the merit of the application AND filing has been "recognized" delaying the case for months and eventually dismissing the case base on a vague merit argument.

71.     The Supreme Court has already struck down the invidious discrimination displayed by a court of appeal and a district court who engages in discrimination in the case of In *Rodriguez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 where a litigant had to demonstrate the merit of an appeal to reinstate an appeal.

72.     In California a relevant appeal filed in the court of appeal from a case that was heard in the Superior Court is dismissed in the Court of appeal as a new litigation and showing merit is elusive. Although the term appeal is not referenced as new litigation in any capacity in the vexatious litigant statute, nor is the actual written application for an appeal mandated by any statute. The unconstitutional nature of demonstrating a merit of an appeal prior to an appeal being filed has already been struck down as discriminatory by a Supreme Court.

73.     The trial court and appellate court's action further delay to harass and subject pro se litigants to irreparable harm violating their procedural and substantive due process due to a VLS stigmatization, confirming that the VLS application has no bearing on protecting the court from vexatious litigations.

74.     Due Process Questions the United States District Court Should ask the California Superior Courts, the California Courts of Appeal, the California Supreme Court and the California Judicial Council

75.     The scope of discretion always resides in the particular law being applied by the court, i.e., in the "'legal principles governing the subject of [the] action ....'" (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 337 [67 Cal.Rptr.3d 286], citing *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704] and *County of Yolo v. Garcia* (1993) 20 Cal.App.4th 1771, 1778 [25 Cal.Rptr.2d 681] ["range of judicial discretion is determined by analogy to the rules contained in the general law and in the specific body or system of law in which the discretionary authority is granted"].)

76.     Before a person is being designated as a vexatious litigant, he/she is innocently unaware of the stealthy law that can be used against him/her. The law state that if in the previous seven-year period a person has commenced, prosecuted, or maintained in propria persona at least five litigations, he/she may be."

77.     People mostly in pro se are caught by surprise after the Superior Court granted them fee waiver and/or determined they papers and lawsuit has merit.

24

78.     People are powerless from preventing being designated as a vexatious litigant.

79.     People are powerless from preventing their lawsuits that has merit from being dismissed. Thus, they are deprived justice and fairness.

80.     California Court has many avenues to protect from vexatious litigations, but because of laziness and discourse prevent them from following due process.

81.     Why?   Because the statutes umbrella (cover) almost any type of litigations it allows Judges in the Superior Court and Justices in the Courts of Appeal and Supreme Court absolute power to dismiss any valid claim, or any lawsuit regardless of merit.  By claiming a lawsuit or appeals has not merit, the Courts foreclose on any relief and due process rights.

82.     This does not cover small claims courts where the Judge does not have to follow procedural law or substantive law, and where the quality of the jurisprudence (i.e., qualifications and experience of small claims judges) is not always very high.

83.     The Judge does not have to follow substantive law if it will not lead to an equitable result.

84.     California Court in many ways encourage filling and grants many fees waivers.

85.     When pro see litigants file legal papers in the Superior Court along with an application for a fee waiver.  A Judge or a Commissioner is assigned to determine if the person filing should be granted a fee waiver.  The standards for granting the fee waiver application are based on income and the merit of the filling.

86.     If the filling has merit, the Judge/Commission will granted the fee waiver and the legal papers will be filed.  However, if the Judge/Commission denies the fee waiver, it will determine that either the person's income is too high to be granted a fee waiver or that the papers filed lack merit.

87.     However, the law in regard to § 391 et seq. is kept "secret" concealed away from the general public to be used as a weapon to beat lawsuits that has merit and designate people who begun to understand how the law and the Courts operates, it then become too late for them as they are perceived as a threat to law firms and the Courts.

88.     The United States District Court should be concerned for the lack of notice pro se litigants get when they are initially freely allowed to file papers and when they reach an unknown level they are designated as vexatious litigants.

89.     Even when they file an appeal or a lawsuit that has merit, they are forcefully placed on a list as vexatious litigants, destroying their good name.  They are forced to pay sums of money as security against those who oppressed them.

90.     The California Judicial Counsel forms lack any formal warning or notice of the California Civil Procedure Code sections §§ 391 et. seq. that in the event a person is intending to file a frivolous or vexatious litigation in any of California Court, he/she risk being subject to the designation as a vexatious litigant.

91.     People must be given prior notice and warning in California Judicial Counsel Forms but none is giving for a good dishonest reason.  This is not about justice or fairness.  It is about having a weapon to beat lawsuits that has merit by people who know what they are complaining about.

92.     If a warning is posted in across the Courts and in the Judicial Counsel forms it will constitute notice and warning to all litigants.  It will prevent waste; frivolous fillings; it will bring order and fairness back; it will not allow the shotgun approach of designating good people who are not vexatious litigant just because they filled a lawsuit against someone who deserved it; it will the good names of people.

93.     Such notice will counteract the broadness of the California Code of Civil Procedure sections §§ 391 et. seq. mention Code of is made.

94.     The California Code of Civil Procedure sections §§ 391 et. seq. should not be used broadly so it be unreasonably applied in A Shotgun Approach.

**7.  Previous History of PERRY's Constitutional Depravation By the California Courts at Its Current State, Were Not Incidental, but Customary Under Code of Civil Procedure §§ 391 et. seq. The Statute Has Been Used As A Weapon To Undermine Valid Lawsuits And Deprived Property.**

95.     The animosity PERRY confronted in the Los Angeles Superior Court, the Court of Appeal and the Supreme Court, stemmed from his two family court cases, in which he was deprived his children in an unjust move-away Order, leading him to file a Federal lawsuit in the United States District Court on November 5, 2004, against the Los Angeles superior Court, Court of Appeal, and the California Supreme Court, in **case No. 04-08895-R (MLG)**.  (Please see lawsuit cover page as exhibit # 6.)

**8.  First Depravation of PERRY's Rights Before The Superior Court And Court of Appeal Designated PERRY As A Vexatious Litigant Under §§ 391 et. Seq.**

96.     On October 30, 2009, PERRY arrived at the California Supreme satellite office in Los Angeles, located on 300 South Springs St. in Los Angeles, in which the Court of Appeal for the Second District resides.  In the office of the Supreme Court was a clerk named Mrs. Natalie Robbins who

PERRY often witness would mount extreme difficulties to him and other pro se litigants (they were fighting to save their children in the Los Angeles family courts.)

97.     During the course of 5 years PERRY saw Mrs. Natalie Robbins continually deprived him and others due process when they came to the clerk's office to file Petitions for Review in the Supreme Court. Mrs. Robbins refused to accept their petition briefs, finding many minor defects that were used as excuses to reject them, and she to file them.

98.     Mrs. Robbins would often place insurmountable difficulties to the low income, self represented pro se litigants who sought petitions to save their minor children from the clutches of the Los Angeles Superior Courts. So, Mrs. Robbins would routinely fail their filling papers and would not file them and send them and people often left the office devastated and some were even crying. Finally after PERRY gained insight that her harassment, was a pattern and not incidental, because she would delay (as she previously did to him) their petitions for review court in the Supreme Court, to make them forgo review in the court because she caused them to miss the due date.

99.     So, on October 30, 2009, PERRY was sent back and forth by Mrs. Robbins told to speak to John Lippo of the Court of Appeal, (the Court of Appeal office was across the hallway of the Supreme Court office,) that he failed to properly serve them and that his papers were inadequate.     PERRY frustrated from the repeated harassment, finally gathered his mental strength and called Mrs. Robbins "**mean and an evil woman**" and that he would complain about her to the California Supreme Court Head Clerk, Frederick K. Ohlrich, of the ways she mistreats people. When Mrs. Robbins heard PERRY call her "evil woman" along with his accusations she was obviously perturbed, and demanded that he stay in the office until she called the CHP officer to come and arrest him. But PERRY refused to stay and said "**Goodbye**" as he left the premises. But as soon as PERRY left, the livid Mrs. Robbins chased after him into the hallway of the Ronald Reason State building and yelled: "**CHP officers, CHP officers, please stop this man. Stop this man, I want you to arrest him.**"

100.     Thereafter, while retreating downstairs, PERRY saw Mrs. Robbins enter inside the Court of Appeal office and speaking to the clerks. When Mrs. Robbins came out, she run down stairs. By then PERRY was stopped by two CHP officers and was handcuffed. PERRY was detained for nearly one (1) hour and **CHP officer named Stephanie Quintero # 14153,** and he was later released.

101.     When Mrs. Quintero arrived to the scene, she questioned PERRY, but Mrs. Robbins interjected that PERRY called her names and to haul him into jail. But Officer Quintero refused and said PERRY had done nothing illegal, other than express his opinion that Mrs. Robbins was being "**Mean and Evil Woman**" was simply an expression of his freedom of speech under the First amendment.

102.    The same day, on October 30, 2009, PERRY wrote an official complaint to the California Supreme Court head Clerk, Frederick K. Ohlrich, mailed by certified letter (and he also called him by phone).    About three weeks later on November 16, 2009, Mr. Ohlrich personally called PERRY to inform him that the Satellite office of the Ronald Reagan building would be close and all petition briefs from then on would be filed by mail.  Finally, an evil was lifted from the People of Los Angeles, would be allowed to submit their petitions and have them accepted by the California Supreme Court.  But the animosity for PERRY complaining of the Supreme Court had just only begun.

### 9.   Second Depravation of PERRY's Rights And Property Under §§ 391 Et. Seq. Leading To The Superior Court And Court Of Appeal Designating PERRY As A Vexatious Litigant.

103.    In 2003, Superior Judge Rhodes presided over PERRY's family court case in, which he violated numerous due process laws and deprived PERRY his parental rights.  On November 5, 2004, PERRY sued Judge Rhodes and other defendants in the USDC of Los Angeles in 2004 in case **No. 04-08895-R (MLG),** for violations of his parental rights.

104.    On February 11 2009, PERRY's vehicle was wrongly repossessed (after a wrongful trespass) and he filed a lawsuit in the Chatsworth Superior Court in case No. PC044679.  A fee waiver application was granted to him and a summons was issued.   The case was intentionally assigned to Judge Randy Rhodes, and PERRY believed the judge would prejudice him and be biased.  PERRY asked Judge Rhodes to disqualify under CCP. § 170.6, but Judge Rhodes refused.

105.    So, on November 12, 2009, Judge Randy Rhodes suggested to opposing counsel for Key Auto Recovery Chad J. Brandel (JPMorgan Chase Bank was not present) to file motions to designated PERRY as a vexatious litigant (see transcripts attached and counsel for Key Auto saying: **"I understand"**.

106.    On April 27, 2010, Judge Rhodes asserted to PERRY: ("[y]ou filed too many motions") and designated him as a vexatious litigant and ordered PERRY to post an initial security bond of $7500, (while PERRY in dire financial situation, while his case was open and discharge still pending in the bankruptcy court.  Please recall, Judge Rhodes was PERRY's 2003 family court judge in 2003,) refused to recuse himself from a case involving a lawsuit PERRY filed again Chase Auto Finance (JPMorgan Chase Bank N.A.,) and Key Auto Recovery for wrongful repossession of an auto PERRY owned.

107.    As PERRY could not afford to post the security bond, Judge Rhodes dismissed PERRY's lawsuit in May 21, 2010, while PERRY's (**violation of 11 U.S.C. 524(a)**).  The California Court of Appeal. ***Justice Roger Boren,*** denied PERRY permission to file new litigation in appeal case Number

1    **B233983**, stating PERRY's appeal is frivolous and lacking merits. The California Supreme Court refused

2    to grant PERRY permission to file new litigation or review the appeal in case Number **B233983** and  a

3    review in the Supreme Court.

4    ### 10. <u>Third Depravation of PERRY's Rights And Property and Designation of
5    PERRY As A Vexatious Litigant by the Court of Appeal.</u>

6    108.    On 3/04/2010, in a related appeal, in a combined cases No. PC042803/[49]/ and LC081399,

7    under appeal Number B215787, the Second District Court of Appeal issued an Order to Show Cause in

     PERRY's appeal in case No. B215787 in attempt to humiliate PERRY in front of the USC School of
8
     Law's students because he understood that he was a law student, the Court of Appeal wished to humiliate
9
     him in front of other law students in USC, and then designate him as a vexatious litigant.   So, he refused
10
     oral argument take place at USC School of Law and the appeal was delayed to March 22, 2010:

11              **"Oral argument is scheduled for 3-22-10 at 9:00 a.m. to be held at USC School
                of Law.  Appellant PERRY shall appear at that time to show cause why he
12              should or should not be declared a vexatious litigant. Appellant may file
                written opposition on or before 3-16-10. Respondent may file a reply on or
13              before 3-19-10. K, A."**

14   109.    On 03/09/2010, in the combined cases No. PC042803 and LC081399, under appeal

15   Number B215787, the Court of Appeal issued the following correction:

                **"***CORRECTED*** Oral argument in the above captioned appeal is
16              scheduled for 3-22-10 at 9:00 a.m. to be held at USC School of Law. Appellant
                PERRY shall appear at that time to show cause why he should or should not
17              be declared a vexatious litigant. Appellant may file a written opposition on or
                before 3-16-09. Respondent may file a reply on or before 3-19-10. K, PK."**
18
     110.    PERRY filed a response to the show cause why he should not be declared a vexatious
19
     litigant to the Court of Appeal.   During oral arguments of March 22, 2010, the justices refused to
20
     consider PERRY's oral arguments on issues that pertain to his lawsuit and why it was not frivolous and
21
     had merits. But the senior justice of the Court of Appeal, Justice Aldrich (who was aware PERRY was
22
     withheld by the CHP on October 30, 2009) proceeded to punish PERRY and said the justices had all
23
     decided PERRY filed too many appeals and writs in his family court and that he was a vexatious litigant:

24

25

     ---
     [49]    PERRY was told by the Judge in case No. LC081399, to file a new case from his unlawful
26   detainer after the landlord Anna Meguerian trespassed and broke into his residence, and then changing
     the locks.  But the case was heard by another judge in Los Angeles.   PERRY called that morning to the
27   court that he was not far from the courthouse late for the 8:30 am hearing, because he stuck on the 101
     freeway.  But the Judge dismissed the lawsuit, using California's Anti-SLAPP law and the Court of
28   Appeal used the case to designate PERRY as a vexatious litigant.

> **"We have taken judicial notice of the records of the Second Appellate District and decided that you are a vexatious litigant because you have filed too many writs and appeals."**

111.    However, Justice Aldrich's statement, he did not mention even a single case of which the Court of Appeal had determined PERRY was a vexatious litigant. The Court of Appeal only mention was that they took judicial notice of the records of the Second Appellate District as sufficient to say PERRY was a vexatious litigant:  The Court's Deposition of March 22, 2010, stated the following:

> "This court has taken judicial notice of the records of the Second Appellate District. (Evid. Code, § 452[50]/, subd. (d).) The records reflect that since June 2003, in this district alone, PERRY has initiated in propria persona 16 appeals and writ petitions which have been finally determined adversely to him.  Accordingly, following notice and a hearing, this court, on its own motion, declares Moshe PERRY a vexatious litigant within the meaning of Code of Civil Procedure section 391, subdivision (b)(1). This court hereby enters a prefiling order prohibiting Moshe PERRY from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. (Code Civ. Proc., § 391.7, subd. (a).) The clerk of the court shall provide the Judicial Council with a copy of this order. (Code Civ. Proc., § 391.7, subd. (e).) **Because PERRY was a law student, a copy shall also be provided to the State Bar of California.**
>
> Klein, P.J., Kitching, J. and Aldrich, J."[51]

---

[50]    Cal. Evid. Code, § 452. Judicial notice may be taken of the following matters to the extent that they are not embraced within Section 451:    (a) The decisional, constitutional, and statutory law of any state of the United States and the resolutions and private acts of the Congress of the United States and of the Legislature of this state.    (b) Regulations and legislative enactments issued by or under the authority of the United States or any public entity in the United States.    (c) Official acts of the legislative, executive, and judicial departments of the United States and of any state of the United States.    (d) Records of (1) any court of this state or (2) any court of record of the United States or of any state of the United States.    (e) Rules of court of (1) any court of this state or (2) any court of record of the United States or of any state of the United States.    (f) The law of an organization of nations and of foreign nations and public entities in foreign nations.    (g) Facts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute.    (h) Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.

[51]    LASC cases LC081399 and PC042803 were combined into one appeal before the 2nd District Court of Appeal B215787:
http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=2&doc_id=1906740&doc_no=B215787.
http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=2&doc_id=1906740&doc_no=B215787

30

112.   Thus, as PERRY was a law school student, he knew understood too much, he became a liability to the Los Angeles Courts from all the depravations he and his children suffered from the Los Angeles Courts.  Ever since then PERRY had been denied his rights and harassed in every matter he filed in the Los Angeles Superior Courts.

### 11. Fourth Depravation of PERRY's Rights And Property Before His Designation As A Vexatious Litigant Under §§ 391 Et. Seq.

113.   In 2008, PERRY hired family law attorney Ronald E. Gue and paid him thousands of dollars as retainer to handle his custody case, but the attorney failed to appear at the family court hearings and this caused PERRY to be deprived his children.  PERRY then filed a malpractice suit (**Trial Court Case: PC044424**) against the attorney for a breach of a contract with Plaintiff, and the case was assigned to the ***Chatsworth Superior Court Judge Melvin D. Sandvig*** dismissed the lawsuit, ruling PERRY was a vexatious litigant.  The California Court of Appeal.  ***Justice Roger Boren,*** denied PERRY permission to file new litigation calling it was frivolous.   The California Supreme Court refused to grant PERRY permission to file new litigation or review the appeal in case Number B233983 or review in the Supreme Court Case: S196623.

### 12. Fifth Depravation of PERRY's Rights And Property Before His Designation As A Vexatious Litigant Under §§ 391 Et. Seq.

114.   On April 11, 2011, PERRY filed a writ of Mandate in the Glendale Superior Court Case No.: GS013232.  PERRY won an administrative hearing, in Case No. 3143412 before Administrative Law Judge ("ALJ") Ann Ansman on April 13, 2010.  PERRY attended the administrative hearing but EDD and the defendants failed to appear.   The ALJ determine that EDD did not investigate cash payments made by the employer; Keys of Woodland Hills Nissan.  For 212 days EDD did not investigate the case payments and on May 27, 2010, EDD issued a DE-1153 Investigation Report stating that they were unable to contact the employer. EDD unhappy with the ALJ decision did not investigate and asked PERRY to file a second administrative appeal.   A second administrative hearing, case No.: 3404093 took place before a new ALJ.  But instead of referring the appeal back to the original ALJ Ansman, it went to a new ALJ, T.B. Paule.  On November 16, 2010, the new ALJ overruled ALJ Ansman decision into inquiry of the unreported wages and non appearance of EDD.

115.   Back to the unemployment writ of mandate, was transferred to the Los Angeles Superior Court.   PERRY requested the California Unemployment Insurance Board ("CUIAB") a copy of the administrative record.  He was told the State Attorney General office (located in the Ronald Reagan

1  building in 300 South Spring Street) demanded the original Administrative Record copy.  PERRY was

2  informed the Original administrative record was mailed (from the CUIAB) to the State Attorney

3  General's office who resides in 300 South Spring St. on the first floor.  The State Attorney General then

4  mailed PERRY an incomplete and inaccurate copy of the administrative record.

5      116.   When Judge Jones ruled on augmenting the administrative record, of the missing

6  documents, she was "replaced" by a retired Judge Robert H. O'Brien who was appointed by the

7  California Supreme Court – California Judicial Council.  Judge O'Brien overruled Judge Jones order to

   augment the administrative record, and he set aside the hearing date set for the matter to be heard.[52]

8      117.   Confronted with all the cheating in the Los Angeles Superior Court, PERRY reached for

9  relief in the United States Central District Court on September 4, 2012 in **case No.: CV12-03159** (case

10  was filed April 11, 2012 and was closed, which Court did not grant him a fee waiver in Case No.: CV12-

11  7256-Duty (was filed on August 23, 2012.)   PERRY was then filed an amended in forma Pauperis

12  application to the United State District Court which District Court Judge Audrey B. Collins which found

   he adequately demonstrate his indigency).  See District Court Judge Order dated May 17, 2012.

13      118.   On December 2012, the Superior Court Judge O'Brien caused PERRY to lose his

14  unemployment benefits based in inadequate administrative record.  PERRY sought an appeal case No.

15  B250107, in the Court of Appeal ***Justice Roger Boren,*** denied PERRY permission to file new litigation.

16  Claiming PERRY's appeal was frivolous.   The California Supreme Court refused to grant PERRY

17  permission to file new litigation to review the appeal in case Number: S214326.

18          **13.   Sixth Depravation of PERRY's Rights And Property Under §§ 391**
                   **et. seq.**

19

20      119.   In the present case, PERRY's 28 years membership with Bally Total Fitness was

   unlawfully cancelled by LAFitness LLC. Presently Plaintiff is being deprived access to the courts

21  because he reached for the court as a "fair arbitrator" of the law **because Bally Total Fitness accepted a**

22  **payment to cover three years of membership but after LA Fitness purchased Bally in 2012,  they**

23  **refused to honor the payment and fraudulently and their representatives had forged Plaintiff's**

24  [52]    Please see U.S. Supreme Court ***Mathews v. Eldridge***, 424 U.S. 319 (1976): "[B]ut more is

25  implicated in cases of this type than *ad hoc* weighing of fiscal and administrative burdens against the
   interests of a particular category of claimants.  The ultimate balance involves a determination as to when,

26  under our constitutional system, judicial-type procedures must be imposed upon administrative action to
   assure fairness.  We reiterate the wise admonishment of Mr. Justice Frankfurter that differences in the

27  origin and function of administrative agencies "preclude wholesale transplantation of the rules of
   procedure, trial, and review which have evolved from the history and experience of courts." ***FCC v.***

28  ***Pottsville Broadcasting Co.,*** 309 U. S. 134, 309 U. S. 143 (1940).

**signature on an LAFitness LLC  contract and cancelled PERRY's 28 years membership with Bally Total Fitness was used as modus operandi to prevent renewal at a low membership fees ($55 a year.)** Copy of the receipt is entered here as exhibit #1. Thereafter, without notice, LAFitness LLC., claimed that because PERRY did not renew his membership within 30 days and they cancelled his membership. However, the copy of the LAFitness LLC., contract with PERRY's signature was forged said nothing about any 30 days within to renew or forfeit any membership rights.

120.   Plaintiff sought the aid of the **California Better Business Bureau** ("BBB") to resolve the issue with LAFitness LLC., and adamantly refused and PERRY had no success resolving the matter. Finally, when Plaintiff had filed his State Court lawsuit on July 31, 2015.   **But then, LAFitness LLC had made him a bad faith offer, which thereafter they withdrew, when finding out from the the State Court that it dismissed the lawsuit because PERRY was a vexatious litigant**. Had LAFitness LLC  kept their offer, it would have shown the California Code of Civil Procedure §§ 391 et. Seq. indeed is not used as a weapon to defeat valid lawsuit, but rather as a deterrent, but in reality every attorney and judge know that it is been used as a shield to defeat valid lawsuits. Thus, is indicative that defendants LAFitness LLC.,  enjoy the "protection" of the Los Angeles Courts who dismiss valid lawsuits against them by covering them up.

121.   Plaintiff PERRY asks why the California Code of Civil Procedure §§ 391 et. Seq. is used as a weapon, and why the California Judicial Council do not warn pro se litigants in their forms or in any posting, before filling a frivolous lawsuit, that such law §§ 391 at seq. exists and beware.

122.   Plaintiff filed a present State Court complaint against LAFitness LLC., case No. PC056529, PERRY's case was dismissed by the Los Angeles Superior Court Supervising; Judge Kevin C. Brazile who denied PERRY's application for an evidentiary hearing while he filed the form to file new litigation and requested that the judge made factual findings and give PERRY an opportunity to present  and explain his evidence.

123.   For over the past 6 years, after being PERRY had been designated a vexatious litigant in the Los Angeles Superior Court, and the Court of Appeal, he filed litigation and was denied and deprived on numerous occasions his property rights and access to the Chatsworth and the Los Angeles Superior courts, because he was designated a vexatious litigant by a Chatsworth Superior Court Judge Randy Rhodes.

124.   Since then the court made PERRY's life hell, they blocked him a fair access to the court until they finally chased him in the halls of the Ronald Reagan building in Los Angeles and caused him to be arrested for him exercising his First amendment right for free speech.

### 14. **PERRY's Property Interests are Protected By the Constitution and Should Have Been Addressed and Reviewed By the California Courts.**

125.    In the ***Board of Regents v. Roth***, 408 U.S. 564, 577 (1972), the Supreme Court defined that property interests are protected by the Fifth and Fourteenth Amendment as a "legitimate claim of entitlement" to the item or benefit in question. Such "entitlements" are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state and federal laws—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

126.    See ***Employment Division, Department of Human Resources of Oregon v. Smith (No. 88-1213). 494 U.S. 872. Argued: Nov. 6, 1989. Decided: April 17, 1990.*** "[i]f prohibiting the exercise of religion….is….merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." Ante at 878 (citations omitted).

127.    In the present case of PERRY, the Los Angeles Courts had refusing to grant him review any review of the wrongful repossession case; his unemployment benefit case; his LAFitness LLC case and by denying the relief he sought in the courts, they denied him access. This behavior demonstrate it was customary for the Los Angeles court to deny all of PERRY's access and appeal review, because he was (involuntarily) a vexatious litigant was not incidental, but it was a customary policy by the Los Angeles Courts. Because it was not merely an incidental but customary, it effected a generally applicable law (CCP. §§ 391 et seq.,) and an otherwise valid provision, making it unconstitutional. This because such customary practice had offended the First Amendment.

128.    In ***Citizen Publishing Co. v. United States***, 394 U.S. 131, 139 (1969) (upholding application of antitrust laws to press), and ***Grosjean v. American Press Co.,*** 297 U.S. 233, 250-251 (1936) (striking down license tax applied only to newspapers with weekly circulation above a specified level); see generally ***Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue***, 460 U.S. 575, 581 (1983), the Supreme Court upheld that a government action affecting religious conduct is valid so long as the resulting restriction was not the purpose of the action but merely incidental to it.

129.    The Los Angeles Superior Courts and the Second District Court of Appeal - California Supreme Court had went to great length to prevent Plaintiff any access to the courts, regardless of the validity of his papers. They always found frivolous ways to deny them as lacking merits, and prevented PERRY from getting review or relief when his protected property rights were taken from him in violation of the 5th and 14th amendments.

34

**15.** **State Courts Aids Lawyers and Their Client to Beat Valid Lawsuit by Designating Pro Se by Them as Vexatious Litigants.**

130.    District Court has jurisdiction in instances where people are the victims of civil-rights violations that occur in circumstances involving both government officials and private actors. See ***Burton v. Wilmington Parking Authority***, 365 US 715 - Supreme Court 1961. In the present case, Bally Total Fitness and LAFitness LLC  are mutually benefited from their commercial relationship, and the fact that LAFitness LLC  had relied on the Superior Court intentionally depriving People as Plaintiff access to the court by designating them as vexatious litigants.

131.    These considerations, combined with the fact that the Superior Court had systematically had been dismissing many Bally- LAFitness LLC  lawsuits as a private persons or  entity in the Los Angeles Superior Court is a consideration that "indicates that degree of state participation and involvement in discriminatory action which it was the design of the Fourteenth Amendment to condemn," like with California Courts state action results from the exercise of coercive power[53], by designating people as designated vexatious litigant using the  California Code of Civil Procedure §§ 391 et seq., then the State provides significant encouragement, either overt or covert, to attorneys to dismiss valid lawsuits, when a such private actor as LAFitness LLC  operates as a willful participant in joint activity with the State or its agents by pursuing such activity that results in a dismissal of a valid lawsuit. And, lest there would be a question to the District Court's where it may find sentiment does lay on such an issue.

132.    The United States Supreme Court had explained in ***Burton*** this shift in terms of trying to strike an appropriate balance between imposing constitutional obligations on state actors while preserving a realm of freedom for private persons and entities.  Thus, as the Court explained in one of its state-action decisions:

> **"Our cases try to plot a line between state action subject to Fourteenth Amendment scrutiny and private conduct (however exceptionable) that is not. The judicial obligation is not only to preserve an area of individual freedom by limiting the reach of federal law and avoid the imposition of responsibility on a State for conduct it could not control, but also to assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains...**

---

[53]    Coercive power is the ability to influence someone's decision making by taking something away as punishment or threatening punishment if the person does not follow instructions.  I.e. the use of California Code of Civil Procedure §§ 391 et seq., against people, the public who became educated abut laws and how it applies to them.

35

**Our cases have identified a host of facts that can bear on the fairness of such an attribution. We have, for example, held that a challenged activity may be state action when it results <u>from the State's exercise of coercive power, when the State provides significant encouragement, either overt or covert, or when a private actor operates as a willful participant in joint activity with the State or its agents.</u>"**

133.    In two recent cases, however, courts have held private entities to be state actors in conjunction with police actions taken against people engaged in First Amendment activity even when the government played no role in the policies or actions of the private entity. These cases illustrate a significant option for enforcing constitutional rights against nongovernmental actors.

134.    See ***Wickersham v. City of Columbia***, 481 F. 3d 591 - Court of Appeals, 8th Circuit 2007, at the outset of its analysis, the Court noted that, though the state-actor inquiry depends on the specific facts of each case, **"[t]he one unyielding requirement is that there be a 'close nexus' not merely between the state and the private party turn into a state actor, but also between the state and the alleged deprivation itself."**    In the present case of PERRY, when the State Courts, through policing access to the courts, had played a direct role in the formulation of methods to block access to the California courts by intentional defective fact-finding by judges as whether to allow a lawsuit to proceed further, they imposed unreasonable restrictions and had caused the loss of property rights to many pro se plaintiffs.

135.    The district court may well find that enforcement of such policies is insufficient to justify the mass conversion of pro se plaintiff into vexatious litigants for purposes of the CCP. §§ 391 et seq., violated First Amendment claim to petition the government for a redress of grievances.  In an Opinion by the United Supreme Court in ***Shelley v. Kraemer***, 334 U.S. 1 (1948) the court annotated that denial of access to the courts to **"[i]s violative of the equal protection clause of the Fourteenth Amendment for state courts to enforce them."** Citing ***Corrigan v. Buckley***, 271 U. S. 323, distinguished. Pp. 334 U. S. 8-23.

136.    PERRY sees parallel in the State Courts aiding defendants escape liability by designating pro se plaintiffs as vexatious litigants to ***Wickersham:*** "The direct role of the Columbia police in enforcing [the private organization's] speech restrictions provided the critical nexus between the challenged conduct and the exercise of state authority." **"The contributions of the Columbia police go beyond the kind of neutral assistance that would normally be offered to private citizens in enforcing the law of trespass…Here, the police department's security plan instructed the officers to**

1  enforce [the private organization's] rules rather than city ordinances, and police took an active role

2  in identifying and intercepting protesters at the air show...."

3      137.    In the present case, the contributions of the Los Angeles Superior Courts to the dismissal

4  of valid lawsuits to pro se plaintiff litigants goes beyond the kind of neutral court arbitrator.  The Los

5  Angeles Courts had actually engaged by aiding and suggestion to defendants in the designation of pro se

6  plaintiffs as vexatious litigants by a private entity defendant, like in the case of PERRY.  Thus, when a

7  private entity has acted jointly and intentionally with the courts pursuant to a customary plan with no

8  additional or substitute procedural safeguards, it is proper then to hold that such entity is accountable for

9  the actions which it helped bring about the results.  In the case of Bally's Total Fitness and LAFitness

10  LLC  are the benefactor from the Los Angeles Courts misuse and abuse of the California Code of Civil

   Procedure §§ 391 et. seq.

11      138.    The U.S. Supreme Court's decision in ***Turner v. Rogers, 131 S. Ct. 2507 (2011)***, stressed

12  the Due-Process rights of self-represented litigants and access to the courts.  Courts should have seen that

13  decision as an opportunity to improve their services and programs for such litigants, but failed to do so,

   resulted in defective fact-findings:

14      "[T]his Court has previously found useful in deciding what specific safeguards the
       Constitution's Due Process Clause requires in order to make a civil proceeding

15      fundamentally fair.    ***Mathews v. Eldridge***, 424 U. S. 319, 335 (1976).....As

16      relevant here those factors include (1) the nature of "the private interest that will be
       affected," (2) the comparative "risk" of an **erroneous deprivation** of that interest

17      with and without **"additional or substitute procedural safeguards,"** and (3) the

18      nature and magnitude of any countervailing interest in not providing "additional or
       substitute procedural requirement[s]." Ibid. See also ***Lassiter***, 452 U. S., at 27–31

19      (applying the ***Mathew***s framework)." "....[G]iven the importance of the interest at

20      stake, it is obviously important to assure accurate decisionmaking in respect to the
       key....question.....,***Hicks***, 485 U. S., at 635, n. 7, reinforces the need for accuracy."

21

22      16.   **Plaintiff Was Entitled and Denied a Evidentiary Findings Without**
             **Holding A Hearing On His Request To File New Litigation**

23

24      139.    A Plaintiff who has previously sought and been denied an evidentiary hearing who has not

25  failed to develop the factual basis of his claim. Id. (citing 28 U.S.C. § 2254(e)(2));  Seeking right to

   litigate judicial bias of PERRY been designated a vexatious litigant before the Los Angeles Supervising

26  Judge Kevin Brazile.

27      140.    The State Court had refused to grant PERRY an evidentiary hearing on the issues as to

28  whether his lawsuit was frivolous and had prevented PERRY from developing the factual basis of his

claims in state trial court as required by 28 U.S.C. § 2254(e)(2).  An evidentiary hearing is required if (1) the petitioner has shown his entitlement to an evidentiary hearing pursuant to ***Townsend v. Sain***, 372 U.S. 293, 313 (1963), and (2) the allegations, if true, would entitle him to relief. *Stanley*, 598 F.3d at 624.

141.   In ***Hurles v. Ryan***, 752 F. 3d 768 - Court of Appeals, 9th Circuit 2014: "**Where a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, "the fact-finding process itself is deficient" and not entitled to deference.**" ***Taylor***, 366 F.3d at 1001 ("If, for example, a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an unreasonable determination of the facts.") (Internal quotation marks omitted); see also ***Perez v. Rosario***, 459 F.3d 943, 950 (9th Cir. 2006) (amended) ("In many circumstances, a state court's determination of the facts without an evidentiary hearing creates a presumption of unreasonableness.") (citing ***Taylor***, 366 F.3d at 1000); ***Nunes v. Mueller***, 350 F.3d 1045, 1055 (9th Cir. 2003) ("**But with the state court having refused [the petitioner] an evidentiary hearing, we need not of course defer to the state court's factual findings—if that is indeed how those stated findings should be characterized—when they were made without such a hearing.**"); cf. ***Killian v. Poole***, 282 F.3d 1204, 1208 (9th Cir. 2002) ("Having refused [petitioner] an evidentiary hearing on the matter, the state cannot argue now that the normal AEDPA deference is owed the factual determinations of the [state] courts."); ***Weaver v. Thompson***, 197 F.3d 359, 363 (9th Cir. 1999) (according no deference where written statements by trial judge to defense counsel "were not subject to any of the usual judicial procedures designed to ensure accuracy".)

142.   The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." ***Joint Anti-Fascist Comm. v. McGrath***, 341 U.S. at 341 U. S. 171-172 (Frankfurter, J., concurring).

143.   All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard," *Goldberg v. Kelly*, 397 U.S. at 397 U. S. 268-269 (footnote omitted), to insure that they are given a meaningful opportunity to present their case.... See ***Arnett v. Kennedy***, 416 U.S. at 416 U. S. 202 (WHITE, J., concurring in part and dissenting in part).  This is especially so where, as here, the prescribed procedures not only provide....with an effective process for asserting his claim prior...., but also assure a right to an evidentiary hearing, as well

as to subsequent judicial review, before the denial of his claim becomes final. *Cf. **Boddie v. Connecticut***, 401 U. S. 371, 401 U. S. 378 (1971)."

144.    Under ***Townsend***, a federal court must grant an evidentiary hearing in circumstances presented where: (1) the state courts factual determinations are not fairly supported by the record as a whole, and (2) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing. ***Townsend***, 372 U.S. at 313. Therefore, PERRY was entitled to an evidentiary hearing if his allegations, if proven, would entitle him to relief. ***Stanley***, 498 F.3d at 624."

### 17.    The Present Case - Wrongful forfeiture of PERRY's 28 years old Spa Membership with Bally Total Fitness and LA Fitness.

145.    With respect to the LA Fitness case, the Superior Court and Court of Appeal will not stop to prejudice PERRY, denying Plaintiff appellate review from his unemployment benefits writ of mandate in case **No. B250107**; or the wrongful repossession of his vehicle on February 6, 2009 in case **No. B244139, the California Supreme Court in Case No. S206991.** PERRY sued him in the Chatsworth Superior Court and Judge Randy Rhodes dismissed the case, stating PERRY is a vexatious litigant; Case **No. PC044424**, when PERRY's family law attorney Ronald Gue accepted thousands of dollars in retainer from PERRY, and not even appearing in court, the case was dismiss by the court of Appeal, in **Case No. B233983**, claiming PERRY was a vexatious litigant and his appeal was frivolous and had no merit. The list of deprivations against PERRY was numerous. PERRY was a citizen with no rights.

### 18.    The Case Against BALLY Total Fitness And LA Fitness.

146.    In the present case, Plaintiff was granted a fee waiver and filed a **"Request to File New litigation by vexatious Litigant"** (California Judicial Council form MC-701) along with his petition for writ of mandate. Justice Boren of the California Court of appeal Justice Boren is sloppy and careless. He did not even bother to make a proper Order denying Plaintiff's **"Request to File New Litigation by vexatious Litigant."** On a copy of the request, Justice Boren just wrote **"DENIED"** and signed his name. The rules to deny access to the Los Angeles courts are so relaxed in the Superior Court, the Court of Appeal and the California Supreme Court.   Justice Roger Boren of the Second District Court does all that he wants in the court, giving no the appearance of due process.

147.    Plaintiff may disputing the ways the application of the California Civil Procedure Code sections §§ 391 et. seq., but not the purpose of it on real frivolous lawsuits when a States has to protect. But PERRY's concerned is the total disregard in the California Courts to the Constitution of the United

39

Stated, the Fifth and the Fourteenth Amendment./[54]/ Plaintiff knows the real reason why is that the State of California has done was to prevent Mr. PERRY from filling any lawsuit against the State of California for illegally depriving him of his 3 children. The Judicial Council and the Local Courts sought to designate him vexatious litigant, in hope of muzzling Mr. PERRY and foreclosing of his constitutional rights to sue them. For the past 13 years the local California Superior Courts have caused much damage Mr. PERRY and to him and to his children's livelihood.

148.    California Civil Procedure Code sections §§ 391 acts as an absolute law that override nearly any and all protection offered under the Fourteenth Amendment to the United States. The California State Court application of the vexatious litigant designation under § 391 et seq. is done indiscriminately in a shotgun approach to apply to all pro se litigants who are deemed a threats to the Courts and to the guilty defendants. Since then PERRY has been enduring harassment, prejudice and deprivation of his constitutional rights, was mounting and now is out of control. PERRY respectfully asks the United States District Courts to intervene and stop the judicial abuse. The status quo at the Los Angeles Superior has to change.

149.    Plaintiff PERRY is a first generation Israelis Jew and an American anti-Semitics sentiments and prejudice in the Los Angeles Superior Courts system – the California Court of Appeal and the California Supreme Courts for the past 14 years. Prior to that PERRY had never stepped through the doors of the Los Angeles courts.

150.    In 2013, the Los Angeles Superior Courts and the Second District Court of Appeal - California Supreme Court deprived Plaintiff review from the wrongful determination in his unemployment benefit's writ of mandate heard in the Los Angeles Superior Court by ignoring important evidence that was excluded from the administrative record by the Los Angeles Attorney General's office who demanded the California Insurance Appeal Board ("CUIAB') to surrender the original copy of the administrative record to Attorney General's office. Then the Attorney General's office furnishes a copy to claimants (as it did to PERRY.) PERRY saw the mess-up in the administrative record and attempted to remove the case to the district court with no success. See **USDC case No.: CV12-03159 (case was filed April 11, 2012 and was closed,) and Case No.: CV12-7256-Duty (was filed on August 23, 2012.)**

---

[54]    The XIV Amendment, Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

151.    PERRY then contacted the California Judicial Council, administrative body that measure the statistics of the number and types of cases filed in the Los Angeles courts and found out that a majority of the unemployment benefits writs of mandate cases (is staggering as by the thousands) filed mostly by minorities in the Writs and Receivers Departments are systematically denied using the most bogus and contrary rulings, the judges refused to correct omissions in the administrative records, whereby  the Los Angeles Attorney General's office demands an <u>Original Copy</u> of an Administrative Record from the keeper, the CUIAB, then the Attorney General's office removes pertinent documents and evidence from the record that supports Claimants-Petitioners' award of unemployment benefits.

152.    This exact manipulation of the record happened to PERRY in his unemployment benefits writ of mandate before the Los Angeles Superior Court after assigned Judge Ann Jones was about to allow PERRY to augment the administrative record, she was removed from the case and replaced by a retired Judge Robert O'Brien, was assigned to the case by the California Supreme Court.  Please see U.S. Supreme Court ***Mathews v. Eldridge***, 424 U.S. 319 (1976) "[B]ut more is implicated in cases of this type than *ad hoc* weighing of fiscal and administrative burdens against the interests of a particular category of claimants.    The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness. We reiterate the wise admonishment of Mr. Justice Frankfurter that differences in the origin and function of administrative agencies" preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts." ***FCC v. Pottsville Broadcasting Co.***, 309 U. S. 134, 309 U. S. 143 (1940).

153.    The U.S. Attorney General and the U.S. Department of Labor should get involved in how unemployment benefits are denied to minorities by a dysfunctional, dishonest Court system in the Los Angeles Superior Courts. This is another example of violation in **"due process of law"** where any proceeding that denies a citizen **"life, liberty or property"** requires the government to compensate citizens when it takes private property for public use.

154.    The courts continue to engage in a conduct that was meant to deprive constitutional rights, contravene fair access to the courts and finally as they could not deal with PERRY's persistence in pursuing his parental rights, they chased after him (yes, by foot) in the Ronald Reagan Building in October 2009, and then he became an unwelcome guest when they discriminated against him by erroneously designated him as vexatious litigant. (Where the Supreme Court satellite office used to be, and where the second district court of appeal). Thus, a dysfunctional, dishonest court instigates people

41

by depriving their rights and when the people react to protect themselves, the courts shamelessly designated them as vexatious litigants.

## LEGAL STANDARD

### 19.   GENERAL ALLEGATION
(By the Plaintiff against all Respondents)

155.   Plaintiff incorporates by reference paragraphs 1 through 208, inclusive, of this removal (including all paragraphs of the General Allegations and all paragraphs of all preceding causes of action, if any) as if the same were fully set forth herein.   Plaintiff PERRY was at relevant times mentioned a resident of the County of Los Angeles, State of California.

156.   Plaintiff is informed and believe and based on such information and belief alleges that plaintiff, Bally's Total Fitness – LAFitness LLC., are part of corporation and are each one and separately are part of corporation organized and existing under the laws of the State of California, conducting business in California, with its principal office in Chicago and in Los Angeles County, California.

157.   The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 through 10, inclusive, are unknown to Plaintiffs at the present time. Plaintiffs therefore sue said Defendants by such fictitious names and will seek leave of Court to amend this Complaint to set forth their true names and capacities thereof, when the same has been ascertained.

158.   Defendants, and each of them, were and are the agents, servants, representatives, and/or employees of each of the other Defendants herein, and were at all times acting within the course and scope of such agency, representation and employment and with the permission and consent of each of said Defendants.

159.   Plaintiffs are informed and believe, and upon such information and belief allege, that each of the Defendants, including Does 1 through 10, inclusive, were, at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

160.   Wherever appearing in this complaint, each and every reference to Defendants and to any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them, named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise specifically qualified.

161.   Defendant is a pro se and this court may construe his pleadings liberally. ***Wolfe v. Strankman***, 392 F.3d 358, 362 (9th Cir. 2004); ***Kashani v. Fulton (In re Kashani)***, 190 B.R. 875, 883

160.    Wherever appearing in this complaint, each and every reference to Defendants and to any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them, named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise specifically qualified.

161.    Defendant is a pro se and this court may construe his pleadings liberally. ***Wolfe v. Strankman,*** 392 F.3d 358, 362 (9th Cir. 2004); ***Kashani v. Fulton (In re Kashani),*** 190 B.R. 875, 883 (9th Cir. BAP 1995) ("The courts are to make reasonable allowances for pro se litigants and are to construe pro se papers and pleadings liberally.")

### 20.    INJUNCTIVE RELIEF ALLEGATIONS IN REGARDS TO CCP. §§391 et seq., USED TO BLOCK ACCESS TO THE STATE COURTS.
(By the Plaintiff against all Defendants and Respondents)

162.    Plaintiff hereby realleges and incorporates herein by this reference each and every allegation contained in Paragraphs 1 through 162 of this Complaint, as though fully set forth herein.

163.    The Los Angeles Superior Courts, the Second District Court of Appeal and the California Supreme Court deprived PERRY using CCP. §§391 et seq., an evidentiary hearing in the Superior Courts[58]/ with a full due process hearing and equal protection clauses of the Fourteenth Amendment and privileges or immunities granted to all citizens.    See California Constitution, Art. I, §§ 11, 21[59]/, provides in pertinent part:

> **"Sec. 11. All laws of a general nature shall have a uniform operation."**
> **"Sec. 21. No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."**

---

[58]    In **Mulkey v. Reitman and Evans v. Newton, supra,** the U.S. Supreme Court decisions dating from the Slaughter-House cases in 1873 and Civil Rights cases in 1883 in which that court has steadfastly limited the sphere of the Fourteenth Amendment to conduct of the state or conduct for which the state can fairly be held responsible. In an unbroken line of decisions that court has [64 Cal. 2d 554] uniformly reiterated the principle that individual invasion of individual rights is beyond the regulatory ambit of the Fourteenth Amendment.

[59]    California Constitution, Art. I, §§ 11, 21 provisions have been interpreted by the California courts as being the equivalent of the Equal Protection Clause of the Fourteenth Amendment. See ***Department of Mental Hygiene v. McGilvery,*** 50 Cal.2d 742, 754, 329 P.2d 689, 695, quoted infra, p. 380 U. S. 198; Lelande v. Lowery, 26 Cal.2d 224, 157 P.2d 639; ***San Bernardino County v. Way,*** 18 Cal.2d 647, 117 P.2d 354; ***People v. Sullivan,*** 60 Cal.App.2d 539, 141 P.2d 230; ***People v. England,*** 140 Cal.App. 310, 35 P.2d 565; 11 Cal.Jur.2d § 272, and cases cited therein. See also ***Los Angeles County v. Southern Cal. Tel. Co.,*** 32 Cal.2d 378, 196 P.2d 773, appeal dismissed, 336 U.S. 929.

43

1    164.    If not enjoined by this Court, the Los Angeles Superior Courts, the California Court of

2   Appeal for the Second District, California Supreme Courts, and their judges, agents, representatives, and

3   employees will continue to implement an unlawful, illegal manifestation of state law and other similar

4   policies and practices by blocking him access to the State Courts, deny Plaintiff his constitutional rights

5   to redress his grievances when is property is illegally taken from him without due process, violates his

6   right to equal protection of the laws, and deprive Plaintiff PERRY of the privileges or immunities of

7   citizenship others may enjoy. WHEREFORE, Plaintiff prays for judgment against Defendants, and each

8   of them, a hereinafter set forth.

### 21.  DECLARATORY RELIEF ALLEGATIONS IN REGARDS TO CCP. §§391 et seq., USED TO BLOCK ACCESS TO THE STATE COURTS.
(By the Plaintiff against all Defendants and Respondents)

10    165.    Plaintiff hereby realleges and incorporates herein by this reference each and every

11   allegation contained in Paragraphs 1 through 162 of this Complaint, as though fully set forth herein.

12    166.    Plaintiff PERRY reports of the abuse using CCP. §§391 et seq., in the Los Angeles Courts

13   is widespread.  There is an interest presented of a significant and novel constitutional issue for people

14   across California, and is necessary to secure uniformity of decision, and to settle an important question of

15   law across California and specifically in the Los Angeles Courts are out of control.

16    167.    An actual and substantial controversy exists between Plaintiff and defendants as to their

17   respective legal rights and duties.  PERRY contends that as applied to him, CCP. §§391 et seq., Court

18   ruling of September 17, 2015 by Presiding Judge Kevin C. Brazile in the matter of ***PERRY v. Bally's

19   Total Fitness and LAFitness*** as applied, is challenged because there are no safeguards to be heard in

20   these courts as the in Los Angeles courts are restrictive, and by policy tradition violates the laws and Due

21   Process and Equal Protection Clauses of the Fourteenth Amendment and the Fifth Amendment.

22    168.    PERRY also alleges that the Superior Court, the Court of Appeal courts and the Supreme

23   Court as applied to him, by blocking him access to the State Courts when his rights to redress can't be

24   heard and his property is taken from him illegally and wrongly by intentional defective fact-finding by

25   judges who do not allow his merited lawsuit to proceed further, violates,/[60]/ privileges and immunities

---

[60]    When an action is brought in federal court pursuant to diversity jurisdiction, jurisdiction lies only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332.  Where the value of the property or the rights involved is not apparent or easily ascertainable to potential exposure. See ***Petrey v. K Petroleum, Inc.***, No. 6: 07-168, 2007 WL 2068597 (E.D. Ky. Jul. 16, 2007).  "**After all, the value of the right sought to be gained by a plaintiff is not always quantifiable**."  See also ***Richard C. Young & Co., Ltd. v. Leventhal***, 389 F.3d 1, 3 (1st Cir. 2004) (considering the value of the object of the litigation in a case involving both declaratory and injunctive relief from the plaintiff's perspective).  The amount in controversy in actions seeking

## 22.   **FACTUAL ALLEGATIONS.**
(Against Bally's Total Fitness and LA Fitness DOES 1-10)

169.   On or about August of 1987, Plaintiff became a member of Bally Total Fitness in Chatsworth, CA.

170.   On or about February 1, 2012, Bally's - LA Fitness representatives forged Plaintiff's signature on their contract and when he did not know, they claimed he did not renew in 30 days and therefore forfeited his 28 years membership with Bally Total Fitness, caused PERRY to contact the better Business Bureau to resolve the issue.  LA Fitness adamantly refused renews the membership and PERRY was forced to file a lawsuit against Bally and LA Fitness.

171.   The lawsuit was filed by the clerk, and a fee waiver was issued, and when the Chatsworth Superior Court realized PERRY was a vexatious litigant they stayed the case and order PERRY to file within 10 days a "Request to File New litigation by vexatious Litigant" pursuant to 391.7(b).  PERRY filed the "Request to File New litigation by vexatious Litigant" within 10 days on August 28, 2015 and requested an evidentiary hearing.

172.   But the Supervising of the Los Angeles Superior Court, Judge Kevin C. Brazile denied the "Request to File New litigation by vexatious Litigant" and refused to grant PERRY an evidentiary hearing claimed in his facts finding that the or the request and the new litigation was frivolous.   Thus, is another denial of "due process of law" as part of any proceeding that denies a citizen "life, liberty or property" and requires the government to compensate citizens when it helps other take private property.

173.   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, a hereinafter set forth.

## 23.   **First Cause Of Action Fraud And Intentional Deceit Forgery By LA Fitness's Contract - Constructive Fraud**
[Against Bally's Total Fitness and LA Fitness DOES 1-10]

174.   Plaintiff hereby realleges and incorporates herein by this reference each and every allegation contained in Paragraphs 1 through 162 of this Complaint, as though fully set forth herein.

175.   Plaintiff alleges that LA Fitness had forged[58] his signature on the LA Fitness contract of February 2, 2012, to deprive Plaintiff his 25 years old spa membership with Bally Total Fitness where

---

[58]   A forgery is a "'writing which falsely purports to be the writing of another,' " and is executed with the intent to defraud.  (Wutzke, supra, 151 Cal.App.3d at p. 42, 198 Cal.Rptr. 418, quoting ***Generes v. Justice Court*** (1980) 106 Cal.App.3d 678, 682, 165 Cal.Rptr. 222, italics omitted.)   The signature on Plaintiff's contract with LA Fitness was forged and was therefore void, and a subsequent purchaser for value could not rely on it.

Plaintiff's yearly dues were reduced over the 25 years to about $55 a year (something very common is Bally long time members. Bally provided Plaintiff a new LA Fitness membership card, but LA Fitness's dispute the card and forged Plaintiff's signature on their contract, constituted a novation, a modification[59], or supplement to the terms of the Agreement with Bally Total Fitness of July 28, 1987. After Plaintiff disputed the forgery, LA Fitness claimed that since the forged signature was not Plaintiff, he forfeited his 25 years old membership with Bally and they had no obligation towards him to renew with LA Fitness.

176.    Defendants Bally Total Fitness and LA Fitness and each of them have not fully performed all terms, conditions, covenants and promises required of them pursuant to the terms of the contracts.

177.    Defendants LA Fitness and DOES 6-10, inclusive, have breached the terms of their contracts by, among other things, failing to accept any payment and falsely claiming Plaintiff had forfeited the bally membership because he did not pay in within 30 days after it lapsed.

178.    As a direct and proximate result of the aforementioned breaches of contract by Defendants LA Fitness, Bally Total Farness and DOES 6-10, inclusive, Plaintiff has suffered damages in an amount to be shown according to proof at trial, but not limited to, the cost of bringing this suit, lost membership and fair market value of such membership, and legal costs, as well as other incidental and consequential damages.

179.    Upon information and belief, LA Fitness, recklessly and intentionally failed to take proper measures to prevent denial of Bally's Contract terms and conditions in the LA Fitness purchase contract.

180.    As a direct, substantial, and proximate result of the reckless or intentional conduct was outrageous of LA Fitness, as set forth above, Plaintiffs suffered financial and emotional harm and damages.

181.    LA Fitness acts and/or failures to act under the circumstances of this case were outrageous in that LA Fitness was outrageous amounted to reckless indifference to the rights of Bally Total Fitness years long paying customers, and of other customers of Bally's.

---

[59]    Court must construe the term "alter" in the Terms of Bally Agreement to means that LA Fitness had "changed and modified the agreement with Bally. There can be no doubt that limiting the agreement with Bally as to the "National Membership" and the forfeiture of membership without notice to Plaintiff Perry constitutes a change. Whether the underlying is modified to achieve that change is irrelevant, as the Terms of Agreement with Bally imposes no restriction on the time for renewal, a manner in which LA Fitness achieve by "alter[ation]" of the Bally's agreement.

46

182.   For Plaintiff to prevail on a fraud misrepresentation claim he must prove that LA Fitness made a false representation on or about March 2012 that he forfeited his Bally membership and thus harmed him.  To establish that claim, Plaintiff] must prove all of the following:

    a.   That LA Fitness misrepresented to Moshe PERRY, the Plaintiff that because he did not renew within 30 days was true;

    b.   That LA Fitness's representation was false;

    c.   That either LA Fitness or Bally forged Plaintiff's signature on the LA Fitness contract dated February 2, 2012;

    d.   That once Plaintiff informed LA Fitness that his signature was forged;

    e.   That LA Fitness informed Plaintiff that since he did not signed the LA Fitness contract, that have no obligation towards his membership with LA Fitness;

    f.   That LA Fitness knew that the representation was false when they made it, and/or that LA Fitness made the representation recklessly and without regard for its truth;

    g.   That LA Fitness intended that Plaintiff PERRY relied on the representation;

    h.   That Mr. PERRY reasonably relied on LA Fitness's representation;

    i.   That Plaintiff PERRY was harmed; and

    j.   That Plaintiff's reliance on LA Fitness's representation was a substantial factor in causing Mr. PERRY harm.

183.   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, a hereinafter set forth.

### 24.   Second Cause Of Action For Breach Of Contract For Failure To Perform And Failure Of Consideration
[Against Bally Total Fitness and LA Fitness and DOES 1-10]

184.   Plaintiff hereby realleges and incorporates herein by this reference each and every allegation contained in Paragraphs 1 through 162 of its Complaint, as though fully set forth herein.

185.   On or about July 28, 1987, Plaintiff Moshe PERRY entered into a written agreement with Defendant Bally Total Fitness for the membership in their health spa, including without limitation, the unlimited use of the premises and all its equipment and faculties.  A sample and correct copy of Bally contract is attached hereto as Exhibit "7"

186.   Upon information and belief, Plaintiff states that on or about November 30, 2011, defendant LA Fitness acquired nearly all of the Bally Total Fitness clubs in Southern California and its assets, including the property, liabilities and all of the benefits and contractual rights owed to Plaintiff PERRY under the agreement of July 28, 1987.

187.    Plaintiff alleges that Bally Total Fitness recklessly and intentionally denied him his pre paid dues of 3 years he paid Bally and did not allow Plaintiff an opportunity to cure or take proper measures to prevent denial of Bally's Contract terms and conditions in the LA Fitness purchase contract.

188.    As a direct, substantial, and proximate result of the reckless or intentional conduct was outrageous of LA Fitness, as set forth above, Plaintiffs suffered financial and emotional harm and damages.

189.    LA Fitness acts and/or failures to act under the circumstances of this case were outrageous in that LA Fitness was outrageous amounted to reckless indifference to the rights of Bally Total Fitness years long paying customers, and of other customers of Bally's.

190.    WHEREFORE, the plaintiff is entitled to be placed in the same position he would have been in had the contract been performed and prays for judgment against the Defendants, and each of them, a hereinafter set forth.

### 25.    Third Cause of Action For Intentional Interference With Prospective Economic Advantage - Tortious Interference With Contract
[Against Bally's Total Fitness and LA Fitness DOES 1-10]

191.    Plaintiff hereby realleges and incorporates herein by this reference each and every allegation contained in Paragraphs 1 through 162 of its Complaint, as though fully set forth herein.

192.    On or about July 28, 1987, Moshe PERRY entered into a written contract with Defendant Bally Total Fitness to provide a "National" membership to any Bally club at any location nationally with no restriction of how many visits to the club and not as LA Fitness claims was a "Local" membership which allows him only two visits per week. See exhibit 5.    A true and correct copy of Plaintiff membership card is attached hereto Exhibit "1" and "2". Bally Total Fitness refused to furnish Plaintiff a copy of the original agreement.

193.    Upon information and belief, Plaintiff states that Bally's marketing department had contacted him to pay in advance three years membership for $165.99. (See exhibit "12.")

194.    Plaintiff states that membership dues decrease over the years to him and many other Bally's members and that for the past 28 years Plaintiff PERRY membership decreased from $ 119.99 to around $55 a year, and not as stated by LA Fitness after the acquisition of Bally Total Fitness as $ 119.99 per year.

195.    Plaintiff states that on March 30, 2011, Plaintiff arrived at the Chatsworth Bally Total Fitness and paid the sum of $165.99 to cover Bally Total Fitness's membership period for three years. Plaintiff asked the Bally's staff member Cynthia to write her name, date and sign the back of the receipt

48

1   because he was aware over the three years period the receipt would be worn out and faded. Cynthia

2   wrote her name, signed and dated the receipt 2/11. Plaintiff receipt faded but on the back it was Bally

3   staff Cynthia's name was still visible as well as her signature and date.

4   196.   In or about November 30, 2011, defendant LA Fitness acquired nearly all of the Bally

5   Total Fitness clubs in Southern California and its assets, including the property, liabilities and all of the

benefits and contractual rights owed to Plaintiff PERRY under the agreement of July 28, 1987.

6   197.   On or about December 2011, Plaintiff arrived at the Bally Total Fitness location in

7   Chatsworth, California. At that time Bally was in the process of turning into LA Fitness PERRY was

8   handed by one of Bally Staff an **LA Fitness membership card number: F12667542.** Plaintiff was not

9   asked by anyone to sign any paper and no LA Fitness contract was signed before accepting LA Fitness

10  membership card.

11  198.   When on March 2, 2012, Plaintiff had arrived to the newly open LA Fitness location in

Chatsworth, new staff was in the entry place and as he attempted to enter the club as he did for the past

12  28 years, he was refused. The staff informed Plaintiff he must first pay $119.95 in dues and when

13  Plaintiff protested he paid 3 years in advance $165.99, he was informed he only paid 65.99. Plaintiff

14  asked for the manager and was told he was not in and so he left his phone number to call him back.

15  199.   Upon information and belief, Plaintiff states that LA Fitness claimed that Plaintiff PERRY

16  had a "Local" membership entitled him for only 3 visits a week, and not a Bally Total Fitness "National"

17  membership he had since July 28, 1987.

18  200.   The manager did not call and about 30 days had passed. When Plaintiff returned to the

Chatsworth LA Fitness he was told that his membership lapsed and because he did not renew it within 30

19  days, that he forfeited his rights to renew his membership. When Plaintiff attempted to explain that he

20  did not received any renewal notice, the staff member called his manager, named Louis who aggressively

21  spoke over Plaintiff and would not allow him to talk and the manager then retrieved an alleged contract

22  signed by Plaintiff on February 2, 2012 with a signature not similar to Plaintiff's signature. The manger

23  then called as witnesses his staff members. Plaintiff was then asked to leave the premises.

24  201.   After 28 years of membership with Bally Total Fitness, LA Fitness depriving Plaintiff's

25  membership rights is Unconscionable.[60]/ LA Fitness using deception and fraud, causing him anguish and

26  [60]   "Unconscionability has procedural and substantive aspects," both of which must be present for a
court to refuse to enforce a contract or clause based on unconscionability. (***Abramson v. Juniper***

27  ***Networks, Inc***. (2004) 115 Cal.App.4th 638, 655 (Abramson); ***Armendariz v. Foundation Health***
***Psychcare Services, Inc***. (2000) 24 Cal.4th 83, 114 (Armendariz).) Courts use a " 'sliding scale' "

28  approach in assessing the two elements, such that "the more substantively oppressive the contract term,

discouragement and affected his well and mental being as he had always exercised in the Chatsworth Bally location.

202.    To establish this claim for intentional interference with prospective economic advantage, Plaintiff must prove all of the following elements: [1]. That Plaintiff and Bally Total Fitness were in an economic relationship that probably would have resulted in an economic benefit to Plaintiff PERRY had he benefit from his spa membership]; [2]. That LA Fitness knew of the relationship Plaintiff had with Bally when he paid his pre-paid dues; [3]. That LA Fitness intended to disrupt the relationship with Bally Total Fitness on the prepaid dues by falsely claiming Plaintiff did not pay his dues within 30 days and as a result has forfeited him Bally's membership; [4]. That LA Fitness engaged in wrongful conduct through wrongfulness, as **misrepresentation, fraud,** violation of statute in order to deprive Plaintiff as a pre paid member; [5]. That the relationship was disrupted when LA Fitness alleged PERRY contract was forfeited; [6]. That Plaintiff PERRY was harmed as a result; and [7]. That LA Fitness's wrongful conduct was a substantial factor in causing Plaintiff PERRY's harmed.

203.    As a direct and proximate result of the aforementioned breaches of contract b Defendants LA Fitness, inclusive, Plaintiff has suffered damage in an amount to be shown according to proof at trial, but not limited to the cost of bringing this suit, lost membership and fair market value of such membership, and legal costs, as well as other incidental and consequential damages.

204.    Upon information and belief, LA Fitness, recklessly and intentionally failed to take proper measures to prevent denial of Bally's Contract terms and conditions in the LA Fitness purchase contract.

205.    As a direct, substantial, and proximate result of the reckless or intentional conduct was outrageous of LA Fitness, as set forth above, Plaintiffs had suffered financial and emotional harm and damages.

206.    LA Fitness acts and/or failures to act under the circumstances of this case were outrageous in that LA Fitness was outrageous amounted to reckless indifference to the rights of Bally Total Fitness years long paying customers, and of other customers of Bally's.

---

the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (Ibid.)  A "claim of unconscionability often cannot be determined merely by examining the face of the contract, but will require inquiry into its [commercial] setting, purpose, and effect." (***Perdue v. Crocker National Bank*** (1985) 38 Cal.3d 913, 926 (Perdue); see also Civ. Code, § 1670.5, subd. (b) ["When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."].)

1    207.    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, a

2    hereinafter set forth against LA Fitness and Bally Total Finesse.

### 26.  Fourth Cause of Action  For  Unjust Enrichment –
### Money Had And Received
[Against Bally's Total Fitness and LA Fitness and DOES 1-10]

6    208.    Plaintiff hereby realleges and incorporates herein by this reference each and eve allegation

contained in Paragraphs 1 through 162 of its Complaint, as though fully set forth herein.

7    209.    Pursuant to their written contracts with Bally's Health Spa, in or around March 30, 2011,

8    Defendants Bally and DOES 1-10, inclusive, contracted to provide Plaintiff three years in gym

9    membership. Plaintiff paid $165.99 in prepayment dues to Bally's Health Total Fitness who agreed to

10   provide him 3 years of membership.

11   210.    However, after Bally Total Fitness was bought by LA Fitness, they have not fully

12   performed all terms, conditions, covenants as required by law and pursuant to the terms of the written and

oral contracts.

13   211.    Defendants Bally and LA Fitness DOES 1-10, inclusive, have breached their contract by

14   accepting Plaintiff prepayment of $165.99 on March 30, 2011 was for three (3) year but LA Fitness had

15   refused to perform.  Bally failed to account for the three years prepayment dues.

16   212.    Money can be the subject of a cause of action for conversion[64] when there is a specific,

17   identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails

18   to make the payment.  [Citation.]"  (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457,

19   1491.)   While money can be the subject of an action for conversion if a specific sum capable of

identification is involved, "a mere contractual right of payment, without more, will not suffice."

20   (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 452.)

21   213.    Plaintiff has suffered damage in an amount to be shown according to proof at trial, but not

22   limited to the cost of bringing this suit, lost membership and fair market value of such membership, and

23   legal costs, as well as other incidental and to any punitive and other incidental and consequential

24   damages.

---

25   [64]    In *Haigler v. Donnelly*, 18 Cal.2d 674 [117 P.2d 331], the court upheld an award for punitive

26   damages. The first cause of action alleged was one for money had and received. The second cause of action alleged that defendant, while acting as agent for plaintiffs, received a stipulated sum of money belonging to plaintiffs and maliciously and fraudulently refused to account for it after proper demand.

27   The court characterized the first cause of action as ex contract in nature, being founded upon a promise implied in law.

28

51

214.   LA Fitness acts and/or failures to act under the circumstances of this case were outrageous in that LA Fitness was outrageous amounted to reckless indifference to the rights of Bally Total Fitness years long paying customers, and of other customers of Bally's.

215.   Upon information and belief, LA Fitness, recklessly and intentionally failed to take proper measures to prevent denial of Bally's Contract terms and conditions in the LA Fitness purchase contract.

216.   As a direct, substantial, and proximate result of the reckless or intentional conduct was outrageous of LA Fitness, as set forth above, Plaintiffs suffered financial and emotional harm and damages.   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, a hereinafter set forth.

### 27.   Fifth Cause of Action For CLRA (Civ. Code, § 1770, Subd. (A); For Unfair And Illegal Business Practices (Business And Profession §17200 Et Seq. Commencing With Section §17500)
[Against Bally's Total Fitness and LAFitness LLC  DOES 1-10]

217.   Plaintiff hereby realleges and incorporates herein by this reference each and eve 13 allegation contained in Paragraphs 1 through 162 of its Complaint, as though fully set forth herein.

218.   Upon information and belief, Plaintiff alleged that LA Fitness knew and should have known the information told to Plaintiff PERRY had only a **"Local"** membership entitled him only for 3 day a week visits was false, and that LA Fitness knew their claims was false and Plaintiff had a Bally Total Fitness "National" membership since July 28, 1987.  (**See a true and correct copy of Plaintiff's Bally Total Fitness "National" membership card as exhibit 1.**)

219.   Upon information and belief, Plaintiff alleged LA Fitness knew and should have known on or about March 2, 2012 that Plaintiff presented a copy of the Bally's receipt for $165.99 for three years.  That on the back of the receipt was a date, an amount of $165.99 and a signature of Cynthia, a past manager of Bally Total Fitness in Chatsworth, CA.   That all of LA Fitness knew this claim to be false that Plaintiff only paid $ $ 65.99.  That the manager of LA Fitness in Chatsworth claiming Plaintiff had only 30 days grace period to renew his LA Fitness and that time had passed and the membership was forfeited.

220.   Upon information and belief, Plaintiff alleged LA Fitness knew it to be false that when Plaintiff informed them that his signature was forged on the LA Fitness contract, LA Fitness responded that since Plaintiff's Bally membership was not paid, he had forfeited the membership and LA Fitness when not renewed in 30 days, therefore they had no obligation to renew his membership.

221.    To prevail on a claim of CLRA and Business and Profession §17200 et seq. Commencing With Section §17500 et seq. "[I]t establishes three varieties of unfair competition — acts or practices which are unlawful, or unfair, or fraudulent." ***Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.***, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted).  In prohibiting "any unlawful" business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Id. (internal quotation marks omitted); see also Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1168 (9th Cir. 2012).

222.    CLRA which prohibits specified "unfair methods of competition and unfair or deceptive acts or practices," Plaintiff must state a deception-based cause of action under the CLRA, a plaintiff must demonstrate that the defendant engaged in conduct that was likely to mislead or deceive a reasonable consumer. (***Colgan v. Leatherman Tool Group, Inc.*** (2006) 135 Cal.App.4th 663, 680.) "Whether a practice is deceptive…is generally a question of fact…[that] cannot be made on demurrer." (***Linear Technology Corp. v. Applied Materials, Inc***. (2007) 152 Cal.App.4th 115, 134-135.)

223.    However, "[t]he question whether consumers are likely to be deceived…can be decided on a demurrer…if the facts alleged in the complaint, and facts judicially noticed, compel the conclusion as a matter of law that consumers are not likely to be deceived." (***Chapman v. Skype Inc***. (2013) 220 Cal.App.4th 217, 226-227 (Chapman).) To state a CLRA violation, a plaintiff also must allege he or she "suffer[ed]…damage as a result of the alleged violation. (Civ. Code, § 1780, subd. (a).)

224.    Thus, a plaintiff must plead a causal connection between the defendant's allegedly deceptive representation and the alleged harm. (***Durell v. Sharp Healthcare*** (2010) 183 Cal.App.4th 1350, 1367 (***Durell***).) "Because 'reliance is the causal mechanism of fraud' [citation], this requires pleading facts showing actual reliance, that is, that the plaintiff suffered economic injury as a result of his or her reliance on the truth and accuracy of the defendant's representations." (***Chapman***, supra, 220 Cal.App.4th at p. 228; ***Durell,*** supra, at p. 1367 [reliance means that plaintiff would have acted differently absent the misrepresentation].)

225.    As a direct and proximate result of the aforementioned breaches of contract b Defendants LA Fitness, inclusive, Plaintiff has suffered damage in an amount to be shown according to proof at trial, but not limited to, the cost of bringing this suit, lost membership and fair market value of such membership, and legal costs, as well as other incidental and consequential damages.

226.    Upon information and belief, LA Fitness, recklessly and intentionally failed to take proper measures to prevent denial of Bally's Contract terms and conditions in the LA Fitness purchase contract.

53

227. As a direct, substantial, and proximate result of the reckless or intentional conduct was outrageous of LA Fitness, as set forth above, Plaintiffs suffered financial and emotional harm and damages.

228. LA Fitness acts and/or failures to act under the circumstances of this case were outrageous in that LA Fitness was outrageous amounted to reckless indifference to the rights of Bally Total Fitness years pre-paid and long term paying customers, and of other customers of Bally's.

229. WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, a hereinafter set <u>forth.</u>

### 28. <u>Sixth Cause Of Action For False Representation of Forfeiture Of Spa Membership</u>
[Against Bally's Total Fitness and LAFitness LLC. DOES 1-10]

230. Plaintiff hereby realleges and incorporates herein by this reference each and eve 10 allegation contained in Paragraphs 1 through 162 of this Complaint, as though fully set forth herein.

231. As discussed above, on or about November 30, 2011, LA Fitness had violated the terms of the original agreement Plaintiff had with Bally Total Fitness by claiming PERRY had forfeited the membership by failing to pay his membership within 30 days, ignoring Bally's "reactivation" policy of lapsed club membership.

232. Bally membership agreement expressly allow members as Plaintiff PERRY to renew at any time their membership in the event the membership lapsed, the members can renew their membership using Bally's "reactivation" fees which cost no money (zero).

233. Plaintiff informed of the well-establish reluctance of courts to construe ambiguous contracts to result in forfeitures.[65] (e.g., ***Ballard v. MacCallum*** (1940) 15 Cal.2d 439, 444 ["the policy and rule are settled, both in the interpretation of ordinary contracts and instruments transferring property, that the construction which avoids forfeiture must be made if it is at all possible"].)

234. Nowhere does Bally's contract states that LA Fitness may alter the Bally contract -- including that unless a member pay his/her dies within 30 days his/her membership is forfeited forever, when they were members for 25 years. So, as a matter of law that reasonable members were likely have been misled by LA Fitness subsequent misleading representations that unless they renewed within 30 days their membership was forfeited.

---

[65] In ***re Sheena K.*** (2007) 40 Cal.4th 875, 887 fn. 7. The California Supreme Court commented that appellate courts most frequently invoke this discretion to overlook forfeiture "where a forfeited claim involves an important issue of constitutional law or a substantial right [citations]."

235.   But none of Bally's contract asserts a forfeiture provision to be exercise and if such may occur only upon proper notice.  If no clear forfeiture provision is in the Bally agreement, the member may pay the membership fees after the expiration of certain period and retain possession.  See ***Briggs v Electronic Memories & Magnetics Corp***. (1975) 53 CA3d 900, 905, 126 CR 34.  Even if there was a forfeiture provision, the Bally Gym agreement will remain in effect if the member is allowed sufficient time to cures the breach within the applicable time period, but this requires proper notice.

236.   Moreover, LA Fitness had duty to provide the spa member with notice and an opportunity to avoid forfeiture by making a demand for membership dies as required by the common law.[63]  LA Fitness and the spa member may not waive the notice provisions.[64]  If Bally contract does not contain a forfeiture declaration, the spa member may pay dues after the expiration of any alleged notice and retain his membership, even if LA Fitness has acquired Bally they must keep the original terms of the Bally agreement, because if not, then LA Fitness will do what they doing now by excluding and depriving thousands of Bally members their membership.

237.   Regardless of LA Fitness false claims, no forfeiture provision ever existed in Bally's contracts.  The contract and Bally's conduct clearly provided "**reactivation**" option as method to be at any time the membership lapsed.  The loss or forfeiture of spa membership claims by LA Fitness (Bally) by failure to exercise the reactivation option does not work forfeiture against the optionee. ***Drewry v. Welch,*** 236 Cal.App.2d 159, 167 [46 Cal.Rptr. 65].)

238.   Pursuant to their subcontracts with Bally's Health Spa, Defendants Bally Total Fitness, LA Fitness and DOES 1-10 , inclusive, warranted that Bally obligations under this Agreement shall be performed in a good like faith manner, shall be good for three years, free from faults and restrictions and in conformance with the Contract Documents of July 28, 1987.

239.   Defendants LA Fitness, inclusive, have breached their agreement by, among other things, failing to accept a copy of the receipt of Plaintiff payment of $165.99 to Bally total Fitness in a manner consistent with the Contract Documents of July 28, 1987.  Plaintiff has provided notice to Defendants Bally and LA Fitness, inclusive, that they breached the contractual provisions of the agreement by

---

[63]   ***Gersten Cos. v.  Deloney*** (1989) 212 CA3d 1119, 1128, 261 CR 431.

[64]   See also ***EDC Assoc. Ltd. v Gutierrez*** (1984) 153 CA3d 167, 170, 200 CR 333;  See also ***Briggs v Electronic Memories & Magnetics Corp***. (1975) 53 CA3d 900, 905, 126 CR 34.

1 alleging Plaintiff had forfeited his membership.  Plaintiff alleges that the forfeiture was done by LA
2 Fitness with no notice to Plaintiff.

3    240.   As a direct and proximate result of the aforementioned breaches of contractual provisions
4 of the agreement of July 28, 1987 by defendants LA Fitness, inclusive. Plaintiff has suffered damage in
5 an amount to be shown according to proof at trial, but not limited to, the cost of bringing this suit, lost
6 membership and fair market value of such membership, and legal costs, as well as other incidental and
consequential damages.

7    241.   Upon information and belief, LA Fitness, recklessly and intentionally failed to take proper
8 measures to prevent denial of Bally's Contract terms and conditions in the LA Fitness purchase contract.

9    242.   LA Fitness acts and/or failures to act under the circumstances of this case were outrageous
10 in that LA Fitness was outrageous amounted to reckless indifference to the rights of Bally Total Fitness
11 years long paying customers, and of other customers of Bally's.

12    243.   As a direct, substantial, and proximate result of the reckless or intentional conduct was
13 outrageous of LA Fitness, as set forth above, Plaintiffs suffered financial and emotional harm and
damages.

14    244.   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, a
15 hereinafter set forth.

16    **29.   Seventh Cause of Action For Breach Of Fiduciary Duty**
[Against Bally's Total Fitness and LAFitness LLC. DOES 1-10]

17
18    245.   Plaintiff hereby realleges and incorporates herein by this reference each and eve allegation
contained in Paragraphs 1 through 162 of its Complaint, as though fully set forth herein.

19    246.   Pursuant to their contracts with Bally Total Fitness, Defendants LA Fitness inclusive had
20 fiduciary duty to disclose payment of prepaid dues, among other things, failing to disclose that Plaintiff
21 may reinstate his membership if he pays his dues.   Instead defendant LA Fitness representatives
22 communicated repeatedly to Plaintiff that he had forfeited his Bally membership because he failed to pay
23 it within 30 days, and so claiming they had no obligation to him.  Plaintiff has provided notice to
Defendants LA Fitness inclusive, that they breached the contract and he was ignored.

24    247.   As a direct and proximate result of the aforementioned breaches of warranty b Defendants
25 LA Fitness, inclusive, Plaintiff has suffered damage in an amount to be shown according to proof at trial,
26 but not limited to the lost club/spa 28 years old membership, diminution of fair market value of such
27 membership, and legal and professional costs, as well as other incidental and consequential damages.

28

56

248.   Upon information and belief, LA Fitness, recklessly and intentionally failed to take proper measures to prevent denial of Bally's Contract terms and conditions in the LA Fitness purchase contract.

249.   As a direct, substantial, and proximate result of the reckless or intentional conduct was outrageous of LA Fitness, as set forth above, Plaintiffs suffered financial and emotional harm and damages.

250.   LA Fitness acts and/or failures to act under the circumstances of this case were outrageous in that LA Fitness was outrageous amounted to reckless indifference to the rights of Bally Total Fitness long paying customers, and of other customers of Bally's.

251.   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, a hereinafter set forth.

### 30.   Eighth Cause of Action Intentional Interference With Contractual Relations
[Against Bally's Total Fitness and LAFitness LLC. DOES 1-10]

252.   Plaintiff hereby realleges and incorporates herein by this reference each and eve allegation contained in Paragraphs 1 through 162 of its Complaint, as though fully set forth herein.

253.   Plaintiff has entered into an agreement with defendant Bally Total Fitness to provide.

254.   Plaintiff is informed and believes, and based thereon alleges, that each of the aforementioned services were denied to Plaintiff in a negligent manner and that such denial have resulted in tangible property damage to these elements from the loss of the membership club.

255.   As a proximate result of Defendants, and each of their negligent conduct, Plaintiff had suffered by deprivation and was damaged by deprivation of his spa services in an amount to be shown according to proof at trial, but not limited to, the cost of bringing this suit, for his lost gym membership for the past two years and the fair market value of such membership, as well as other incidental and consequential damages.

256.   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, a 14 hereinafter set forth.

### 31.   Ninth Cause of Action For Breach of Implied Covenant Of Good Faith And Fair Dealing
[Against Bally's Total Fitness and LAFitness LLC. DOES 1-10]

257.   Plaintiff hereby realleges and incorporates herein by this reference each and eve allegation contained in Paragraphs 1 through 162 of its Complaint, as though fully set forth herein.

258. Plaintiff has entered into an agreement on July 28, 1987 with defendant Bally Total Fitness to provide gym membership. On March 30, 2011, Plaintiff PERRY prepaid for three years membership dues.

259. To establish a claim for breach of implied covenant of good faith and fair dealing, Plaintiff must prove all of the following elements: [1]. That Plaintiff PERRY and Bally Total Fitness had entered into a contract; [2]. That Plaintiff did all, or substantially all of the significant things that the contract required him to do by paying in advance a prepaid membership dues for three years; and that he did not need to renew the membership with LA Fitness under their new contract term because he prepaid Bally in advance for three years; [3]. That all conditions required for Bally Total Fitness's performance had not occurred and were not excused; [4]. That LA Fitness unfairly interfered with Plaintiff's right to receive the benefits of the contract; and [5]. That Plaintiff PERRY was harmed by Bally and LA Fitness's conduct.

### 32. Tenth Cause of Action For Intentional Infliction Of Emotional Distress
[Against Bally's Total Fitness and LAFitness LLC. DOES 1-10]

260. Plaintiff hereby realleges and incorporates herein by this reference each and every allegation contained in Paragraphs I through 162 of its Complaint, as though fully set forth herein.

261. Pursuant to their agreements with Bally's Health Spa, each of the Defendants agreed to indemnify Bally Total Fitness from any claims arising out of or in any way connected with the performance of granting club access. Bally Total Fitness and the Plaintiff paid and have performed all the conditions and obligations to be performed on its part under the Bally agreement.

262. Plaintiff has been deprived, and continues to be deprived his club membership rights, damages, costs, expenses, attorneys' fees, legal costs and liability due to Defendants' actions. By the terms of the Contracts, Plaintiff is entitled to recover these costs and expenses from Defendants.

263. Upon information and belief, LA Fitness, recklessly and intentionally failed to take proper measures to prevent denial of Bally's Contract terms and conditions in the LA Fitness purchase agreement.

264. As a direct, substantial, and proximate result of the reckless or intentional conduct was outrageous of LA Fitness, as set forth above, Plaintiffs suffered financial and emotional harm and damages.

58

265.    LA Fitness acts and/or failures to act under the circumstances of this case were outrageous in that LA Fitness was outrageous amounted to reckless indifference to the rights of Bally Total Fitness years long paying customers, and of other customers of Bally's.

266.    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, a hereinafter set forth.

### 33.    Plaintiff's Civil Conspiracy Allegations Are In Support of All The Causes of Actions First – Ninth.
(Against Bally's Total Fitness and LAFitness LLC. DOES 1-10)

267.    Plaintiff hereby realleges and incorporates herein by this reference each and every allegation contained in Paragraphs 1 through 162 of this Complaint, as though fully set forth herein.

268.    Plaintiff re-alleges and incorporates herein Plaintiff's allegations of Civil Conspiracy in support of the Causes of actions 1st -9th against all the defendants LA Fitness LLC. And Bally Total Fitness LLC. Does 1-10, in order to impose liability on the defendants' misconduct and for the other torts alleged in this complaint, by reference all of the allegations contained in Paragraphs 1 through 269, inclusive, of this complaint as though fully set forth herein.

269.    Plaintiff alleges civil conspiracy between defendants LA Fitness LLC. And Bally Total Fitness LLC. Does 1-10, was based on that Defendants engaged in a conspiracy to commit the torts of breach of contract; fraud; intentional misrepresentation; intentional infliction of emotional distress; unfair business practices; and defendants LA Fitness LLC. And Bally Total Fitness LLC. Does 1-10, were all acting in their own interests with complete and total disregard to Plaintiff's rights.

270.    Plaintiff seeking claims in his own right from those defendants LA Fitness LLC. and Bally Total Fitness LLC. Does 1-10 have breached their fiduciary duty of trust.  A fiduciary relationship arises out of a commitment, whether express or implied, to act for the benefit of another and it is violated when the defendant LA Fitness claimed that Plaintiff had forfeited his 25 years membership when he failed to pay it within 30 days, LA Fitness adamantly refused to renew it.

### 34.    The Los Angeles Courts History of Depriving PERRY His Constitutional Rights.

271.    PERRY has been vilified by the Los Angeles Superior Court and deprived his rights and privileges for many years.  By the Superior Court, the Court of Appeal and the California Supreme Court.  Yet, here is some information about PERRY, a middle child of a blessed with children family.  PERRY's

1  parents were married for 55 years.  PERRY served as an officer in the Israeli Army with commendation

2  and majority of his service was in Lebanon during the Israeli – Palestinian war in Lebanon.

3       272.   PERRY had a normal, peaceful, healthy childhood.  This stopped when he married an

4  American wife and ended with him inside the doors of the Van Nuys court.  The first time PERRY's

5  stomach was turning with nerve and intimidation.  PERRY had never stepped into any court of law, not

   in Israel nor in the U.S. until his divorce proceeding.

6       273.   The ugly history between PERRY and the Los Angeles Superior Courts begun in two

7  family court cases, in the Van Nuys (Case # **LD019149**) and Los Angeles (case# **PF002773**).  In

8  LD019149, after 5 years of separation, (with no previous history of domestic violence) PERRY was

9  about to get married to his fiancé, the jealous ex wife turned to the Van Nuys family court, who

10  manipulated and dissolved an existing 5 years joint legal custody arrangement issued a wrongful

11  restraining order that was later used to allow a wrongful move-away order.

12       274.   The father and his children were later diagnosed as suffering from a Post Traumatic Stress

   from the sudden and complete breakup by a court's appointed (Van Nuys) psychologist.  The report was

13  shelved.  The family court also conducted a child custody evaluation by the probation office? This report

14  was also shelved and never heard.  As a result of the Superior Court evil actions, the mother did not allow

15  PERRY to.  PERRY requested for relief from the Van Nuys Superior Court that mother alienated the

16  children were all denied.  PERRY could not see, speak or have any communications with his two

17  children 15 years.

18       275.   In **LD019149**, PERRY was asked by children's counsel that he will have to pay $80,000

   in order to reverse the move-away order. The two children are now adults and have no contact

19  whatsoever with their father.

20       276.   People simply do not have children, labor in raising them in order to never see them again.

21  Just because the family court in Van Nuys was bribes and is taking corrupt doesn't mean people are

22  undeserving to their children.  But the discrimination to immigrant fathers is institutional in the United

23  States court system.

24       277.   In case# **PF002773**, PERRY who was about to get married, suddenly separated from the

   mother, ended in the family court in Los Angeles.  Again, with no previous history of domestic violence,

25  the family court issued a total of 8 years restraining order and prevented PERRY from seeing his son

26  (third child) for 9 years.   PERRY later revealed that both mothers in # **LD019149** and **PF002773** are

27  best friends.

28

278.    There was not a more deserving, devoted and loving father as PERRY, he appealed his case to the United States Supreme Court (cases **#09-5313 and 08-9987**) but the court refused to hear his certiorari. This is only one example of how hypocritical evil court punishes good parents. Why? Because the United States District Courts is aware of the abuse in the Los Angeles Superior Courts and sits idle, allowing a district court Judges as Manuel Real shield the LA courts by dismissing every civil right complaint filed in the district court. This emboldened the Los Angeles court to do more evil with a policy of deprivation to PERRY, and to others like him.

279.    The Van Nuys and the Los Angeles Courts Judges had advanced the depravation to help the two mothers, PERRY responded by filling on November 5, 2004, a Civil Right Complaint in the Central United States District Court, (case # **CV04-8895(MLG)**. But the district court dismissed the complaint, when PERRY was unfamiliar with the law.

280.    On June 19, 2008, in case # **08B02218** Meguerian v. PERRY, in an unlawful detainer case, the Van Nuys Superior Court manipulated a default against PERRY after he already appeared and answered it, leaving PERRY destitute with his belonging outside his residence.

281.    On October 30, 2009, when PERRY arrived at the California Supreme satellite office in on 300 S. Spring Street in Los Angeles, a court's clerk named Cathy Robbins chased after PERRY out of the of the Supreme Court, because he called her an "evil women" after he saw her lied to tearful pro se litigants who lost their children in the family court, Mrs. Robbins frivolously would deny the filling of their petition for review and when they came back she would claimed it was filed too late.

282.    Mrs. Robbins Chase entered the next room Court of Appeal PERRY and spoke to Mr. Lippo, and after she run down the hallway of the Ronald Reagan building, where she demanded the California CHP arrest PERRY. He was arrested and withheld for 45 minutes and then released because he explained that he only expressed his freedom of speech. On November 20, 2009, PERRY made an official complaint of the incident that occurred on October 30, 2009 to the California Supreme Court, head clerk Mr. Frederic Ulrich. Soon after (within a month), the California Supreme satellite office decided to close the office and all filling were to be made by mail. Finally the curtain of evil is lifted from the people of Los Angeles.

283.    When PERRY's car was wrongly repossessed on February 6, 2009, PERRY filed a state case (case # **PC0446679**) resulted in the case been assigned to Judge Randy Rhodes in the Chatsworth courthouse. Rhodes was one of the Van Nuys Judges PERRY sued in 2004.[65] On November 12, 2009,

---

[65]    PERRY's designation as a vexatious litigant by a judge who he sued in 2004 to force PERRY to post security bond when he could not afford, after he filed for bankruptcy protection, in order to dismiss

1
2
3
4
5
6

Judge Rhodes suggested to the defendants to designate PERRY as a vexatious litigant. On April 27, 2010, Judge Rhodes designated PERRY as a vexatious litigant, a prefiling order and to post security bond. PERRY appealed the order to the Court of Appeal (case # **B2258521**) and the appeal was dismissed as non appealable order on July 28, 2010. PERRY filed a writ to the California Supreme Court (case # **S206991**) was also denied on January 30, 2013. The Second District Court of Appeal took a ride on the designation of PERRY and on April 21, 2010 also issued orders that designated PERRY as vexatious litigant because he filed too many writs of mandate and appeals in his family court cases.

7
8
9
10
11
12
13
14

284.    In December 2010, PERRY won an unemployment benefits in an administrative law judge hearing. EDD refused to follow the ruling of the ALJ and PERRY filed an administrative writ of mandate on April 11, 2011 in the Pasadena Superior court (case # **GS013232**.) The case was moved to Los Angeles and the California Supreme Court specifically assigned a retired Judge Robert O'Brien to replace Judge Ann Jones who presided. Jones allowed the administrative to correct the record which parts of it was omitted of him wining the first ALJ hearing. Judge Obrien denied the administrative writ and PERRY appealed to the Court of Appeal (case # **B244139**.)    On October 2, 2012, the court of appeal presiding Justice Boren dismissed PERRY's appeal as frivolous. PERRY filed a writ review to the California Supreme Court on 01/15/2014to (case # **S206991**) was also denied.

15
16
17
18
19
20

285.    **PERRY was a membership with Bally's Total Fitness for 28 years**. Bally's was sold to LA Fitness who did not notify PERRY when his membership were dues and after 30 days cancelled PERRY three years prepaid membership with Bally. PERRY filed a civil action in (case # **PC056529**) filed in the Chatsworth Courthouse and the case was dismissed as frivolous because PERRY did not first obtain a permission to file the lawsuit. When PERRY filed on the request. It was denied because he was a vexatious litigant. PERRY's appeal (case # **B267609**) to the court of appeal was also dismissed as frivolous by Justice Boren on October 22, 2015.

21
22
23

286.    Since then and for the past 15 years PERRY had endured harassment of his basic rights and will continue to suffer all sorts of deprivations (not all mentioned here, But here is a few) of his constitutional common law rights unless the district court stop the abuse.

24
25
26
27

the State Court action, could easily perceived the Courts as State actors, to constitute a state action. Plaintiff briefed in the complaint the issues of 42 U.S.C. § 1983 claims and that the defendants and respondent were acting under color of state law.

28

# XI.   **CONCLUSION**

287.    WHEREFORE, for the reasons herein, PERRY cannot wait until other property is illegally deprived from him and when he reached for the State Courts for relief he is always refused access to the courts.  Plaintiff has rights and asks to be freed from oppression, and prays for judgment against all the Defendants, and each of them, as hereinafter set forth.

## XII.   **PRAYER FOR RELIEF**

XIII.    [Against Bally Total Fitness and LA Fitness and DOES 1-10]

288.    WHEREFORE, Plaintiff respectfully prays that this Court enters judgment against all the Defendants, and each of them, for:

a.   actual damages or compensatory damages;
b.   Punitive damages as allowed by law;
c.   Compensatory damages;
d.   Exemplary damages;
e.   Statutory Damages for violation of public policy;
f.   For interest allowable under California Civil Code, § 3336;
g.   an award of taxable costs; and
h.   Pre and post-judgment interest as allowed by law;
i.   Injunctive relief;
j.   Declaratory relief;
k.   an award of attorneys' fees as allowed by law;
l.   any and all such further relief as this Court deems just and proper.

### **Damages For Physical Distress Damages for Emotional Distress.**
[Against Bally Total Fitness and LA Fitness and DOES 1-10]

289.    Plaintiff has suffered actual physical damage from the loss of his 28 Spa membership, including stress-related heart problems, migraine headaches, stomach and ulcer ailments, skin rashes, and other ailments that affected his health and he was forced to go to the hospital.  Plaintiff demands for damages for emotional distress to be determined in trial.  As a proximate of defendants' actions Bally's Total Fitness -LAFitness LLC: When the court filling was filed was rejected in the State Superior Court/Court of Appeal. California Supreme Court, Plaintiff have been denied access to the Los Angeles Courts claiming all of Plaintiff's filling was frivolous, because he was a vexatious litigant.[69]

---

[69]    In accordance with the general rule, it is settled in this state that mental suffering constitutes an aggravation of damages when it naturally ensues from the act complained of, and in this connection mental suffering includes nervousness, grief, anxiety, worry, shock, humiliation and indignity as well as physical pain." (*Crisci v. The Security Insurance Co. of New Haven, Connecticut* (1967) 66 Cal.2d 425, 433 [58 Cal.Rptr. 13, 426 P.2d 173], internal citations omitted.)

**Allegations -Facts Justifying Punitive Damages.**
[Against Bally Total Fitness and LA Fitness and DOES 1-10]

290.    At the time defendants against Bally's Total Fitness –LAFitness LLC breach of contract, were guilty of malice, oppression, and a willful and conscious disregard for the rights of Plaintiff in that defendants, without making any investigation and with reckless indifference and willful and conscious disregard for the rights of any person had forged Plaintiff's signature on LAFitness LLC contract, claiming thereafter that PERRY waived his rights under the Bally's contract when he failed to renew it within 30 days.   By reason of these acts Plaintiff has been oppressed and seeks punitive and exemplary damages.

291.    The allegations against Bally's Total Fitness -LAFitness LLC in [1, 2, 3, 4, 5, 6, 7, 8, 9, 10 causes of action], above, states circumstances upon which may be used in support of an award of punitive and exemplary damages is sought.[70]

**Reservation of Right To Amend Once As A Matter Of Course The Punitive Damages**

292.    MOSHE PERRY hereby reserves the right to amend to seek any applicable law and amount to punitive damages against all the defendants herein.

**Demand For A Jury Trial**

293.    Plaintiffs hereby demand a jury trial as to all issues so triable as a matter of right, pursuant to F.R.C.P. 38(b)(1) and 38(c).

**XIV.   DECLARATION OF VALUE - VERIFICATION**

I hereby declare, verify, certify and state, pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 USC § 1746, that all of the above in this Civil Rights Complaint and foregoing representations of the case jurisdictional value (reference on page 8) are true and correct to the best of my knowledge, information and belief is competent to testify to the matters stated therein.

Respectfully submitted,

Dated: May 31, 2016

By: _Moshe Perry_

Moshe Perry in Pro Se

---

[70]    "[P]unitive damages are available in a conversion action" [see *Ferraro v. Pacific Fin. Corp. (1970) 8 Cal. App. 3d 339, 351, 87 Cal. Rptr. 226*.   When appropriate, these allegations may be substituted for Paragraphs 150-264. "The general rule of damages in tort is that the injured party may recover for all detriment caused whether it could have been anticipated or not.

# EXHIBITS

Exhibits: [ _1 - 172_ ]

B 2 6 7 6 09

MC-701

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Moshe Perry<br>27943 Seco. Cyn. Rd. # 458, Santa Clarita, CA, 91350 | |

TELEPHONE NO.: 747-224-9515     FAX NO.:

E-MAIL ADDRESS:

ATTORNEY FOR *(Name):* In Pro Per, Pro Se

☑ **COURT OF APPEAL,** Second     **APPELLATE DISTRICT, DIVISION**

☐ **SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS: 300 S. Spring St.

MAILING ADDRESS: Same

CITY AND ZIP CODE: Los Angeles, CA, 90013

BRANCH NAME: Second District

PLAINTIFF/ PETITIONER: Moshe Perry

DEFENDANT/ RESPONDENT: LA Fitness, Bally Total Fitness, et, al.

OTHER:

**COURT OF APPEAL - SECOND DIST.**

# F I L E D

OCT 19 2015

JOSEPH A. LANE _____ Clerk

_____ Deputy Clerk

## REQUEST TO FILE
## NEW LITIGATION BY VEXATIOUS LITIGANT

Type of case:  ☐ Limited Civil  ☑ Unlimited Civil  ☐ Small Claims  ☐ Family Law  ☐ Probate  ☐ Other

CASE NUMBER:
PC056529

1. I have been determined to be a vexatious litigant and must obtain prior court approval to file any new litigation in which I am not represented by an attorney. Filing new litigation means (1) commencing any civil action or proceeding, or (2) filing any petition, application, or motion (except a discovery motion) under the Family or Probate Code.

2. I have attached to this request a copy of the document to be filed and I request approval from the presiding justice or presiding judge of the above court to file this document *(name of document):*
Petition for Writ of Mandate (CCP. 1985); Request to Take Judicial Notice.

3. The new filing has merit because *(Provide a brief summary of the facts on which your claim is based; the harm you believe you have suffered or will suffer; and the remedy or resolution you are seeking):*
A breif summary is that my 28 years old club membership with Bally was cancelled by LA Fitness who purchased Bally. I paid in advance for three (3) years $165.99, but LA Fitness claims I paid Bally only $65,99. I have a receipt although old, but can tell the date is March 26, 2011, a payment for three (3) years & a signature of the manager of Chatsworth Bally. LA Fitness forged my signature on their contract and told me I forfieted my contract with Bally.

4. The new filing is not being filed to harass or to cause a delay because *(give reasons):*
It not only not filed to harass, but I am the party who is being harassed by defendants who forged my signature. I have been a member for 28 years and the inability to go to the spa has affected my health and well being. I ask only for what is fair and which will be determin by the trial court. I did ask for my membership to be reinstated and for damages to be determin by the court. As i mentioned before, this may be resolved in mediation. I am not being greedy. I just want justice and things to be the way they were before. But I think the court should punish LA Fitness.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 10/18/2015                 DENIED     OCT 2 2 2015
                                 Boren

Moshe Perry                                        *(signature)*
(TYPE OR PRINT NAME OF DECLARANT)                  (SIGNATURE OF DECLARANT)

Form Approved for Optional Use
Judicial Council of California
MC-701 [Rev. January 1, 2013]

**REQUEST TO FILE
NEW LITIGATION BY VEXATIOUS LITIGANT**

Code of Civil Procedure, § 391.7
www.courts.ca.gov

2

Moshe Perry
27943 Seco Cyn Rd. # 458
Santa Clarita, CA 91350

Case Number B267609
Division  p

MOSHE PERRY,
Petitioner,
v.
SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
LA FITNESS,
Real Party in Interest.

**3**

U.S. POSTAGE >> PITNEY BOWES

$ 000.48⁵

ZIP 90013
02 1W
0001368493 OCT 22 2015

LOS ANGELES
CA 900
22 OCT '15
PM 4 L

CLERK'S OFFICE
Court of Appeal
SECOND APPELLATE DISTRICT
300 SOUTH SPRING STREET
SECOND FLOOR · NORTH TOWER
LOS ANGELES, CA 90013-1204

MC-701

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Perry, Moshe<br>27943 Seco Cyn. Rd. # 458, Santa Clarita, CA, 91350<br><br>TELEPHONE NO.: 747-224-9515    FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: In Pro Se | RECEIVED<br>DEPT. 1<br><br>SEP - 4 2015<br><br>LOS ANGELES<br>SUPERIOR COURT |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME: Chatsworth Courthouse

PLAINTIFF/ PETITIONER: Perry, Moshe
DEFENDANT/ RESPONDENT: LA Fitness, Bally Total Fitness, 1-10

OTHER:

| REQUEST AND ORDER TO FILE<br>NEW LITIGATION BY VEXATIOUS LITIGANT | CASE NUMBER: PC056529 |
|---|---|

Type of case:  ☐ Limited Civil   ☑ Unlimited Civil   ☐ Small Claims
☐ Family Law   ☐ Probate   ☐ Other

1.  I have been determined to be a vexatious litigant and must obtain prior court approval to file any new litigation in which I am not represented by an attorney. Filing new litigation means (1) commencing any civil action or proceeding, or (2) filing any petition, application, or motion (except a discovery motion) under the Family or Probate Code.

2.  I have attached to this request a copy of the document to be filed and I request approval from the presiding judge of the above court to file this document *(name of document)*:
    Summons and Complaint against LA Fitness, Bally Total Fitness, 1-10

3.  The new filing has merit because *(give reasons)*:
    As stated in the complain and the evidence provided that this litigation has merit.  This is supported by Adrian Aguilar from LA Fitnes and Counsel for LA Fitness Alice Smith who called on Plaintiff and attempted to offer an inadequate resolution, which the Plaintiff had rejected. Mediation may be necessary.

4.  The new filing is not being filed to harass or to cause a delay because *(give reasons)*:
    LA Fitness commited forgery by signing Plaintiff signature; Deceiving Plaintiff that he had forfeited his 28 years old membership for not renewed in 30 days; Bally was paid for 3 yrs and LA Fitness refused to honor.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 08/28-2015

Perry, Moshe

_____    ▶ _____
(TYPE OR PRINT NAME OF DECLARANT)       (SIGNATURE OF DECLARANT)

## ORDER

Approval to file the attached document is:
a.  ☐ Granted
b.  ☐ Denied
c.  ☐ Other:

(A) Request for hearing + Decl. with exhibts.
☑ Attachment to order. Number of pages  39 .
(B) Attachment
Date:

_____
(PRESIDING JUDGE)

Form Approved for Optional Use<br>Judicial Council of California<br>MC-701 [New January 1, 2008]

REQUEST AND ORDER TO FILE
NEW LITIGATION BY VEXATIOUS LITIGANT

Code of Civil Procedure, § 391.7
www.courtinfo.ca.gov

5

**ATTACHMENT B TO THE REQUEST TO FILE NEW LITIGATION (MC 701)**

See **Tracy A. v. Superior Court of Los Angeles County, Cal: Court of Appeal, 2nd Appellate Dist., 7th Div. 2004**:

RECEIVED
DEPT. 1

SEP - 4 2015

LOS ANGELES
SUPERIOR COURT

"(See, e.g., _Roberts v. Superior Court_ (1968) 264 Cal.App.2d 235, 240; _Bank of America v. Superior Court_ (1967) 255 Cal.App.2d 575, 577; _County of Sutter v. Superior Court_ (1966) 244 Cal.App.2d 770, 775.) All of these opinions hold _in forma pauperis_ status clearly justifies waiver of "public costs" and then extend _in forma pauperis_ rights to embrace waiver of required undertakings such as appeal bonds and bonds ordinarily required from out-of-state plaintiffs."

The California Supreme Court in a long series of cases commencing with **Martin v. Superior Court (1917) 176 Cal. 289 [168 P. 135]**, explained that, despite the apparent mandatory character of a variety of statutes calling for the [11 Cal.3d 851] (CCP. §391.1) payment of litigation fees, California courts retain a common law authority to dispense with such fees in the case of poor litigants. (See, e.g., Ferguson v. Keays (1971) 4 Cal.3d 649 [94 Cal.Rptr. 398, 484 P.2d 70]; Isrin v. Superior Court (1965) 63 Cal.2d 153 [45 Cal.Rptr. 320, 403 P.2d 728]; Majors v. Superior Court of Alameda Co. (1919) 181 Cal. 270 [184 P. 18, 6 A.L.R. 1274].)

In **County of Sutter v. Superior Court (1966) 244 Cal.App.2d 770 [53 Cal.Rptr. 424]**, the court followed that "the common-law power embraced waiver of security for costs as well as suspension of fees." (244 Cal.App.2d at p. 774.) Accordingly, the Court of Appeal held that notwithstanding the language of Government Code section 947, a trial court did have authority to waive a bond requirement intended to secure the defendant county's costs of suit. Section §995.240 is also applicable to all statutory bonds or undertakings (§ 995.020), codified the common law authority recognized in Conover (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 394, p. 495).

Where a statue requires a bond to be executed as a condition precedent to the exercise of some right or privilege, or the doing of some act, by the principal obligor, then such bond is said to be a "statutory bond." Under such circumstances it seems to be conclusively presumed that the bond would not have been executed but for the compulsion of the statute. The result is that where the statute requiring such bond is held unconstitutional, or where such statute is help to have no application to the

1

6

situation presented, the bond is declared to have been given without consideration and to be void.   See **Shaughnessy v. America Surety Co. (1903), 138 Cal. 543, 69 Pac. 250, 71 Pac. 701**.  Section 1203 of the Code of Civil Procedure, as enacted in 1893:

"This bond was given to secure a statutory privilege upon conditions to its enjoyment imposed by the statue but the privilege was a constitutional privilege , which could not be interfered with by statute. The undertaking was therefore wholly without consideration and void."

Where a bond itself recites that it is given to comply with a certain statute, such recital seems to be regarded as at least prima facie evidence that the bond is "statutory" and not common law obligations.  **San Francisco Lumber Co. v. Bibb, Supra, n. 4; Shaughnessy v. American Surety Co., Supra, n 1; Martin v. McCabe, supra, n. 4; Loop Lumber Co. v. Van Loben Sels, supra, n. 8**.

Alaska Improvement Co. v. Hirsch (1897), 119 Cal. 249, 47 Pac. 124, where a common law bond  was declared void for the same reason, viz., not supported by consideration. A plaintiff was in this case required by order of the court to give bond, supposedly to secure the continuance of a temporary restraining order.  Recovery of this bond was denied on the ground that it did not "appear that the restraining order was continued in force at all by reason of the bond, or that by giving it the plaintiff in the injunction suit gained any advantage whatever.

The California Supreme Court in the case of **Gibbs v. Tally (1901) 133 Cal. 373, 65 Pac. 970, 60 L.R.A. 815,** declared that a section that requires a bond was unconstitutional and in **Powers v. Chabot (1892), 93 Cal. 266, 28 Pac. 1070** the court stated:

> "The undertaking was not given in pursuance of any agreement between the parties, but simply to secure a statutory privilege.  It did not have that effect, and was therefore wholly without considerations and void, and could not be valid as a common-law undertaking."

See **Baltayan v. Estate of Getemyan, 110 Cal. Rptr. 2d 72 - Cal: Court of Appeal, 2nd Appellate Dist., 7th Div. 2001**: "<u>In forma pauperis rights in California include the right to waiver of any duty to post security guaranteeing an opposing party's costs.</u>

Cases decided after <u>Martin v. Superior Court, supra, have held the inherent</u> <u>common law in forma pauperis rights of indigent California litigants also include</u> <u>elimination of the sort of barrier present in the case before this court—the requirement</u> <u>litigants post security to protect the economic interests of the opposing party</u>. In the first of these decisions, County of Sutter v. Superior Court,[17] the Court of Appeal followed the reasoning of Martin v. Superior Court in addressing that issue. "California's adoption of the `common law" embraced common law jurisprudence in general, including its existent statutory modifications. . . . In the reign of Henry I (1100-1135) an ordinance requiring security was mitigated for the poor by a provision `"that those who had not sufficient present security should pledge their faith to make satisfaction to the utmost of their power.'" . . . The authorities justify the conclusion that the common-law power embraced waiver of security for costs as well 83*83 as suspension of fees." [18] Since indigent Englishmen were entitled to waiver of security in 1850, the Sutter court ruled indigent Californians are, too.

The Supreme Court later endorsed the rationale of County of Sutter in upholding the waiver of security requirements. In Conover v. Hall[19] our high court approved waiver of an injunction bond ordinarily required by Code of Civil Procedure section 529 based on the trial court's conclusion the plaintiff was indigent. The Supreme Court did so even though the plaintiff did not file an in forma pauperis petition and the trial court failed to hold a hearing to determine his financial status. It was enough the record reflected the plaintiff was too poor to post the bond.[20]

Then a year later in Beaudreau v. Superior Court[21] the Supreme Court held it would represent an unconstitutional denial of due process to impose the security requirements provided in Government Code former sections 947 and 951 without allowing plaintiffs a hearing. At this guaranteed hearing, in turn, the court is to consider whether plaintiffs are entitled to a lower security bond or deposit because of the merits of their claim or their modest means, or outright waiver because of their status as indigents.[22] The lynchpin of this opinion is its holding a security bond requirement qualifies as a taking of property whether plaintiffs are forced to post a bond or instead must dismiss their claims because they cannot afford that bond. In one instance the

3

8

property is the cost of the bond (or lost use of a cash deposit) and in the other the loss of a legal claim, which the Court also found qualifies as a property interest.[23]

The very security requirement at issue in this case, the one required by section 1030, also has come before the California courts. In Bank of America v. Superior Court,[24] an appellate court held indigent out-of-state plaintiffs enjoy in forma pauperis rights to waiver of the security provided in 1030. After discussing Martin v. Superior Court and Sutter, the court explained why the rationale of these opinions controlled a security requirement imposed on out-of-state plaintiffs as well. "We believe parallel reasoning applies to Code of Civil Procedure section 1030. The only discernible distinction in the relative positions of a plaintiff within the purview of Government Code section 947 and a plaintiff under Code of Civil Procedure section 1030 is nonresidency. But this distinction is verbal; there is none in substance. A local plaintiff who is indigent differs not at all from a nonresident plaintiff who cannot pay costs. In either instance the likelihood of a prevailing defendant collecting his costs is nil, because the plaintiff in each circumstance is a pauper. [H] Since in its fundamental aspects our case is apposite to the Sutter case, we deem the reasoning of Sutter to be controlling."[25]

The Supreme Court cited Bank of America v. Superior Court with approval in its Conover v. Hall opinion.[26] Thus, it has been settled for over a quarter century— indigent out-of-state plaintiffs, such as the appellant in the instant case, are entitled to waiver of the 1030 security bond or deposit if they are indigent, even if this deprives the in-state defendants of a guarantee their costs will be covered should they prevail.

In ruling indigents are entitled to waiver of security for costs, both England and California are saying one party's economic interest in receiving its costs of litigation should it win cannot be used to deny an indigent party his fundamental right of access to the courts.[27] In other words, access trumps comfort.

Once it is established a litigant is financially eligible for in forma pauperis relief and has a colorable claim on the merits, he or she has a right to waiver of any security for costs the law may ordinarily impose as the price of admission to the courts. Otherwise California, as it enters the 21st Century, would earn that "reproach" the California Supreme Court found would be so unthinkable in the early years of the 20th Century our courts would "close their doors upon poor suitors."

4

9

## ATTACHMENT B TO THE REQUEST TO FILE NEW LITIGATION (MC 701)

Accordingly, in my view, the trial court's insistence this indigent plaintiff post a security bond was not just an abuse of the court's discretion but the denial of appellant's right to waiver of this security requirement. The trial court lacked discretion to deny this indigent litigant access to the courts of this state. Obviously the 85*85 court had the power and the duty to determine whether a litigant, including appellant, is indigent and possesses a colorable claim, and thus is qualified for in forma pauperis relief. In that sense, it is a discretionary decision. But here that issue had been laid to rest by the time of the hearing on the motion to dismiss. Appellant had been granted in forma pauperis status. He thus had acquired in forma pauperis rights, which included the right to waiver of a security bond or deposit. At that point, the trial court lacked discretion to require such a deposit or bond and, a fortiori, lacked the power to dismiss appellant's action for his failure to post such deposit or bond."

### Permission to file New Litigation

Moshe Perry filed his lawsuit on July 31, 2015, and in the preliminary the judge reviewing the complaint found merit in the lawsuit and granted the fees waiver application on August 5, 2015.

See Published John V. Superior Court Of L. A. Cnty. Court Of Appeal Of The State Of California Second Appellate District Division Seven B256604 (Cal. Ct. App. Nov 10, 2014): "A permission to file may be granted only if it appears the new litigation has merit and has not been filed for the purposes of harassment or delay. (§ 391.7, subd. (b).) The filing of the lawsuit, if permitted, may be conditioned on posting of security for the benefit of the defendant. (Ibid.) If new litigation is mistakenly filed by a self-represented vexatious litigant without the permission of the presiding justice or judge, the adverse party may obtain its dismissal under a procedure described in section 391.7, subdivision (c).

A number of cases have upheld the vexatious litigant statutes against constitutional challenges because they are narrowly drawn and thus do not impermissibly impede the right of access to the courts. (See, e.g., R.H., supra, 170 Cal.App.4th at p. 702 ["any impairment of the right to petition must be narrowly drawn"]; Kobayashi v. Superior Court (2009) 175 Cal.App.4th 536, 541 [California's vexatious litigant statutes are constitutional, in part, because the "statutes are narrowly drawn"];

10

Wolfgram v. Wells Fargo Bank (1997) 53 Cal.App.4th 43, 60 [vexatious litigant statutes are comparable to a licensing or permit system "'administered pursuant to narrowly drawn, reasonable and definite standards' which represent 'government's only practical means of managing competing uses of public facilities'"]; see also Moran v. Murtaugh Miller Meyer & Nelson, LLP (2007) 40 Cal.4th 780, 786 [evaluating procedural due process challenge in light of practical application of vexatious litigant statutes by trial court].) Although restricting a vexatious litigant defendant's right to appeal by requiring a preliminary showing of merit might well survive constitutional scrutiny, to avoid doubts as to the validity of the statute, any ambiguity should be resolved in favor of allowing a defendant's appeal without prefiling permission. (See Steen v. Appellate Division, Superior Court of Los Angeles County, supra, 59 Cal.4th at p. 1054.)

*Filed under protest*
*Court of Appeal Clerks demanded*

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name & Address)*:<br>Michael (Moshe) Perr<br>22000 Oak Ridge Dr #86, Santa Clarita<br>Telephone No.:<br>E-Mail Address (Optional):<br>ATTORNEY FOR *(Name)*: In Pro Se<br>Fax No. (Optional):<br>Bar No.: CA. 91350 | **FOR COURT USE ONLY**<br><br>*I file this form me.*<br><br>COURT OF APPEAL — SECOND DIST.<br>**F I L E D**<br>MAR 28 2016<br>JOSEPH R. LANE<br>J. COLLINS<br>**Deputy Clerk** |

**COURT OF APPEAL, STATE OF CALIFORNIA,**
SECOND APPELLATE DISTRICT
300 S. Spring St.
Los Angeles, CA. 90013

PLAINTIFF / PETITIONER: Michael (Moshe) Perr

DEFENDANT / Michael (Moshe) Perr

**REQUEST AND ORDER TO FILE NEW LITIGATION BY VEXATIOUS LITIGANT**

☒ Limited Civil ☐ Unlimited Civil ☐ Small Claims ☐ Family Law ☐ Probate

| CASE NUMBER: |
|---|
| **B271203** |

SCANNED...

A "Prefiling Order - Vexatious Litigant" requires me to obtain prior court approval to file new litigation, OR, in a Family Law case, to file a new Petition, Order to Show Cause, or Motion other than a discovery motion.

I have attached to this Request a copy of the document to be filed, and I request approval from the Presiding Judge of the above Court to file this litigation (name of document): Petition for Writ of Mandamus.

The new filing is not being filed to harass the other party or to cause a delay and it is important to file it because (give reasons): This is a petitioner Defendant filing a Writ of ~~mandamus~~ mandamus. Writ of mandamus.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3/28/16

Moshe Perr
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

---

**O R D E R**

Approval to file the litigation described above is:

[ ] GRANTED

[☒] DENIED

[ ] Other:

Date: Apr 01, 2016

**COURT OF APPEAL — SECOND DIST.**
**F I L E D**
Apr 01, 2016
JOSEPH A. LANE, Clerk
J. GUZMAN   Deputy Clerk

_____
PRESIDING JUDGE

---

**REQUEST AND ORDER TO FILE NEW LITIGATION BY VEXATIOUS LITIGANT**

L1013 (Rev. July 1, 2005)

Code of Civil Procedure, § 391.7

12

Michael Moshe Perry
22900 Oak Ridge Dr.
#86
Santa Clarita, CA 91350

Case Number B271203
Division  p

MICHAEL MOSHE PERRY,
Petitioner,
v.
SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
AARON BOVSHOW,
Real Party in Interest.

13

U.S.POSTAGE ⟫ PITNEY BOWES

$ 000.48⁵

ZIP 90013
02 1W
0001368493 APR 01 2016

LOS ANGELES
CA 900
01 APR '16
PM 13 1

CLERK'S OFFICE
Court of Appeal
SECOND APPELLATE DISTRICT
300 SOUTH SPRING STREET
SECOND FLOOR - NORTH TOWER
LOS ANGELES, CA 90013-1204

91350250886

**FW-003**

## Order on Court Fee Waiver
## (Superior Court)

Clerk stamps date here when form is filed.

**FILED**
Superior Court of California
County of Los Angeles

AUG 05 2015

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Steve Orozco

**(1) Person who asked the court to waive court fees:**

Name: Perry, Moshe

Street or mailing address: 27943 Seco Cyn Rd #458

City: Santa Clarita   State: CA   Zip: 91350

**(2) Lawyer, if person in (1) has one** *(name, address, phone number, e-mail, and State Bar number):*

_____

_____

_____

_____

Fill in court name and street address:

**Superior Court of California, County of**

**NORTH VALLEY DISTRICT**
CHATSWORTH COURTHOUSE
9425 Penfield Avenue, Room 1200
Chatsworth, CA 91311

Fill in case number and name:

**Case Number:** PC056529

**Case Name:**
Perry v. LA Fitness, Bally Total Fitness

**(3)** A request to waive court fees was filed on *(date):* 07/28/2015

☐ The court made a previous fee waiver order in this case on *(date):*

*Read this form carefully. All checked boxes ☒ are court orders.*

**Notice:** The court may order you to answer questions about your finances and later order you to pay back the waived fees. If this happens and you do not pay, the court can make you pay the fees and also charge you collection fees. If there is a change in your financial circumstances during this case that increases your ability to pay fees and costs, you must notify the trial court within five days. (Use form FW-010.) If you win your case, the trial court may order the other side to pay the fees. If you settle your civil case for **$10,000** or more, the trial court will have a lien on the settlement in the amount of the waived fees. The trial court may not dismiss the case until the lien is paid.

**(4)** After reviewing your:   ☒ *Request to Waive Court Fees*   ☐ *Request to Waive Additional Court Fees*
*the court makes the following orders:*

a. ☒ The court **grants** your request, as follows:

   (1) ☒ **Fee Waiver.** The court grants your request and waives your court fees and costs listed below. *(Cal. Rules of Court, rules 3.55 and 8.818.)* You do not have to pay the court fees for the following:

   - Filing papers in Superior Court
   - Making copies and certifying copies
   - Sheriff 's fee to give notice
   - Court fee for phone hearing
   - Giving notice and certificates
   - Sending papers to another court department
   - Court-appointed interpreter in small claims court
   - Reporter's fee for attendance at hearing or trial, if reporter provided by the court
   - Assessment for court investigations under Probate Code section 1513, 1826, or 1851
   - Preparing, certifying, copying, and sending the clerk's transcript on appeal
   - Holding in trust the deposit for a reporter's transcript on appeal under rule 8.130 or 8.834
   - Making a transcript or copy of an official electronic recording under rule 8.835

   (2) ☐ **Additional Fee Waiver.** The court grants your request and waives your additional superior court fees and costs that are checked below. *(Cal. Rules of Court, rule 3.56.)* You do not have to pay for the checked items.

   ☐ Jury fees and expenses
   ☐ Fees for court-appointed experts
   ☐ Other *(specify):* _____
   ☐ Fees for a peace officer to testify in court
   ☐ Court-appointed interpreter fees for a witness

---

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2015, Mandatory Form
Government Code, § 68634(e)
Cal. Rules of Court, rule 3.52

**Order on Court Fee Waiver (Superior Court)**

FW-003, Page 1 of 2

**15**

Your name: Perry v. LA Fitness, Bally Total Fitness          Case Number:

b. ☐ The court **denies** your fee waiver request, as follows:

> **Warning!** If you miss the deadline below, the court cannot process your request for hearing or the court papers you filed with your original request. If the papers were a notice of appeal, the appeal may be dismissed.

(1) ☐ The court **denies** your request because it is incomplete. You have **10 days** after the clerk gives notice of this order (see date of service on next page) to:
- Pay your fees and costs, or
- File a new revised request that includes the items listed below *(specify incomplete items):*

_____

(2) ☐ The court **denies** your request because the information you provided on the request shows that you are not eligible for the fee waiver you requested *(specify reasons):* _____

_____

_____

The court has enclosed a blank *Request for Hearing About Court Fee Waiver Order (Superior Court)*, form FW-006. You have **10 days** after the clerk gives notice of this order (see date of service below) to:
- Pay your fees and costs in full or the amount listed in c. below, or
- Ask for a hearing in order to show the court more information. *(Use form FW-006 to request hearing.)*

c. ☐ The court needs more information to decide whether to grant your request. You must go to court on the date below. The hearing will be about *(specify questions regarding eligibility):*

_____

_____

☐ Bring the following proof to support your request if reasonably available:

_____

Name and address of court if different from above:

**Hearing Date** → Date: _____  Time: _____   _____
Dept.: _____  Room: _____   _____
   _____

> **Warning!** If item c is checked, and you do not go to court on your hearing date, the judge will deny your request to waive court fees, and you will have 10 days to pay your fees. If you miss that deadline, the court cannot process the court papers you filed with your request. If the papers were a notice of appeal, the appeal may be dismissed.

Date: ___8-5-2015___       Signature of *(check one):* ☒ Judicial Officer   ☐ Clerk, Deputy

**Request for Accommodations.** Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least 5 days before your hearing. Contact the clerk's office for *Request for Accommodation,* Form MC-410. (Civil Code, § 54.8.)

## Clerk's Certificate of Service

I certify that I am not involved in this case and *(check one):*  ☐ A certificate of mailing is attached.
☐ I handed a copy of this order to the party and attorney, if any, listed in ① and ②, at the court, on the date below.
☐ This order was mailed first class, postage paid, to the party and attorney, if any, at the addresses listed in ① and ②, from *(city):* _____, California on the date below.
Date: _____    Clerk, by _____, Deputy

**This is a Court Order.**

16

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>LA Fitness, Chen Yi, Siedler Equity Partners, Marina Del Ray; Civic Partners, Chicago; Madison Dearborn Partners, Bally Total Fitness<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>Moshe Perry | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)*<br><br>CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>AUG 06 2015<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By Steven Orozco, Deputy |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Chatsworth Superior Court<br>9425 Penfiled Ave. Chatsworth, CA, 91311 | CASE NUMBER:<br>*(Número del Caso):*<br>PC056529 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Perry, Moshe. 27943 Smyth Cyn. Rd. # 458, Santa Clarita, CA, 91350. P: (747) 224-9515.

| DATE: 07/31/2015<br>*(Fecha)* | AUG 06 2015 | SHERRI R. CARTER | Clerk, by<br>*(Secretario)* | STEVEN OROZCO | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☑ as the person sued under the fictitious name of *(specify):*
   LA Fitness, Bally Total Fitness, Does 1-10.
3. ☑ on behalf of *(specify):* Chen Yi

   under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☑ CCP 416.40 (association or partnership)    ☑ CCP 416.90 (authorized person)
   ☐ other *(specify):*

4. ☑ by personal delivery on *(date):* July 31, 2015

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

17

| | |
|---|---|
| **Superior Court of California, County of Los Angeles**<br>North Valley District, Chatsworth Courthouse<br>9425 Penfield Avenue, Chatsworth, CA 91311 | Reserved for Clerk's File Stamp<br>**CONFORMED COPY**<br>**ORIGINAL FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>**JUL 3 1 2015**<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By Steven Orozco, Deputy |

| PLAINTIFF<br>**PERRY** | |
|---|---|
| DEFENDANT<br>**LA FITNESS** | |

| **NOTICE OF ALL PURPOSE CASE ASSIGNMENT and**<br>**NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER<br>**PC056529** |
|---|---|

<div align="right">

# Dept. F47
</div>

**Notice of Civil Assignment:**

Plaintiff/Attorney(s) for Plaintiff are hereby ORDERED to serve a copy of this Notice on all parties at the time of service of the complaint and summons.  Cross-complainants and plaintiffs-in-intervention are ordered to serve a copy on each new party brought into the case.  This case is randomly assigned to **Judge Melvin D. Sandvig** for all purposes, in **Department F47** of the North Valley District of this Court.  All law and discovery matters must be calendared on-line through the Court Reservation System on the Court's website at www.LACourt.org.

**Notice of Case Management Conference:**  All parties are ordered to appear at a Case Management Conference in **Department F47** at the courthouse address shown above at **8:30 a.m.** on

<div align="center">

Date: _____**DEC 24, 2015**_____
</div>

<div align="center">

### ***NOTICE:  READ PAGE 2 OF 2 FOR IMPORTANT INFORMATION
</div>

**You are hereby notified that failure of any party to comply with these Orders may result in sanctions, including dismissal of the complaint and/or striking a pleading, such as an answer, and payment of money. This Order continues on Page 2 of 2. You are further given notice that failure to comply with the provisions of California Rules of Court, Rule 3.110 will result in the setting of an OSC re sanctions.  Please read Rule 3.110 and page 2 of this Notice, and all applicable rules and statutes mentioned.**

Dated:  JULY 31, 2015

_____

**Hon. Ann I. Jones, Supervising Judge**

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to this action and that on ____JULY 31, 2015_____ I served the Notice of All Purpose Case Assignment and Notice of Case Management Conference upon each party or counsel named below:

☐ by personally giving the party notice upon filing of the complaint.

☐ by depositing in the United States mail at the courthouse at Chatsworth, California, one copy of the original filed herein in a separate sealed envelope to each address shown on page 2 herein with postage fully prepaid.

Date: ____JULY 31, 2015_____

John A. Clarke, Executive Officer/Clerk

By _____, Deputy Clerk
S. OROZCO



All counsel and/or self-represented parties must be fully knowledgeable on all applicable statutes, California Rules of Court ["CRC"] and all Local Rules of the Los Angeles Superior Court ["LASC"] including Chapter 7 thereof. All CRC and LASC Rules will be enforced. So please, READ THE RULES! For your convenience, some of the more significant rules are summarized below.

## Service of Complaints and Cross-Complaints (CRC 3.110(b) and (c))

The complaint must be served on all named defendants and proofs of service on those defendants must be filed with the court within 60 days after the filing of the complaint. When the complaint is amended to add a defendant, the added defendant must be served and proof of service must be filed within 30 days after the filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service of the cross-complaint at the time it is filed. If the cross-complaint adds new parties, the cross-complaint must be served on all parties and proofs of service on the new parties must be filed within 30 days of the filing of the cross-complaint.

## Requests for Default (CRC 3.110 (g) and (h))

Requests to enter clerk's default relating to a defendant or cross-defendant who has failed to timely respond to a complaint or cross-complaint shall be filed no later than 10 days after the time has run within which said defendant or cross-defendant was to have responded. When a default is entered, the party who requested the entry of default must obtain a default judgment against the defaulting party within 45 days after entry of default, unless the Court has granted an extension of time.

## Case Management Conference Statements and Conferences (CRC 3.720 – 3.730)

You are hereby given NOTICE that: No later than 30 calendar days before the date set for the Case Management Conference or review, the parties shall meet and confer, in person or by telephone, to consider each of the issues identified in CRC 3.724 and 3.727. No later than 15 calendar days before the date set for the Case Management Conference or review, each party must file a case management statement using Judicial Council Form CM-110, and serve it on all parties in the case. (CRC 3.725). At the case management conference, counsel and self-represented parties shall appear and be fully prepared to discuss all of the matters set forth in CRC 3.724 and 3.727, and the court may make orders concerning all of the matters set forth in CRC 3.728. At the Case Management Conference, the Court may make pretrial orders including, but not limited to, establishing a discovery schedule, reference to a form of alternate dispute resolution, RECLASSIFYING THE CASE AS A LIMITED JURISDICTION case [*Stern v. Superior Court* (2003) 105 Cal.App. 4th 223], dismissing unserved defendants, setting the case for mandatory settlement conference, final status conference, trial, and other hearings, and to achieve the goals of the Trial Court Delay Reduction Act, Govt. Code section 68600 et seq. Failure: to file a CM-110, timely file a CM-110, comprehensively complete the CM-110, appear at the Case Management Conference, or effectively participate in the Case Management Conference, may result in the Court imposing sanctions (including dismissal of the action, striking of an answer, and monetary sanctions) pursuant to CRC 2.30, LASC Chapter 7, Code of Civ. Proc. sections 177.5 and 583.150, and Govt. Code section 68608(b).

**OSC re Sanctions:** An Order to Show cause hearing will be noticed pursuant to CRC Rule 3.110(f) for the failure to meet the time deadlines for service of the complaint and proof of service thereon. This OSC will be calendared between 70 and 85 days after the filing of the complaint unless there is service of the complaint as to all defendants and proof of service thereon filed in compliance with Rule 3.110. You are given NOTICE that at the hearing on the OSC, the Court will consider whether failure to comply with these rules will result in the issuance of sanctions, including dismissal for failure to prosecute (Code of Civ. Proc. section 583.150, Govt. Code section 68608(b), and CRC Rule 2.30) or, alternatively, why other actions should not be taken. At the hearing on the OSC the Court may (1) impose such sanctions as authorized by law and (2) make further appropriate orders regarding the preparation of the case for trial. Failure to attend the hearing on any such OSC may result in additional sanctions, including dismissal of the case. Responsive papers to such an OSC *must* be filed at least five calendar days before the hearing. See, CRC Rule 3.110(i).

Addresses for Mailing:

**19**

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOTICE SENT TO:

PERRY, MOSHE
27943 SECO CYN. RD.
#458
SANTA CLARITA       CA   91350

FILE STAMP

AUG 2 6 2015

Sherri R. Carter, Executive Officer/Clerk
By Suzanne Reyna, Deputy

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | CASE NUMBER |
|---|---|---|
| MOSHE PERRY | Plaintiff(s), | PC056529 |
| VS. | | |
| LA FITNESS, ET AL. | Defendant(s). | **ORDER TO SHOW CAUSE HEARING** |

To the party/attorney of record:

You are ordered to appear for an Order to Show Cause Hearing on  September 28, 2015  at  8:31 am  in  Dept. F47 - Chatsworth  of this court, Central District, 600 South Commonwealth Avenue, Los Angeles, California 90005, and show cause why sanctions should not be imposed for:

### FAILURE TO FILE ORDER FOR NEW LITIGATION

Failure to comply or appear may result in sanctions, pursuant to one or more of the following: California Rules of Court, rule 2.30, and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and Government Code section 68608.

[ ] To avoid a mandatory appearance all required documents must be filed in [ ] this Dept [ ] Clerk's Office, Room _____ at least 5 court days prior to the date of the hearing.

[ ] The Court may infer from your failure to appear that possession of the premises is no longer at issue, and that your case is not entitled to preference in setting pursuant to Code of Civil Procedure section 1179a.

[ ] You are ordered to give notice of said hearing forthwith to any party served with summons and complaint prior to OSC Hearing and file a Proof of Service in this department or Clerk's Office at least 5 court days prior to the date of the hearing.

Dated:  August 26, 2015 

_____
Judicial Officer

### CERTIFICATE OF MAILING

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Order to Show Cause Hearing upon each party or counsel named above by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown above with the postage thereon fully prepaid.

Date:  August 26, 2015 

Sherri R. Carter, EXECUTIVE OFFICER/CLERK

By_____S. Ruma_____, Deputy Clerk

ORDER TO SHOW CAUSE HEARING

LACIV 166-11 (Rev. 09/08)
LASC Approved 06-04

LASC Local Rules, Chapter 7
Cal. Rules of Court, rule 2.30

**20**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

NORTH VALLEY DISTRICT-CHATSWORTH COURTHOUSE
9425 PENFIELD AVENUE
CHATSWORTH, CALIFORNIA 91311



02 1R
0002008508
MAILED FROM ZIP CODE 91311

UNITED STATES POSTAGE
$ 00.48⁵
AUG 26 2015
PITNEY BOWES

21

RECEIVED
DEPT. 1

SEP - 4 2015

LOS ANGELES
SUPERIOR COURT

FILED
Superior Court of California
County of Los Angeles

AUG 28 2015

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Monique Bell

Perry, Moshe
27943 Seco Cyn Rd # 458
Santa Clarita, CA, 91350
(747) 224-9515

## STATE OF CALIFORNIA SUPERIOR COURT
## FOR THE COUNTY OF LOS ANGELES

In Re:

MOSHE PERRY,
                Plaintiff

        Vs.

LA Fitness, Chin Yi,

Seidler Equity Partners,

Marina Del Ray, CA; CIVC Partners,

Chicago; and Madison Dearborn Partners,

Chicago; Bally Total Fitness, Does 1-10,

                Defendants,

Superior Court Case No.: PC056529

**Plaintiff's Request For An Evidentiary Hearing Before The Court Rules On The "Request To File Request To File New Litigation By A Vexatious Litigant";Plaintiff's Declaration In Support for an Order to the "Request To File Request To File New Litigation By A Vexatious Litigant", Using Judicial Council's Form Mc-701**

Plaintiff's Exhibits Attached.

Hearing Date: __09/28/15__
Time: ___8:30 A.M.___
Ct. Rm. No.: _1_

        Plaintiff was not served with any notice to appear to the proceeding which was held on 08/26/2015 at 02:00 pm in Department 1, before Presiding Judge Kevin C. Brazile, who issued a Court Order (Re: Vexatious Litigant).

        Plaintiff, Perry, Moshe ("Perry") submits the following Declaration in support to his "Request To File Request To File New Litigation By A Vexatious Litigant", using Judicial Council's form MC-701. See CCP. 391.7(c): "The litigation shall be automatically dismissed unless the plaintiff within 10 days of the filing of that notice obtains an order from the presiding justice or presiding judge permitting the filing of the litigation as set forth in subdivision (b)."

        In support of his request Plaintiff declares under penalty of perjury that the foregoing and events are true and correct and had taken place to the best of his knowledge.

22

1    Perry, Moshe
     27943 Seco Cyn Rd # 458
2    Santa Clarita, CA, 91350
     (747) 224-9515

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 28 2015

Sherri R. Carter, Executive Officer/Clerk
By Monique Bell, Deputy

3        **STATE OF CALIFORNIA SUPERIOR COURT**
4          **FOR THE COUNTY OF LOS ANGELES**

5    In Re:

6    MOSHE PERRY,
            Plaintiff

7        Vs.

8    LA Fitness, Chin Yi,

9    Seidler Equity Partners,

10   Marina Del Ray, CA; CIVC Partners,

11   Chicago; and Madison Dearborn Partners,

12   Chicago; Bally Total Fitness, Does 1-10,

13          Defendants,

Superior Court Case No.: <u>PC056529</u>

**Plaintiff's Request For An Evidentiary Hearing Before The Court Rules On The "Request To File Request To File New Litigation By A Vexatious Litigant";Plaintiff's Declaration In Support for an Order to the "Request To File Request To File New Litigation By A Vexatious Litigant", Using Judicial Council's Form Mc-701**

Plaintiff's Exhibits Attached.

Hearing Date: ___09/28/15___
Time: ___8:30 A.M.___
Ct. Rm. No.: _1_____

---

16

17       Plaintiff was not served with any notice to appear to the proceeding which was

18 held on 08/26/2015 at 02:00 pm in Department 1, before Presiding Judge Kevin C. Brazile, who issued a Court Order (Re: Vexatious Litigant).

19       Plaintiff, Perry, Moshe ("Perry") submits the following Declaration in support to

20 his "Request To File Request To File New Litigation By A Vexatious Litigant", using

21 Judicial Council's form MC-701. See CCP. 391.7(c): "The litigation shall be

22 automatically dismissed <u>unless</u> the plaintiff within 10 days of the filing of that notice

23 obtains an order from the presiding justice or presiding judge permitting the filing of the litigation as set forth in subdivision (b)."

24       In support of his request Plaintiff declares under penalty of perjury that the

25 foregoing and events are true and correct and had taken place to the best of his knowledge.

23

In the event the Court contemplates to dismiss this complaint, it will do with great harm and prejudice to Plaintiff just because he is a vexatious litigant, while disregarding his civil rights for due process. If defendants were to witness the Court dismisses a complaint that has merit, it will embolden them to inflict more evil harm on other innocent people, as they did to some members of Bally Total Fitness's 30 years or more members who are unable to defend themselves or afford to hire an attorney.

Defendants will see it as a license that they can escape punishment. This will affectively shield defendants as invincible from litigation while the Superior Court stands on the sidelines. So, if we must not allow defendants to "get away with it," because if we do, it will dishonor the Court that's purpose is to promote justice and advance the trust the public put in our judicial officers.

Some of the people who had been designated as vexatious litigants are human being; they have families, they have no horns on their heard or wicked faces. They are ordinary people who may be stigmatized as thorns to some defendants. But still they have the right to defend themselves and seek redress in front of your honor's Court.

When Plaintiff initially filed his last lawsuit in 2009 and had been designated vexatious 5 ½ ago, he did not fully understood the law and made obvious mistakes that cost him being labeled as a vexatious litigant. So, to ensure the Court feel "safe" from any vexatious litigation, Plaintiff promises appropriately under the watchful eye of the Court and to follow the Court's instructions and orders accordingly and not file any frivolous motions or conduct unnecessary discovery, unless he asks for permission.

## Factual Allegations in Support Request To
## File Request To File New Litigation By A Vexatious Litigant

1. LA Fitness representative Adrian Aguilar and LA Fitness counsel Alice Smith admitted service of Summons and Complaint to Plaintiff, but claimed service by express mail is defective unless by made in person;

2. LA Fitness representative Adrian Aguilar and LA Fitness counsel Alice Smith made admission of wrongs but made inadequate offer to Plaintiff in order to dismiss the complaint which Plaintiff rejected at this point;

3. Plaintiff contacted the San Diego Better Business Bureau (see copies of BBB complaint # 99844447, as exhibits 8, 9, 10, 11) in efforts to resolve this matter and was rebuffed by LA Fitness and it representatives who

24

continually lied to Plaintiff that he forfeited him Bally Membership because he did not pay in 30 days.

4. On February 2, 2012, Plaintiff arrived at the Bally Total Fitness location in Chatsworth, California. At that time Bally was in the process of turning into LA Fitness Plaintiff was handed by one of Bally Staff

5. Plaintiff did not sign a contract with LA Fitness but was provided an LA Fitness card by Bally's staff, as **LA Fitness membership card number: F12667542.**;

6. Bally's members were offered prepaid payments options in advance under the membership contract;

7. Bally for long many years had their membership rated were reduced over the life of the membership;

8. Bally solicited members for "reactivation." Bally's "reactivation" offers permitted lapsed members to rejoin by paying a "reactivation fee," which was zero;

9. Plaintiff paid and have performed all the conditions and obligations to be performed on its part under the Bally agreement;

10. Bally contract does not contain a forfeiture declaration, the spa member may pay dues after the expiration of any alleged notice and retain his membership;

11. LA Fitness altered the terms of the contract Plaintiff had with Bally; LA Fitness has acquired Bally they must keep the original terms of the Bally agreement;

12. LA Fitness forged[1] his signature on the LA Fitness contract of February 2, 2012;

. ...

---

[1] A forgery is a "'writing which falsely purports to be the writing of another,'" and is executed with the intent to defraud. (Wutzke, supra, 151 Cal.App.3d at p. 42, 198 Cal.Rptr. 418, quoting Generes v. Justice Court (1980) 106 Cal.App.3d 678, 682, 165 Cal.Rptr. 222, italics omitted.) The signature on Plaintiff's contract with LA Fitness was forged and was therefore void, and a subsequent purchaser for value could not rely on it.

3

13. LA Fitness knew and was told by Plaintiff that he had a National membership but LA Fitness insisted he had only a **"Local"** membership entitled him only for 2 day a week visits was false;

14. Plaintiff had a Bally Total Fitness "National" membership since July 28, 1987. **(See a true and correct copy of Plaintiff's Bally Total Fitness "National" membership card as exhibit 1.)**

15. LA Fitness knew that on March 2, 2012 Plaintiff presented a copy of the Bally's receipt for $165.99 for three years. That on the back of the receipt was a date, an amount of $165.99 and a signature of Cynthia, a past manager of Bally Total Fitness in Chatsworth, CA.

16. LA Fitness falsely made claim that Plaintiff only paid only $ $ 65.99 for one year;

17. LA Fitness had violated the terms of the original agreement Plaintiff had with Bally Total Fitness by claiming Perry had forfeited the membership by failing to pay his membership within 30 days. Thus, LA Fitness ignored Bally's well known "reactivation" policy of lapsed club membership;

18. Bally's conduct and contracts clearly provide for an "reactivation" option as method to be at any time the membership lapsed;

19. Bally membership agreement expressly allow members as Plaintiff Perry to renew at any time their membership in the event the membership lapsed, the members can renew their membership using Bally's "reactivation" fees which cost no money (zero);

20. Nowhere does Bally's contract states that LA Fitness may alter the Bally contract -- including that unless a member pay his/her dies within 30 days his/her membership is forfeited forever[2];

21. LA Fitness knew and ignored the type of relationship Plaintiff had with Bally over the past 25 years and what he paid as pre-paid dues;

---

[2] Well-establish reluctance of courts to construe ambiguous contracts to result in forfeitures.[2] (E.g., Ballard v. MacCallum (1940) 15 Cal.2d 439, 444 ["the policy and rule are settled, both in the interpretation of ordinary contracts and instruments transferring property, that the construction which avoids forfeiture must be made if it is at all possible"].)

26

22. On or about December 2012, Plaintiff returned to the Chatsworth LA Fitness and was told that his membership lapsed and because he did not renew it within 30 days, ending in forfeiture of his spa membership rights or ability to renew his membership;

23. When Plaintiff attempted to explain that he did not received any renewal notice, the staff member called his manager, named Louis who aggressively spoke over Plaintiff and would not allow him to talk and the manager then retrieved an alleged contract signed by Plaintiff on February 2, 2012 with a signature that was not similar to Plaintiff's signature. The manger then called as witnesses his staff members. Plaintiff was then asked to leave the premises.

24. That LA Fitness disrupted Plaintiff's membership and the relationship with Bally Total Fitness on the prepaid dues basis by falsely claiming Plaintiff did not pay his dues within 30 days and as a result has forfeited him Bally membership;

25. That LA Fitness engaged in a continued and wrongful conduct through misrepresentation, fraud, and unless Plaintiff would have filed this lawsuit, his complaints would have never been addressed;

26. LA Fitness in Chatsworth falsely claimed Plaintiff had only 30 days grace period to renew his LA Fitness and that time had passed and the membership was forfeited;

27. LA Fitness representative made repeated and subsequent misleading representations to BBB that because Plaintiff did renew within 30 days, his membership was forfeited.

28. LA Fitness had duty to provide the spa member with notice and an opportunity to avoid forfeiture;

29. LA Fitness, refused to accept a copy of the receipt of Plaintiff payment of $165.99 to Bally total Fitness;

30. LA Fitness, refused to acknowledge that Plaintiff had a National membership as of July 28, 1987, and not as they claimed a local membership entitled him only to two visits per week;

31. Plaintiff prepaid for three years of membership to Bally ($165.99);

27

32. LA Fitness did not provides proper notice of renewal to Bally's members after buying Bally;

33. LA Fitness refused to acknowledge receipt of 3 years membership paid to Bally;

34. LA Fitness lied to Plaintiff that since he did not renewed his membership within 30 days, he forfeited his membership and he cannot renew;

35. No clear forfeiture provision ever existed in Bally's contracts;

36. LA Fitness lied to Plaintiff Perry that Bally's contract had no significant on his rights under LA Fitness contract;

37. LA Fitness unfairly interfered with Plaintiff's right to receive the benefits of the contract with Bally;

38. Plaintiff unfairly deprived Plaintiff his club membership rights and used deception and fraud to foreclose on Plaintiff's 25 years membership;

39. LA Fitness conduct was outrageous as they intentionally failed to take proper measures to prevent denial of Bally's Contract terms and conditions in the LA Fitness purchase agreement.

Respectfully submitted,

Dated: August 28, 2015

By: _____
Perry, Moshe In Pro-Se

6

# Exhibit 1

①

29









1 of 2

30

# Exhibit 2



31







2 of 2

32

# Exhibit 3



33

SALE CUSTOMER COPY

Bally Total Fitness
CHATSWORTH, CA
PORT OF BALLY (22250)
CHATSWORTH
WWW.BALLYFITNESS.COM

DATE: 3/30/2011 8:00:16 PM REG: 1105
TRAN NO: 110360072
ENTRD BY:3 12:01/CREDIT 10:3 12:01?

MEMBER ID: 000000110000G
MEMBER NAME: MICHE PLARY
QTY DESCRIPTION

Membership Payment    JLUX
001 #  SKU: PMT         105.00   105.99
COOSSS11000003: MICHE PLARY

                    SUBTOTAL:   105.99
                         TAX:     0.00
                       TOTAL:   105.99

PAYMENT TYPE                      Amount

VISA    411250;ON INE           105.99
ENTRY TYPE: Swiped
PLARY/MICHE
        XXXXXXXXXXX1367



34



SALE CUSTOMER COPY

Bally Total Fitness
CHATSWORTH, CA
1-800-7DEBALTY 7225807
CHATSWORTH
WWW.BALLYFITNESS.COM

DATE: 3/30/2011 @ 06:36 PM REG: #105
TRAN#NO: 11438497
ENTRD BY:J TURIZ CREDIT TO:J TURIZ

MEMBERTD: 00022ET90003
MEMBERTNAME: MOSHE PERRY
OTY DESCRIPTION                  SKU    EXTENDED

Membership Payment #YRS
001    SKU: PMT         165.99   165.99
000GE0EET90000: MOSHE PERRY

                    SUBTOTAL:    165.99
                         TAX:      0.00
                       TOTAL:    165.99

PAYMENT TENDERED              AMOUNT

VISA   411250;ONLINE           165.99
ENTRY TYPE: Swiped
PERRY/MOSHE
       XXXXXXXXXXXX307

# Exhibit 4



36